# APPENDIX B

**In the United States District Court**
**For the District of Columbia**

ROKU, INC.,

      Plaintiff (Complainant),

v.

UNIVERSAL ELECTRONICS, INC., et al.

      Defendants (Respondents).

Civil Action No. Misc. _____

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the District of Columbia presents its compliments to the Registrar of the Supreme Court of Singapore and respectfully requests international judicial assistance to obtain evidence under the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters. The requested evidence is for an administrative proceeding as approved by this Court in the above-captioned matter.

Based on the representations made by Respondent Universal Electronics Inc. ("UEI") this Court believes that Home Control Singapore Pte. Ltd. D/B/A Omni Remotes ("Omni") is in possession of documents and has knowledge regarding material facts that are relevant for the proper prosecution of the above-referenced administrative proceeding. There are important deadlines in the above-referenced administrative proceeding, particularly the close of fact discovery is set for October 8, 2021 before the deadline for dispositive motions, which has already been set for November 22, 2021. Thus, this Court additionally requests that the Registrar of the Supreme Court of Singapore expedite this request to the extent possible. This Court requests the assistance described below:

| Sender | Adam Swain<br>ALSTON & BIRD LLP<br>950 F Street, N.W.<br>Washington, DC 20004<br>Tel. +1 (202) 239-3300<br>United States of America |
| --- | --- |
| Central Authority of the Requested State | Supreme Court of Singapore<br>Attn: Registrar of the Supreme Court<br>1 Supreme Court Lane<br>Singapore 178879 |
| Person to Whom the Executed Request is to be Returned | Adam Swain<br>ALSTON & BIRD LLP<br>950 F Street, N.W.<br>Washington, DC 20004<br>Tel. +1 (202) 239-3300<br>United States of America |
| Specification of the Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request | |
| Date | A response is requested by September 1, 2021, or as soon as practicable. |
| Reason for Urgency | Under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, investigations in the United States International Trade Commission must be completed "at the earliest practicable time."  The fact discovery cutoff for this investigation is set for October 8, 2021.  Depositions of persons not in the United States cannot be taken on less than fifteen (15) days' notice, and subpoenaed parties must be given a minimum of ten (10) days to respond to the subpoena to allow an opportunity to move to quash the subpoena.  Expedient treatment of this request will allow the parties and the witnesses to arrange a mutually agreeable date for testimony. |
| In Conformity with Article 3 of the Convention, the Undersigned Applicant Has the Honor to Submit the Following Request: | |
| Requesting Judicial Authority (Article 3, *a*) | United States District Court Judge<br>U.S. District Court for the District of Columbia |

|  | 333 Constitution Avenue, NW<br>Washington, DC 20001<br>United States of America |
|---|---|
| To the Competent Authority of (Article 3, *a*) | Singapore |
| Name of the Case and Any Identifying Number | In the Matter of<br>Certain Televisions, Remote Controls, and<br>Components Thereof<br>Investigation No. 337-TA-1263 |

Names and Addresses of the Parties and Their Representatives (Including Representatives in the Requested State) (Article 3, *b*)

| Plaintiff (Complainant) | Roku, Inc. |
|---|---|
| Representative | Jonathan D. Baker<br>DICKINSON WRIGHT PLLC<br>800 West California Ave, Suite 110<br>Sunnyvale, CA 95086<br>Telephone: (408) 701-6200 |
| Defendants (Respondents) | Universal Electronics Inc., Universal Electronics BV, UEI Brasil Controles Remotos Ltda., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., and CG México Remote Controls, S. de R.L. de C.V<br><br>Charter Communications, Inc., Charter Communications Operating, LLC, and Spectrum Management Holding Company, LLC<br><br>Altice USA, Inc. Cablevision Systems Corp., and Cequel Communications LLC d/b/a Suddenlink<br><br>LG Electronics, Inc. and LG Electronics U.S.A., Inc.<br><br>Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.<br><br>WideOpenWest, Inc. |

3

| Representatives | Adam D. Swain, Esq.<br>ALSTON & BIRD LLP<br>950 F Street NW<br>Washington, DC 20004<br>Telephone: (202) 239-3622<br><br>Attorney for Universal Electronics Inc.,<br>Universal Electronics BV, UEI Brasil<br>Controles Remotos Ltda., Gemstar Technology<br>(Qinzhou) Co. Ltd., Gemstar Technology<br>(Yangzhou) Co. Ltd., C.G. Development Ltd.,<br>and CG México Remote Controls, S. de R.L.<br>de C.V; Charter Communications, Inc., Charter<br>Communications Operating, LLC, and<br>Spectrum Management Holding Company,<br>LLC; and Altice USA, Inc. Cablevision<br>Systems Corp., and Cequel Communications<br>LLC d/b/a Suddenlink<br><br><br>James J. Lukas, Jr.<br>GREENBERG TRAURIG LLP<br>77 West Wacker Dr.<br>Suite 3100<br>Chicago, IL 60601<br>Telephone: (312) 456-8400<br><br>Attorney for LG Electronics, Inc. and LG<br>Electronics U.S.A., Inc.<br><br><br>Richard A Edlin<br>GREENBERG TRAURIG LLP<br>MetLife Building<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 801-9200<br><br>Attorney for Samsung Electronics Co., Ltd.<br>and Samsung Electronics America, Inc.<br><br>Richard L. Brophy<br>ARMSTRONG TEASDALE LLP<br>7700 Forsyth Blvd., Suite 1800<br>St. Louis, MO 63105<br>Telephone: (314) 621-5070 |

| | |
|---|---|
| | Attorney for WideOpenWest, Inc. |
| Other Parties | N/A |
| Nature of the Proceedings and Summary of the Facts | This is a proceeding being conducted by the United States International Trade Commission (the "ITC") under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), based on a Complaint filed by Roku, Inc. ("Roku") on April 8, 2011.  The Complaint alleges that Universal Electronics, Inc., Universal Electronics BV, UEI Brasil Controles Remotos Ltda., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., and CG México Remote Controls, S. de R.L. de C.V; Charter Communications, Inc., Charter Communications Operating, LLC, and Spectrum Management Holding Company, LLC; and Altice USA, Inc. Cablevision Systems Corp., and Cequel Communications LLC d/b/a Suddenlink; LG Electronics, Inc. and LG Electronics U.S.A., Inc.; Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.; and WideOpenWest, Inc. ("Respondents") infringe U.S. Patent Nos. 7,388,511 and 8,378,875 (collectively, the "Asserted Patents"). The accused products are certain televisions, remote controls and components thereof.<br><br>The ITC instituted an Investigation based on Roku's Complaint on May 10, 2021.  Upon institution, the case was assigned to Administrative Law Judge MaryJoan McNamara to preside over pre-trial matters, conduct a trial, and issue an initial determination on the merits of the case.  The initial determination is subject to possible review by the ITC with a right to appeal to the United States Court of Appeals for the Federal Circuit.<br><br>Omni is in possession of documents highly relevant to this investigation, particularly with |

| | |
|---|---|
| | regard to the Asserted Patents, including but not limited to inventorship, prosecution of the applications that led to the Asserted Patents, and the transfer of ownership and assignment of the Asserted Patents.  Omni also has persons with knowledge about the prosecution of the applications that led to the Asserted Patents and Omni's transfer of ownership and assignment of the Asserted Patents to Roku. |
| Evidence to be Obtained or Other Judicial Act to be Performed (Article 3, *d*) | It is requested that a judicial authority of the Singapore order Omni to produce copies of documents and other property relating to inventorship, prosecution of the applications that led to the Asserted Patents, and the transfer of ownership and assignment of the Asserted Patents.  The documents and other property requested are set forth with more specificity in Attachment A.<br><br>It is additionally requested that a judicial authority of Singapore compel Omni to make available a suitable representative to answer deposition questions concerning inventorship, prosecution of the applications that led to the Asserted Patents, and the transfer of ownership and assignment of the Asserted Patents.  The topics of the deposition questions are set forth with more specificity in Attachment B. |
| Purpose of the Evidence or Judicial Act Sought | The requested documents and deposition testimony will provide important evidence that UEI does not infringe any valid and enforceable Asserted Patent in the United States. |
| Identity and Address of Any Person to be Examined (Article 3, *e*) | Home Control Singapore Pte. Ltd. d/b/a Omni Remotes<br>620A Lorong 1<br>Toa Payoh, Singapore 319762 |
| Questions to be Put to the Persons to be Examined or Statement of the Subject Matter about Which They Are to be Examined (Article 3, *f*) | The deposition questions concern the prosecution of the Asserted Patents, inventorship, invalidity, and Omni's transfer of ownership and assignment of the Asserted |

| | |
|---|---|
| | Patents to Roku.  The questions are set forth with more specificity in Attachment B. |
| Documents or Other Property to be Inspected (Article 3, *g*) | The documents and other property to be inspected relate to the prosecution of the Asserted Patents, inventorship, invalidity, and Omni's transfer of ownership and assignment of the Asserted Patents to Roku.  The documents and other property requested to be inspected are set forth with more specificity in Attachment A. |
| Any Requirement That the Evidence be Given on Oath or Affirmation and Any Special Form to be Used (Article 3, *h*) | It is requested that Omni's representatives be examined under oath.  In the event that the witness cannot be placed under oath, it is requested that they answer questions in such manner as provided by local law for taking evidence, including those provisions intended to ensure the truthfulness of oral testimony.<br><br>Additionally, it is requested that each document described in Attachment A be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, as maintained in the ordinary course of business. |
| Special Methods or Procedure to be Followed (Articles 3(*i*), 9) | With regard to the production of documents, in the event that any document called for by these requests is withheld in whole or in part on the basis of any applicable privilege, it is requested that Omni furnish a privilege log that identifies each document for which any privilege is claimed and that provides, with respect to each document, the following information:<br><br>(1) The date the document was created and last modified;<br>(2) The subject matter of the document;<br>(3) The person(s) who prepared the document;<br>(4) All persons to whom the document was distributed, shown, or explained;<br>(5) The document's present custodian; and<br>(6) The nature of the privilege asserted. |

| | |
|---|---|
| | With regard to the deposition, it is requested that: |
| | (1) The examination be conducted orally; |
| | (2) The parties' representatives or their designees, interpreters, and a stenographer be permitted to be present during the examination; |
| | (3) All persons other than the judicial officer conducting the examination, the attorneys for the parties, the stenographer, interpreters, and all other officials of the court of Singapore normally present during such proceedings be excluded from the examination if such exclusion is permitted under the laws of Singapore; |
| | (4) A stenographer be permitted to record the examination verbatim; |
| | (5) The stenographer be permitted to record the examinations by audiovisual means; |
| | (6) The parties' representatives or their designees be permitted to submit additional questions to be presented to the witness following the witness's response to the initial questions put forth; and |
| | (7) That the witness be examined after reasonable examination of the documents produced. |
| Request for Notification of the Time and Place for the Execution of the Request and Identity and Address of Any Person to be Notified | It is requested that the individual identified below be furnished as soon as practicable with a copy of the executed Letter of Request, and be informed as soon as practicable of the time and place for the examination of the witnesses.<br><br>Adam Swain<br>ALSTON & BIRD LLP<br>950 F Street, N.W.<br>Washington, DC 20004<br>Tel. +1 (202) 239-3300<br>United States of America |

| | |
|---|---|
| Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Article 8) | None |
| Party Bearing the Fees and Costs Incurred Which Are Reimbursable Under the Second Paragraph of Article 14 or Under Article 26 of the Convention | Universal Electronics, Inc.<br>15147 N. Scottsdale Road<br>Suite H300<br>Scottsdale, Arizona 85254<br>Telephone: (480) 530-3000 |
| Date of Request | _____ of _____, 2021 |
| Signature and Seal of the Requesting Authority | United States District Court Judge<br>U.S. District Court for the District of Columbia |

Attachments:
Attachment A, Documents or Other Property to be Produced by Home Control Singapore Pte. Ltd. D/B/A Omni Remotes;
Attachment B, Topics for the Deposition of Home Control Singapore Pte. Ltd. D/B/A Omni Remotes;
Attachment C, Protective Order;
Attachment D, Ground Rules;
Attachment E, Complaint;
Attachment F, Subpoena Issued to Premium Home Control Solutions, LLC D/B/A Omni Remotes.

# ATTACHMENT A

**DEFINITIONS**

1.      "Omni," "You" or "Yours" means any company name under which Home Control Singapore Pte. Ltd. (d/b/a Omni Remotes) is doing business, including its predecessors, parents, subsidiaries (such as Premium Home Control Solutions, LLC), sister, affiliates, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, employees, and any other persons acting or purporting to act on behalf of any of the foregoing.

2.      "Roku" means Complainant Roku, Inc., any company name under which Roku, Inc. is doing business, and its predecessors, parents, subsidiaries, sister companies, affiliates, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, employees, and any other persons acting or purporting to act on behalf of any of the foregoing.

3.      "UEI" means Respondent Universal Electronics Inc., including its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), affiliates, divisions and operating units thereof, agents and entities under common control with them.

4.      "LG" means Respondents LG Electronics, Inc. and LG Electronics USA, Inc., as well as any company name under which these entities are doing business, and their predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

5.      "Samsung" means Respondents Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., as well as any company name under which these entities are doing

business, and their predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

6. "Charter" means Respondents Charter Communications, Inc., Charter Communications Operating, LLC, and Spectrum Management Holding Company, LLC, as well as any company name under which these entities are doing business, and their predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

7. "Altice" means Respondents Altice USA, Inc., Cablevision Systems Corp., and Cequel Communications, LLC d/b/a Suddenlink Communications, as well as any company name under which these entities are doing business, and their predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

8. "WOW" means Respondent Wideopenwest, Inc., as well as any company under which WOW is doing business, and its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof,

licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

9.      "Respondents" means UEI, LG, Samsung, Charter, Altice, and Wow, collectively.

10.     "Philips" means any company name under which Koninklijke Philips Electronics N.V. is doing business, including its predecessors, parents (such as Koninklijke Philips NV), subsidiaries (such as Philips North America, LLC or Philips Electronics North America), sister, affiliates, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, employees, and any other persons acting or purporting to act on behalf of any of the foregoing.

11.     "Asserted Patents" and/or "Patents-in-Suit" means U.S. Patent Nos. 8,378,875 (the "'875 Patent") and 7,388,511 (the "'511 Patent").  The term "Asserted Patents" or "Patents-in-Suit" also includes each patent individually and all combinations and sub-combinations of the patents.

12.     "Application" means any patent application or similar document anywhere in the world, including but not limited to any provisional application, continuing application, continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, and abandoned application.

13.     "Related Patents" and/or "Related Applications" means any patent or Application filed anywhere in the world that is related to any Asserted Patent, including but not limited to any patent or Application that (i) claims priority in whole or in part to or from any Asserted Patent, (ii) is the basis for a claim of priority in whole or in part for any Asserted Patent, or (iii) discloses the

same subject matter as any Asserted Patent or shares any part of its written description with the written description of any Asserted Patent.

14.     "Prior Art" means the same as it is used in "pre-AIA" 35 U.S.C. § 102 (as of December 31, 2012) and includes any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or other act or event defined in "pre-AIA" 35 U.S.C. § 102 (as of December 31, 2012), taken alone or in combination.

15.     "Including" or any variant thereof means "including without limitation."

16.     "And" and "or" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

17.     "Any" and "all" mean "any and all."

18.     "Each" and "every" mean "each and every."

19.      "You," "your," or "yours" mean Omni, as defined herein.

20.     "Thing(s)" has the broadest meaning allowable under Federal Rule of Civil Procedure 34 and Commission Rule 210.30 and includes any tangible object other than a document and, without limitation, objects of every kind and nature, as well as prototypes, models, or physical specimens thereof.

21.     "Document" has the same broad meaning as used in Rule 210.30(a)(1), and includes, without limitation, any thing or any written or graphic matter or any medium of any type or description upon which intelligence or information is recorded, or from which intelligence or information can be perceived, including computer, electronic, magnetic and optical media of all kinds, which is or has been in the possession, custody or control of Omni, or of which Omni has knowledge, including the original and any non-identical copy (whether different from the original because of notes made on said copy or otherwise) of any advertising literature; agreement; bank

record or statement; blueprint; book; book of account; booklet; brochure; calendar; chart; circuit diagram; circular; coding form; communication (intra- or inter-company); components listing; computer data; computer printout; computer software and supporting indices; data; documentation; flow charts; comments; object code; firmware; source code and computer programs; contract; copy; correspondence; data base; design document; diary; die; display; draft of any document; drawing; electronic mail (e-mail); engineering change order; engineering specification; film, film transparency; flyer; forecast; graph; index; instruction; instruction manual or sheet; internet pages; invoice; job requisition; letter; license; log; machine readable form; manual; manufacturing data; manufacturing drawing; map; marketing plan; mask; memoranda; minutes; model; newspaper or other clippings; notes; notebook; opinion; packing checklist; packing list; pamphlet; paper; periodical or other publications; photograph; physical object; press release; price list; print; printed circuit board; product brochure; product specification; promotional literature; prototype; receipt; record; recorded read-only memory (ROM); recording; report; sales data; schematic; sketch; solicitation; statement; statistical compilation; stenographic note; study; summary (including any memoranda, minutes, notes, records or summary of any (a) telephone or intercom conversation or message, (b) conversation or interview, or (c) meeting or conference); technical, service or operational manual; technical specification; telegram; telephone log; timing diagram; travel or expense records; video recording; videotape; voice recording; voucher; worksheet or work paper; and any other documentary material of any nature.

22.  "Technical Documents" means schematics, flow charts, engineering drawings, logic diagrams, circuit diagrams, block diagrams, design specifications, high-level, mid-level, or low-level design review documents, top level or low level module documents, training documentation, data sheets, integration information and guidelines, Computer Aided Design

("CAD") files, including GDS files, process flow diagrams and/or state machine diagrams, test procedures, compliance test results, and any other piece or part drawings (*e.g.*, picture, electronic representation, or any depiction of any circuitry or structure).

23. "Source Code" means any source code for software or firmware, hardware code, assembly code, or other computer code, including but not limited to any code written in an assembly language, C, C++, VHDL, Verilog, or other programming or hardware description language.

24. "Person" or "persons" means an individual, corporation, proprietorship, partnership, association, or any other entity.

25. "Regarding" means concerning, regarding, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

26. "Entity" means any natural person, corporation, partnership, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic person.

27. "Communication" or "communicated" means any contact between two or more entities by which any information or knowledge is transmitted or conveyed or attempted to be transmitted or conveyed, including written contact including letters, memoranda, telegrams, telefaxes, telecopies, telexes or e-mails, text messages and oral contact including face-to-face meetings, telephone conversations, voicemails, answering machine messages and telephonic notes.

28.     "Relating to" or "related to" when referring to any given subject matter means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

29.     The term "identify" when used in conjunction with a person means to provide, to the extent known, the person's full name, present or last known address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment and, when referring to a current or former director, officer, manager or other employee of Omni, additionally the title(s) or position(s) held by such person, the time periods during which such person held such position(s), and a description of the responsibilities of such person to those position(s).

30.     The term "identify" when used in conjunction with a document or other thing means to specify the document or thing in sufficient detail to permit UEI to locate the document or thing.

### INSTRUCTIONS

1.     You are to search all documents within your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities or in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on your behalf (whether located at his/her residence or place of business), in order to fully respond to the requests herein.

2.     You are to produce documents from any single file in the same order as they were found in such file, including any labels, files, folders, and containers which such documents are located in or associated with.  If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

3.       If you do not produce each document or thing requested herein as they are kept in the usual course of business, you must organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

4.       You are to produce all documents which are responsive in whole or in part to any of the requests herein in full, without abridgement, abbreviation, or expurgation of any sort, and regardless of whether you deem such documents to be irrelevant to the issues in the investigation for which such documents are being sought  If any such documents cannot be produced in full, produce the document to the extent possible and indicate in your written response what portion of the document is not produced and why it could not be produced.

5.       You are required to produce not only the original or an exact copy of the original of all documents or things responsive to any of the requests herein, but also all copies of such documents or things which bear any notes or markings not found on the originals and all preliminary, intermediate, final, and revised drafts or embodiments of such documents or things. You are also required to produce all versions of the foregoing documents stored by a computer internally, on disk, on CD-ROM, or on tape.

6.       You are to produce any purportedly privileged document containing non-privileged matter, with the purportedly privileged portion excised or redacted.

7.       If any of the documents requested herein are no longer in your possession, custody, or control, you are requested to identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

8.    If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, the date of such destruction, and the name of the person who ordered or authorized such destruction.

9.    Electronic and computerized materials must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit tendering of the material intelligible.

10.    If any of the documents or things are considered "confidential business information," as that term is defined in the attached protective order ("Protective Order"), such documents or things should be produced subject to the terms and provisions of the Protective Order.

11.    If production of any document listed and described in Attachment A hereto is withheld on the basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list.  The privileged document list must identify each document separately, specifying for each document at least: (1) the date; (2) author(s)/sender(s); (3) recipient(s), including copy recipients; and (4) general subject matter of the document.  The sender(s) and recipient (s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated.  If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified.  The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All agreements with Roku regarding the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 2:**

All agreements with Philips regarding the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and things sufficient to identify all persons and/or entities that currently hold, or have previously held, an interest, including but not limited to a financial interest, any ownership interest, beneficial ownership interest, or any license or other power to enforce any interest, in the Asserted Patents or Related Patents, and any foreign counterparts to the Asserted Patents or Related Patents, including for each person or entity the nature of such interest and the date that any such interest was acquired.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and things relating to the ownership, title, financial or other interest in, license, transfer, acquisition, assignment (actual or potential), sale, or offer to assign, sell, or transfer of the Asserted Patents, Related Patents, and/or Related Applications, including without limitation any actual or potential license agreements, settlement agreements, covenants not to sue, indemnity agreements, grants of a right to practice, and any negotiations or communications related thereto, regardless of whether any such agreement was actually executed.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and things, including but not limited to any investigation, opinion, report, assessment, evaluation, model, presentation, opinion, or observation. relating to the patentability,

validity, enforceability, inventorship, scope, inequitable conduct, infringement, commercial value, licensing, payment of royalties, royalty rate(s), strength(s), or weakness(es) of any claim of the Asserted Patents, Related Patents, and/or Related Applications, or any U.S. or foreign patent or pending or abandoned patent application that claims priority from the Asserted Patents, whether individually or as part of a group of patents.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and things relating to the identification, selection, or determination of the proper inventors for the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and things sufficient to identify any individual involved in any proposals, discussions, presentations, drafts, revisions, or communications relating to the subject matter of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and things showing the individual contribution of each person named as an Inventor on each application, including provisional applications, to which any of the Asserted Patents claim priority to the conception, design, development, diligence, or reduction to practice of the subject matter of the claims of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and things relating to the conception of the subject matter of the Asserted Patents, including, without limitation, any engineering notebooks, laboratory notebooks, log books, records books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention

disclosures, patent prosecution records, or any other documents or things which corroborate the conception.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and things relating to any actual reduction to practice of the subject matter of the Asserted Patents, including, without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which corroborate the reduction to practice.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and things relating to any act of diligence leading to the reduction to practice of the subject matter of each claim of the Asserted Patents, including, without limitation, any engineering, notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which corroborate any act of diligence leading to the reduction to practice.

**REQUEST FOR PRODUCTION NO. 12:**

All engineering notebooks, laboratory notebooks, records, logs, and files relating to the subject matter of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and things relating to publications, abstracts, papers, presentations or speeches authored or given, in whole or in part, by Omni or Philips or any named inventors of the

Asserted Patents relating to, in whole or in part, the subject matter of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 14:**

The personnel and employment history files for each of the named inventors of the Asserted Patents, Related Patents, and Related Applications, including resumes, curricula vitae, and any descriptions of their responsibility for or duties relating to the use, research, design, development, testing, manufacture, operation, distribution, importation, sale, licensing and marketing of any products or methods that embody, any products or methods that embody, fall within the scope of, or are practiced in accordance with any subject matter disclosed or claimed in the Asserted Patents, Related Patents, and Related Applications.

**REQUEST FOR PRODUCTION NO. 15:**

All contracts or agreements between Omni, any other current or former owner of the Asserted Patents, and any Inventor named in the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and things, including but not limited to communications, from or to Omni or from or to any of the named inventors of the Asserted Patents regarding the subject matter of any claim of any of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 17:**

All documents and things relating to any communication between You and any other entity regarding the Asserted Patents, Related Patents, and/or Related Applications, including, without limitation, documents related to Your purchase, ownership, and sale of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 18:**

All documents and things related to any written description of any claim of the Asserted Patents, including, without limitation, all "invention disclosures" and other written descriptions authored by any named inventor(s) of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things related to Omni's decision to seek patent protection, including the acquisition of intellectual property, for the subject matter of any claim of any of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things relating to the preparation, filing and/or prosecution of (including but not limited to any communication, meeting, or contact with the U.S. Patent and Trademark Office or any foreign patent office concerning):

(a)     the Asserted Patents;

(b)     any Related Patent or Related Application;

(c)     any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

(d)     any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

(e)     any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things relating to any decision as to what prior art references to cite, or to not cite, including all prior art search results, during the prosecution of:

(a)      the Asserted Patents;

(b)      any Related Patent or Related Application;

(c)      any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

(d)      any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

(e)      any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

## REQUEST FOR PRODUCTION NO. 22:

All documents and things relating to any lawsuit, judicial proceeding, arbitration, patent interference proceeding, appeal proceeding, reissue or reexamination proceeding, or patent opposition or cancellation proceeding relating to:

(a)      the Asserted Patents;

(b)      any Related Patent or Related Application;

(c)      any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

(d)      any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

(e)      any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

## REQUEST FOR PRODUCTION NO. 23:

All documents and things relating to any search for or investigation of any prior art or other information, regarding the patentability, validity, or scope of the subject matter of any claim of:

15

(a)      the Asserted Patents;

(b)      any Related Patent or Related Application;

(c)      any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

(d)      any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

(e)      any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

## REQUEST FOR PRODUCTION NO. 24:

All documents and things relating to any identification, evaluation, analysis, or review of any prior art, including any public uses, demonstrations, advertising, sales, or offers for sales of any embodiment, relating to the Asserted Patents, Related Patents, and/or Related Applications or of any documents and things that refer to any prior art relating to the Asserted Patents, Related Patents, and/or Related Applications.

## REQUEST FOR PRODUCTION NO. 25:

All documents and things relating to the following products: the Zenith ZN501S remote control and the Philips US2-PMDVD6, including but limited to any product manuals, brochures, marketing materials, specifications, diagrams, source code, offers for sale, price quotes, demonstrations, and sales data (including at least month, year, unit volume and geographic location of the sales).

## REQUEST FOR PRODUCTION NO. 26:

All documents and things relating to communications about patent enforcement, Respondents' alleged infringement, or Roku's intention to file an infringement action involving

16

the Asserted Patents, including communications with third parties, such as contacts with any third parties, any Respondent's customers or suppliers, investors, analysts, financial institutions, news organizations, or other media.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and things relating to any payment or compensation paid by Omni or any current or former owner of the Asserted Patents to any Inventor named in the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 28:**

All communications, documents, and things relating to any excuse for delay, or lack thereof, in prosecution of the Asserted Patents, Related Patents, or Related Applications.

# ATTACHMENT B

**DEFINITIONS**

The definitions set forth in Attachment A are incorporated by reference.

**TOPICS**

You are required to provide one or more individuals who are knowledgeable and

competent to provide testimony about the following topics:

A.    Omni's policies and practices involving the documents produced in response to Attachment A, including, but not limited to:

    i.    The authenticity of the documents produced in response to Attachment A.

    ii.    Whether the documents produced in response to Attachment A are true and correct copies of the originals maintained by Omni.

    iii.    Whether the documents produced in response to Attachment A are what they purport to be.

    iv.    Whether the documents produced in response to Attachment A were created by the people listed as the author, and, if no author is listed, who the author is.

    v.    Whether the people listed as recipients of the documents produced in response to Attachment A received a copy of the produced document(s), and if no recipients are listed, who received a copy of the produced document(s).

    vi.    Whether the documents produced in response to Attachment A were created in the normal course of business and/or a regularly conducted business activity.

    vii.    Whether the creation of the documents produced in response to Attachment A was a regular part of the business activity.

    viii.    The dates on or about which the documents produced in response to Attachment A were created.

    ix.    The reasons for creating the documents produced in response to Attachment A.

    x.    Whether the documents produced in response to Attachment A were created by or based on information from people with knowledge of the activity recorded.

xi.     Whether the documents produced in response to Attachment A are the types of documents that are normally relied upon as a record of the activity recorded.

xii.    The subject matter of any of the documents produced in response to Attachment A.

B.     The substance of the documents produced in response to Attachment A.

C.     Contracts or agreements between Omni, any other current or former owner of the Asserted Patents, and any Inventor named in the Asserted Patents.

D.     The facts and circumstances relating to any transfer of ownership and assignment of the Asserted Patents, including but not limited to the transfer of ownership and Assignment of the Asserted Patents to Roku.

E.     The preparation, filing and/or prosecution of:

i.      the Asserted Patents;

ii.     any Related Patent or Related Application;

iii.    any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

iv.     any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

v.      any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

F.     The facts and circumstances relating to the development, marketing and sale of the Zenith ZN501S remote control and the Philips US2-PMDVD6 remote control.

# ATTACHMENT C

# UNITED STATES INTERNATIONAL TRADE COMMISSION

## Washington, D.C.

---

| |
|---|
| **In the Matter of** |
| **CERTAIN TELEVISIONS, REMOTE CONTROLS, AND COMPONENTS THEREOF** |

**Inv. No. 337-TA-1263**

---

**ORDER NO. 2:**         **NOTICE OF GROUND RULES**

(May 21, 2021)

The conduct of this Investigation shall be governed by the Commission Rules and the

Ground Rules attached hereto as Attachment A.

**SO ORDERED.**

MaryJoan McNamara
Administrative Law Judge

**ATTACHMENT A**

**ALJ MARYJOAN MCNAMARA'S GROUND RULES**
**FOR THIS SECTION 337 INVESTIGATION 337-TA-1263 (5/20/2021)**

These Ground Rules supplement the Commission's Rules of Practice and Procedure, 19 C.F.R. Parts 201 and 210 ("Commission Rules"), in order to aid the Administrative Law Judge in the orderly conduct of this Section 337 Investigation.

These Ground Rules govern a U.S. patent-based investigation. In the case of an investigation based upon a registered copyright, registered trademark, or registered mask work, additional Ground Rules may also govern. In addition, in a case involving a motion for temporary relief, Ground Rules in addition to Ground Rule 1.8 may also govern.

**COVID-19 Changes: Please note that while the COVID-19 Commission evacuation rules are in effect, paper copies of documents may not be submitted even though a number of Ground Rules require paper copies. Please disregard those Ground Rules.**

**Until the Commission advises that the evacuation has ended, courtesy copies of documents that are filed on EDIS should be submitted to Chambers through McNamara337@usitc.gov.**

**Similarly, Chambers cannot accept CD-ROMs or Flash Drives of documents during the evacuation. Accordingly, wherever the Ground Rules request such submissions, please contact my attorney, Ms. Jae Lee at jae.lee@usitc.gov and McNamara337@usitc.gov for instructions on how to submit voluminous documents.**

**Applications for subpoenas must be submitted in Microsoft Word to McNamara337@usitc.gov. Subpoena applications submitted to McNamara337@usitc.gov must comply with the substantive requirements of Ground Rule 3.5.**

**Courtesy copies of Expert Reports and Expert Rebuttal Reports must be submitted to McNamara337@usitc.gov. There has been a problem with the manner in which parties have failed to ensure that appropriate sections or paragraphs of expert reports are admitted into evidence post-hearing. The same is true of deposition transcript passages. This will be a matter for discussion during one of the Management Telephone Discovery Conferences, most likely the first scheduled Telephone Conference.**

**The Commission has selected Cisco's WEBEX as the secure video platform that we use. Evidentiary hearings will be held by WEBEX if the Commission building is not open by the date of the evidentiary hearing in this Investigation. You can expect that telephone management conferences may be held by either Telephone or by WEBEX, at least until the Commission building is open again. The parties will be given instructions: for access to WEBEX, maintaining document/testimonial confidentiality, for marking and submitting**

exhibits, together with other guidelines (such as timing of submissions) as may be necessary.

For filing on EDIS, please work with Dockets and the guidelines they have instituted.

# TABLE OF CONTENTS

1.      General Procedures and Information. ............................................................. 1
1.1.    Address of Administrative Law Judge. ......................................................... 1
1.2.    Filing Requirement. ...................................................................................... 1
1.3.    Service Copy Requirement. .......................................................................... 1
1.3.1.   Paper Copies. ............................................................................................... 1
1.3.2.   Electronic Copies. ........................................................................................ 2
1.4.    Submission by Fax Disfavored. .................................................................... 2
1.5.    Concurrent Service. ...................................................................................... 2
1.6.    Confidential Submissions. ............................................................................ 2
1.7.    Unreported Court Decisions. ........................................................................ 3
1.8.    Temporary Relief. ......................................................................................... 3
1.9.    Deadlines and Extensions. ............................................................................ 4
1.10.   Redaction Requirements for Public Versions of Orders and Teleconference Transcripts.
        4
1.11.   Electronic Filing (EDIS). ............................................................................. 5
1.12.   Computation of Time. ................................................................................... 6
1.13.   Procedural Schedule. ..................................................................................... 6
1.14.   Early Claim Construction. ............................................................................ 9
1.14.1.  *Markman* Briefing. ...................................................................................... 11
1.14.2.  *Markman* Pre-Hearing Statement. .............................................................. 12
1.14.3.  *Markman* Hearing Evidence. ...................................................................... 12
1.14.3.1. Exchange of Proposed Exhibits. .................................................................. 12
1.14.3.2. Service of Proposed Exhibits upon Administrative Law Judge. ................. 13
1.14.3.3. Format and Submission of Admitted Exhibits. ............................................ 13
1.14.4.  *Markman* Hearing. ...................................................................................... 13
1.14.4.1. Opening Statement and Closing Argument. ................................................. 14
1.14.4.2. *Markman* Hearing Hours. ............................................................................ 14
1.14.4.3. Admission of Exhibits. ................................................................................. 14
1.14.4.4. Transcript. .................................................................................................... 14
1.15.   Stipulations. ................................................................................................. 14
1.16.   Protective Orders and Patent Prosecution Bars. ......................................... 15
2.      Motions. ....................................................................................................... 16
2.1.    Contents. ...................................................................................................... 16
2.2.    Certification. ................................................................................................ 17
2.3.    Motions to Strike. ........................................................................................ 17
2.4.    Summary Determination Motions. ............................................................... 18
2.5.    Management Conferences, Discovery Conferences and Discovery-Related Motions. ..... 19
2.5.1.   Contents. ...................................................................................................... 20
2.6.    Request for Shortened Time to Respond to Motion. .................................... 20
2.7.    No Motion Stops Discovery Except Motion to Quash Subpoena. ............... 20
2.8.    Motion Deadlines in the Procedural Schedule. ........................................... 20
2.9.    Mootness. ..................................................................................................... 21
3.      Discovery. .................................................................................................... 21

3.1.    Resolution of Disputes; Coordinated Discovery.........................................................21
3.1.1.    Discovery Committee.........................................................................................21
3.2.    Stipulations Regarding Discovery Procedure.............................................................22
3.3.    Service of Discovery Requests and Responses..........................................................22
3.4.    Timing of Discovery Requests, Responses and Objections........................................22
3.4.1.    Depositions........................................................................................................22
3.4.1.1.    Depositions in Japan.......................................................................................23
3.4.2.    Interrogatories....................................................................................................23
3.4.2.1.    Contentions and Contention Interrogatories ................................................23
3.4.3.    Requests for Production of Documents or Things or for Entry upon Land. ..................24
3.4.4.    Request for Admission........................................................................................24
3.4.5.    Discovery Cutoff and Completion......................................................................24
3.5.    Subpoenas..................................................................................................................24
3.5.1.    Issuance and Service..........................................................................................24
3.5.2.    Signed Subpoenas..............................................................................................25
3.5.3.    Extensions and Enforcement..............................................................................25
3.6.    Bates Numbering........................................................................................................26
3.7.    Translations................................................................................................................26
3.8.    Privileged Matter.......................................................................................................26
4.    Notice of Patent Priority Dates and Notice of Prior Art. ..............................................27
4.1.    Patent Priority Dates..................................................................................................27
4.2.    Prior Art.....................................................................................................................27
5.    Expert Witnesses and Reports......................................................................................28
6.    Settlement; Settlement Reports.....................................................................................28
7.    Pre-Hearing Submissions..............................................................................................29
7.1.    Pre-Hearing Statement...............................................................................................29
7.2.    Pre-Hearing Brief.......................................................................................................31
7.2.1.    Content of Pre-Hearing Brief.............................................................................31
7.3.    Joint Outline of Issues in Chart Form.......................................................................32
8.    Hearing Exhibits...........................................................................................................33
8.1.    Material to Be Received Into Evidence......................................................................33
8.2.    Legal Experts..............................................................................................................33
8.4.    Witness Testimony.....................................................................................................33
8.4.1.    Witness Statements in Lieu of Direct Testimony (RARE)................................33
8.4.2.    Format of Witness Statements (RARE)..............................................................34
8.5.    Expert Reports............................................................................................................35
8.6.    Foreign Language Exhibits.........................................................................................35
8.7.    Exhibits.......................................................................................................................35
8.7.1.    Exchange of Proposed Exhibits..........................................................................35
8.7.2.    Service of Proposed Exhibits upon Administrative Law Judge...........................36
8.7.3.    Format of Optional Paper Version of ALJ Exhibit Set......................................36
8.7.4.    Maintenance and Filing of Final Exhibits and Final Exhibit List......................36
8.7.5.    Numbering and Labeling of Exhibits; Confidential Exhibits..............................37
8.7.5.1.    Documentary Exhibits....................................................................................38
8.7.5.2.    Physical Exhibits............................................................................................38

8.7.5.3.    Demonstrative Exhibits. ............................................................................. 39
8.7.5.4.    Joint Exhibits. ............................................................................................ 39
8.7.6.    Exhibit Lists. ................................................................................................... 39
8.7.7.    Witness Exhibit Binder. .................................................................................. 40
8.7.8.    Authenticity. .................................................................................................... 40
8.7.9.    Sponsoring Witness. ....................................................................................... 40
8.7.10.    High Priority Objections and Motions *in Limine* for Hearing. ..................... 41
8.8.    Filing of Exhibits by CD/DVD Media. ............................................................ 41
9.    Hearing Procedure. ............................................................................................. 42
9.1.    Order of Examination. ...................................................................................... 42
9.2.    Opening Statement and Closing Argument. ...................................................... 42
9.3.    Hearing Hours. .................................................................................................. 42
9.4.    Hearing Decorum. ............................................................................................. 42
9.4.1.    Conversations at Hearing. ............................................................................. 42
9.4.2.    Cell Phones and Beepers; Food and Beverages. .......................................... 42
9.4.3.    Swearing of Witnesses. .................................................................................. 43
9.4.4.    Arguments on Objection. ............................................................................... 43
9.5.    Examination of Witnesses. ............................................................................... 43
9.5.1.    Scope of Examination. ................................................................................... 43
9.5.2.    Scope of Cross-Examination. ........................................................................ 43
9.5.3.    Scope of Redirect and Re-Cross Examination. ............................................ 43
9.5.4.    Coordination of Witnesses. ........................................................................... 43
9.5.5.    Documents Presented to Witnesses. ............................................................. 43
9.5.6.    Scope of Expert Witness Testimony. ............................................................ 44
9.5.7.    Coordination of Respondents' Cross-Examination. ..................................... 44
9.5.8.    Requests for Clarification of a Question. ...................................................... 44
9.5.9.    Use of Translators. ......................................................................................... 44
9.5.10.    Conferring with a Witness during a Break in Testimony. ........................... 44
9.6.    Transcript. ......................................................................................................... 44
9.7.    Bench Briefs. ..................................................................................................... 44
9.8.    Objections to Evidence/Testimony and Motions to Strike. .............................. 45
10.    Post-Hearing Submissions. ................................................................................ 45
10.1.    Initial Post-Hearing Briefs. ............................................................................ 45
10.2.    Post-Hearing Reply Briefs. ............................................................................ 47
10.3.    Proposed Findings of Fact. ............................................................................ 47
11.    Citations. ............................................................................................................ 48
11.1.    Citations Generally. ........................................................................................ 48
11.2.    Citation to Cases. ............................................................................................ 48
12.    Cooperation among Parties. ............................................................................... 48
13.    *Ex Parte* Contacts. .......................................................................................... 48
14.    Mediation. .......................................................................................................... 49
15.    Management Conference Instructions. ............................................................... 49

## JUDGE McNAMARA'S GROUND RULES (5/20/2021)

**1.      General Procedures and Information.**

   **1.1.      Address of Administrative Law Judge.**

   The Administrative Law Judge's address is as follows:

>       The Honorable MaryJoan McNamara
>       U.S. International Trade Commission
>       500 E Street, S.W., Room 317
>       Washington, D.C.  20436

   **1.2.      Filing Requirement.**

   All submissions shall be filed with the Office of the Secretary of the Commission in accordance with Commission Rule 210.4(f) unless otherwise specifically provided for in these Ground Rules or by order of the Administrative Law Judge.  *See* the Handbook on Filing Procedures at www.usitc.gov/secretary/documents/handbook_on_filing_procedures.pdf[1] for further details.  The parties should be aware that the close of business for the agency is 5:15 pm. *See* Commission Rule 201.3(c).

   Additionally, all documents filed on EDIS, including motions, memoranda in support of motions, oppositions to motions, and responses to motions, should contain at the bottom of each page, the title of the filed document and the party who filed it.

   **1.3.      Service Copy Requirement.**

      **1.3.1.      Paper Copies.**

   Copies of the papers filed with the Secretary shall be served concurrently on all other parties, including the Commission Investigative Staff (if named as a party).  Also, two (2) double-sided courtesy paper copies shall be served on the Administrative Law Judge ("ALJ"), addressed to her, at her office the next business day[2] after the papers are electronically filed with the Secretary.  *See* Ground Rule 7 regarding courtesy copies of pre-hearing statements, pre- and post-hearing briefs, and motions *in limine*.  (**NB: During the Pandemic, no paper copies are being filed with/sent to OALJ).**

         **1.3.1.1.      Binder.**

---

[1] *See also* http://www.usitc.gov/docket_services/index.htm.

[2] Parties need not serve courtesy paper copes of subscriptions to the protective order that have been filed on EDIS, although electronic courtesy copies are still required.

If any document exceeds three (3) inches in depth, at least one of the two courtesy copies submitted to chambers should be submitted in a labeled binder for the ALJ.  (*See* above).

### 1.3.2.   Electronic Copies.

In addition to that which is required in Ground Rule 1.3.1, while the Investigation is pending before the Administrative Law Judge, any party submitting a motion or any response to a motion, as well as any other paper submitted in this Investigation, shall on the same business day as the electronic filing, send one: (1) courtesy electronic copy of said document in Microsoft Word or PDF format (preferred), excluding exhibits, to the Administrative Law Judge's Attorney Advisor who is named in the Scheduling Order and to McNamara337@usitc.gov

The electronic courtesy copy should be sent either (i) via e-mail (preferred) to my designated Attorney Advisor or (ii) on disc. If by e-mail, please also send to McNamara337@usitc.gov. Copies submitted on disc must be clearly labeled with the Investigation number, party name, document title, and whether the files it contains are public or confidential.  Copies sent via e-mail should include the number of this Investigation as the first item in the subject line and *must be followed by a very brief summary of the contents*.  For example, the subject line may[3] read: "Inv. No. 337-TA-9##, Motion for Summary Determination."

### 1.4.   Submission by Fax Disfavored.

Submissions to the Administrative Law Judge by fax are **strongly** disfavored and are not to be made without her prior approval.

### 1.5.   Concurrent Service.

The parties are encouraged to confer and stipulate in writing to acceptable forms and terms of service.  Service on opposing counsel may be made by hand, facsimile, e-mail, or overnight courier.  Any foreign respondent who is not represented by counsel may be served by first class mail.  A motion served by overnight courier must be received by the other parties no later than the close of business on the day after the day it was filed.

### 1.6.   Confidential Submissions.

Any document containing confidential business information shall be prominently marked on at least its first page with the legend "confidential business information," or equivalent wording.[4]  Documents filed with confidential attachments shall similarly contain a prominent marking on at least the first page of the document indicating that there are confidential attachments and at least the first page of each of the confidential attachments shall be marked pursuant to Commission Rules.  A party who mistakenly files a document without a confidential designation thereon shall immediately contact the Office of the Secretary and the Administrative Law Judge's Attorney Advisor.

---

[3] The investigation number followed by the word "service" is not adequate.

[4] *See* Commission Rules 210.6 and 210.34.  It is recommended that every confidential page be so marked.

If a motion or related document (e.g., response, reply, stipulation or exhibit) is filed as confidential because it purportedly contains CBI as defined in 19 C.F.R. § 201.6(a), the private parties must file a non-confidential, public version of the motion and related document within five (5) business days from the date of the purportedly confidential filing.  Each filed version of the motion or related document must be labeled appropriately as either public or confidential (with the latter labeled as containing CBI consistent with past practices).

When redacting CBI, a high level of care must be exercised in order to ensure that non-confidential business information is not redacted or indicated.  The document labeled confidential should contain brackets and highlighting, in accordance with Ground Rule 1.10, of only that material/information that complies with 19 C.F.R. § 201.6(a).  Other than in extremely rare circumstances, block-redaction and block-bracketing are prohibited.  In most cases, redaction or bracketing of only discrete CBI words and phrases will be permitted.  Titles of documents shall not contain CBI.

All confidential motions and confidential responses to motions must be accompanied by declarations, grounded in facts, explaining how each proposed redaction is CBI.

Exhibits attached to the confidential motions and confidential responses to motions generally need not be bracketed, although CBI contained in an exhibit must be bracketed when quoted in a motion or response thereto. If an exhibit is a brief for which the moving party seeks leave to file, e.g., a reply brief attached as an exhibit to a motion for leave to reply, then that exhibit shall be bracketed.  If the main text of a confidential motion or response contains no redaction, the declaration shall explain why the filing is designated confidential (e.g., the motion contains no confidential text but has a confidential attachment).

The same day public version of confidential documents should have redacted the identical material/information bracketed and highlighted in the confidential version.

For those cases where the Office of Unfair Import Investigations ("OUII") is a party, OUII shall have ten (10) business days to submit a non-confidential version of the motion and/or related document.

### 1.7.    Unreported Court Decisions.

Any submission that refers to an unreported court decision shall include as an exhibit the text of the decision.

### 1.8.    Temporary Relief.

In any aspect of an Investigation which involves a pending motion for temporary relief, a party serving any paper, including any motion or discovery requests, must notify counsel for the other parties, including the Commission Investigative Staff Attorney ("Staff") if Staff is a party, by telephone on the day the paper is served about the substance of the paper, and must arrange for the other parties to receive the paper the next business day.

### 1.9.    Deadlines and Extensions.

All due dates for any paper necessitate that the paper be received by the intended recipient no later than the close of business on the due date.  For this reason, electronic service on the other parties is encouraged.  *See* Commission Rule 201.16(f).

To extend a deadline, the parties must file a motion seeking an extension of time and must set forth good cause for such an extension.  Such motions must be filed on EDIS <u>no later than **two (2) days**</u> before the due date.  The parties shall not file any joint stipulations extending a deadline.

Urgent matters should be brought to the attention of the Administrative Law Judge as follows.  First, motions, responses, or other filings that are urgent or that should receive expedited treatment should be **clearly noted** in the document's caption.  Second, on the date of said filing, the Administrative Law Judge's Attorney Advisor must be notified by e-mail, with a copy to all parties that the matter is of pressing importance or urgency.  The parties should note, however, that the Administrative Law Judge has many ongoing investigations.  All pending matters will be addressed with as much dispatch as time and circumstances allow.

It is the responsibility of the other parties to promptly notify the Administrative Law Judge in writing if a party has filed or served a document after the deadline set in the procedural schedule or Commission Rules.  A party may correct an untimely filing or submission by promptly moving to have the document accepted out of time by the Administrative Law Judge and explaining the good cause for late consideration.  *See* Commission Rule 201.3(c).  The two-day meet and confer requirement is waived for such motions, although movants should attempt to determine the other parties' position with respect to the motion.  If no prompt[5] motion is brought, the Administrative Law Judge may in her discretion order that an untimely filed or served[6] document be disregarded.

### 1.10.    Redaction Requirements for Public Versions of Orders and Teleconference Transcripts.

Orders issued by the Administrative Law Judge may contain the confidential business information of the parties (or in some cases nonparties), in which case the orders will be designated confidential.  The Administrative Law Judge has the discretion, pursuant to Commission Rule 210.5(e), to determine whether the information designated confidential by the supplier is entitled to confidential treatment in orders, initial determinations, and other documents issued by the Administrative Law Judge.  The parties will receive instructions in said orders as to the submission of proposed redactions of confidential business information so that a public version of the order may be prepared.  Parties who do not intend to submit proposed redactions must notify the Administrative Law Judge in writing.  Due to changes to Commission

---

[5] The Administrative Law Judge suggests, but does not require, that this occur within two (2) business days of the late filing.

[6] The procedural schedule provides for certain documents to be submitted or served rather than filed on EDIS.  This rule shall apply equally to all due dates set forth in the procedural schedule, regardless of whether service or filing is required.

Rule 210.5, the Administrative Law Judge has a limited time to make a confidential order or initial determination available to the public.  Therefore the parties are expected to use their best efforts to facilitate timely issuance of public versions.

One document containing joint redactions is preferred, and sometimes will be ordered. If not, two (2) copies of a proposed public version of an issued order or initial determination must be submitted to the Administrative Law Judge at the time specified in the issued confidential order or initial determination.  Proposed redactions of information subject to the protective order should be bracketed and highlighted, for example, in yellow.

A party's proposed public version must be served on all parties at least one (1) business day before submission to the Administrative Law Judge.  Any party with comments regarding another party's proposed public version must submit them to the Administrative Law Judge on the same date as specified for the submission of the proposed public version.

If no proposed public version is received by the date set in an order requiring such submission, the totality of the order will be made public.  Parties should <u>not</u> file the proposed public version with the Secretary.  The Administrative Law Judge will issue the final public version of the order once all appropriate redactions are made.

The parties should note that it is the Administrative Law Judge's <u>firm</u> policy that the public has a right to know the substantive outcome of the Investigation.  Therefore for any order resolving a matter of substance (such as a *Markman* order, grant of summary determination, or final initial determination), the parties must pay particular attention to their proposed redactions. Only confidential business information ("CBI") should be redacted, even if this means redacting only a portion of a sentence.

For transcripts of teleconferences, the parties shall file confidential, final versions on EDIS as soon as they receive them from court reporters and <u>jointly</u> submit proposed redactions as they would for Orders, i.e., bracketed and highlighted, for example, in yellow, within 10 days of the teleconference, unless requested otherwise by the Court.   If the parties disagree about a redaction, the parties' joint submission should include a cover letter specifically identifying the page number(s) on which the disputed proposed redactions can be found and a legal justification for each such redaction.  *See*, e.g. *Certain Light-Emitting Diode Products and Components Thereof*, 337-TA-947, Order No. 57 (April 29, 2016). After the proposed redactions have been reviewed, the parties will be informally notified as to which redactions have been approved. Within seven (7) days of such notice, one of the parties (to be decided between the parties) shall file a public version of the transcript on EDIS.

### 1.11.   Electronic Filing (EDIS).

Commission Rule 210.4(f) governs the electronic filing of certain documents in Section 337 Investigations with the Office of the Secretary via the Commission's Electronic Document Information System (EDIS).  Filing through EDIS, however, does not remove the requirement that parties also submit two (2) double-sided paper copies and an electronic copy of such filing with the office of the Administrative Law Judges.  *See* Ground Rules 1.3.1, 1.3.2.

For additional information regarding EDIS, the parties may contact the EDIS Helpdesk at (202) 205-3347, review the Docket Services webpage,[7] or access the EDIS 3 User Guide currently found at the following Internet address:

http://www.usitc.gov/docket_services/documents/EDIS3UserGuide-External.pdf

### 1.12.  Computation of Time.

In addition to the requirements of Commission Rules 201.14, 201.16(d) and 210.6 for computation of time, if the last day of the period for making a submission falls on a day on which weather or other conditions have made EDIS and the Office of the Secretary of the Commission inaccessible, the cutoff shall be extended to the end of the next business day.

The first day of the ten (10) calendar days for responding to a motion shall be the first business day following the date that said motion was filed on EDIS.  In addition to the requirements of Commission Rules 201.16 and 210.15(c) governing the period for a nonmoving party's response to a written motion, the date of service of a motion on a nonmoving party by electronic mail, personal delivery, express-type mail or courier service is the date of delivery. The additional times provided under Commission Rules 201.16(d) and (e) after service by non-electronic means do not apply in such instances, unless service to a nonmoving party is effected in a foreign country.

### 1.13.  Procedural Schedule.

The Administrative Law Judge will establish a procedural schedule for this Investigation. Modifications of the procedural schedule by any party shall *be regulated by written motion showing good cause.  However, the parties should not expect to be able to modify the hearing dates absent exigent circumstances*.  The event and deadline dates in the procedural schedule will generally adhere (but may vary) to the following chronological order:

| |
| --- |
| **Deadline for proposed Procedural Schedule and Discovery Statement** |
| **Initial Case Management Conference (Parties should inform of notice of *de bene esse* depositions to Chambers and other Parties if known or agreed upon)** |
| **Deadline for Propounding Interrogatories** |
| **File identification of Expert Witnesses, including their expertise and Curriculum Vitae** |
| **Complainant files notice of Patent Priority Dates/dates of Conception/reduction to Practice** |
| **Respondent files Notice of Prior Art** |

---

[7] *See* http://www.usitc.gov/docket_services/index.htm.

| |
|---|
| **Complainant(s) and Respondent(s) provide Staff [8] with their proposed list of Claim Terms for Construction** |
| **Exchange proposed Claim Constructions** |
| **File Joint Claim Construction Chart** |
| **Parties Submit a Joint List showing each party's proposed construction of the disputed claim terms with briefs by all parties with regard to their initial claim constructions** |
| **Parties meet and confer (including Staff, if applicable) in an attempt to reconcile or otherwise limit disputed claim terms** |
| **Deadline to file *Markman* Hearing Proposals** |
| **Deadline for Disclosure of  Domestic Industry Products** |
| **Deadline for Disclosure of Domestic Industry Contentions** |
| **Deadline for Disclosure of Invalidity Contentions** |
| **Deadline for Disclosure of Infringement Contentions** |
| **Deadline For Initial Contention Interrogatories** |
| **Deadline For Initial Contention Interrogatory Responses** |
| **Technology Stipulation Deadline** |
| **Telephone Management Conference** |
| ***Markman* Hearing (if ordered)** |
| **Deadline for post-*Markman* Hearing claim construction** |
| **File Tentative List of Witnesses a Party will call to testify at the evidentiary hearing, with an identification of each Witness' relationship to the Party** |
| **Cutoff Date for Supplementation of Contention Interrogatories on Issues for which the Responding Party bears the Burden of Proof (this includes Affirmative Defenses)** |
| **Cutoff Date for Supplementation of Contention Interrogatories on Issues for which the Responding Party does not bear the Burden of Proof (this includes answering facts/rebuttal)** |

[8] If Staff is not a party to the Investigation, the private parties should exchange their proposed constructions.

| |
|---|
| **Fact discovery Cutoff and Completion** |
| **Last day for filing Motions to Compel Discovery** |
| **Attendance at one-day Mediation Session**[9] |
| **Submission of Joint Report on Mediation** |
| **Exchange of Initial Expert Reports (including, but not limited to charts, tests/surveys/data and the like)** |
| **Exchange of Expert Rebuttal Reports** |
| **File Expert Reports** |
| **File Expert Rebuttal Reports** |
| **Last day for filing Summary Determination Motions** |
| **Expert Discovery Cutoff and Completion** |
| **Submission of Statements Regarding the use of Witness Statements in lieu of Live Direct Testimony (rarely allowed), and statements regarding whether any Party intends to offer expert reports or parts thereof into evidence** |
| **Exchange of Exhibit Lists among the Parties** |
| **File Pre-hearing Statements and Briefs  -- Complainant(s) and Respondent(s)** |
| **File Pre-hearing Statement and Brief  -- Staff (if applicable)** |
| **File Motions for Receipt of Evidence without a Witness** |
| **Last day for filing Motions** *in Limine*[10] |
| **File Statement of High Pority Objections** |
| **File Responses to Statement of High Priority Objections** |
| **Submission of Declarations justifying confidentiality of Exhibits** |
| **Last day for filing Responses to Motions** *in limine* |
| **Tutorial on Technology** |
| **Pre-hearing Conference** |

---

[9] For any questions regarding the mediation program, the parties should refer to the Revised Users' Manual for Commission Mediation Program, available at http://www.usitc.gov.

[10] *See* Ground Rule 7 regarding format of courtesy copies.

| Evidentiary Hearing |
|---|
| File Initial Post-hearing briefs, Proposed Findings of Fact and Conclusions of law,[11] and final exhibit lists |
| Parties jointly submit electronic copy of Combined Exhibit Lists  (Note Deadlines in Adopted Procedural Schedule for Deadline to Submit Final Exhibit Lists and Exhibits to Chambers) |
| File Post-hearing Briefs, Objections and Rebuttals to Proposed Findings of Fact and Conclusions of Law |
| Initial Determination on Violation Target Date |
| Target Date for completion of Investigation |

Where the procedural schedule indicates the "last day to file," the parties should note that motions are expected on a rolling basis when issues are ripe for determination.

The example Procedural Schedule, **above,** may change greatly depending upon complexity and the types, numbers and complexity of claims involved in the Investigation.

### 1.14.   Early Claim Construction

At the start of an Investigation involving patent litigation, the Administrative Law Judge may order early claim construction, or alternatively, may provide the parties with an opportunity to submit proposals requesting early claim construction.  Regardless of whether an early claim construction hearing is ordered, the parties are expected to disclose and solidify their claim construction positions early in the Investigation.  Thus, the procedural schedule includes dates for identifying patent claim terms that need construction, for exchanging initial proposed constructions, for meeting and conferring to attempt to resolve disputed claim language, and for identifying a final joint list of disputed claim terms and including each party's final proposed constructions.

At the time that the parties first exchange their initial proposed constructions, any party who fails to set forth a specific proposed construction or who relies on the plain and ordinary meaning of the patent language at issue (without elaboration) may not subsequently elaborate or rely on a different proposed construction absent approval from the Administrative Law Judge.[12]

---

[11] In accordance with Commission Rule 210.40, a party may elect to file proposed findings of fact and conclusions of law; however, the other side is not required to respond to the proposed findings of fact and conclusions of law.  The lack of a response does not mean that the proposed findings of fact and conclusions of law are admitted, unless specifically stated as such.

[12] The Administrative Law Judge takes no position here with respect to the merits of proposing the plain and ordinary meaning (as understood by one of skill in the art) of a disputed term, which may be quite reasonable under the circumstances.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir.

In other words, the private parties are expected to make a near-simultaneous show of their "hands." Regardless of a claim construction a party proposed initially, during the meet and confer period, a party may shift position in order to "join" in proposing the claim construction position set forth by another party and also may shift position in order to reach agreement with all parties in order to resolve a disputed claim term in whole or in part. The parties will be bound by their claim construction positions set forth on the date they are required to submit a joint list showing each party's final proposed construction of the disputed claim terms and will not be permitted to alter these absent a timely showing of good cause.

On the date set in the procedural schedule, the parties are to file a list of claim terms that each party contends should be construed, including any term to be given its plain and ordinary meaning. The parties shall thereafter meet and confer for the purposes of limiting the terms in dispute by narrowing or resolving differences and facilitating the ultimate preparation of a Joint Claim Construction Chart. The parties shall also jointly identify the 10 terms likely to be most significant to resolving the parties' disputes, including those terms for which construction may be case or claim dispositive. Parties will not be permitted to submit more than 14 terms for construction without leave of court.

If a *Markman* hearing in advance of the evidentiary hearing is ordered, the parties are required to confer and set a logical order for briefing the disputed claim terms of the asserted patents, and then follow that pre-set order in all *Markman*-related submissions and filings. *See*, for example, the relevant portions of **Appendix B**. Expert reports related to early claim construction may be required to be filed on EDIS. The procedural schedule, or other instructions to the parties, will state whether the reports should be filed or submitted.

The parties should also understand that, because of the tight schedule needed for expeditious proceedings, a *Markman* order may sometimes issue late in the Investigation, such as shortly before the hearing. The parties should not assume that a *Markman* order will issue before expert report deadlines or that there will be a seasonable opportunity to supplement expert reports after a claim construction ruling, or even before a claim construction ruling. *See* Ground Rule 5. Therefore, the parties are advised, to account for the proposed constructions of the other parties in their expert reports, and to ensure that the cutoff dates for contention responses are heeded. Expert reports should not be a vehicle for advancing new theories of a case. When a *Markman* order issues, the Administrative Law Judge will explain whether expert report supplementation is permitted. This typically will only be an opportunity for limited expert report supplementation and only with respect to final claim constructions that substantively differ from those proposed by any party. These will be permitted only by Leave of Court.

The parties and Commission Investigative Staff shall meet and confer on disputed claim construction issues no later than ten (10) days before the *Markman* hearing in order to reduce the number of disputed claim terms to a minimum. Before the *Markman* hearing, Complainant(s), Respondent(s) (if there is more than one Respondent, they are required to file a joint brief), and Staff shall file with the Administrative Law Judge, by the date set forth in the procedural schedule, a short written statement of its interpretation of each of the remaining disputed claim term together with its support for each interpretation as a matter of ordinary meaning, or as

---

2005). What is of concern is when a party makes a tactical decision to shift to a new, detailed disclosure after seeing what the other side has to offer.

derived from the claims, specification, or prosecution history of the patent(s) at issue, or from extrinsic evidence.  After the *Markman* hearing, the parties shall submit a joint chart, by the date set forth in the procedural schedule, setting forth their post-hearing constructions.

Absent a showing of good cause made at or before the *Markman* hearing, a subsequent *Markman* order may provide constructions for only the parties' top 10 terms.  After the Administrative Law Judge issues an order construing the disputed claim terms for the purposes of the Investigation, any discovery and briefing in the Investigation that occurs after shall be limited to that claim construction.

### 1.14.1.    *Markman* Briefing.

Absent prior approval of the Administrative Law Judge, initial *Markman* briefs shall not exceed 150 pages.  The parties should use their best efforts to attempt to resolve disputed claim language up to and throughout the *Markman* hearing and promptly notify the Administrative Law Judge in writing if any agreements are reached. The parties may be asked during a *Markman* hearing to make additional efforts to resolve their disputes.  If so, the parties may be given a certain amount of time after the *Markman* hearing to report on their attempts to resolve disputes and to resubmit any resolved, previously disputed constructions.  If the parties designate a large number of claim terms for construction, the Administrative Law Judge may set limits on the number of claim terms to be construed.  If the parties designate a large number of claim terms for construction, this may delay the issuance of any *Markman* order.

If the parties have agreed to the construction of any claim terms, the Administrative Law Judge considers those terms to be "in controversy"[13] and expects the parties to include a section in their *Markman* briefs setting forth in detail their rationale and support for their agreed upon constructions so that the Administrative Law Judge may make an independent evaluation.  *See Certain Reduced Ignition Proclivity Cigarette Wrappers and Products Containing Same,* Inv. No. 337-TA-756, Comm'n Op. at 43-44 (U.S.I.T.C., June 15, 2012).

Arguments that do not appear in the initial *Markman* briefs shall be deemed waived  As noted above, the parties will be bound by their final claim construction positions set forth on the date they are required to submit a joint list to the Administrative Law Judge, which may, in some circumstances, include post-*Markman* hearing constructions as described above.

If the parties have exhibits or attachments they wish to submit with their *Markman* briefing, these must correspond to the proposed exhibits that the parties intend to have entered into the record during the *Markman* hearing.  Citations to these attachments in the briefing should correspond to the proposed exhibit numbers.  This means the parties should meet and confer with respect to joint exhibits prior to the deadline for the initial *Markman* briefs.  For example, if Complainants intend to attach a copy of a dictionary definition, Complainants should mark that attachment as a proposed (four-digit) exhibit (*e.g.*, CXM-0003) and refer to that attachment by the proposed exhibit designation in the briefing (*e.g.*, *see* proposed CXM-0003 at

---

[13] *See Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1361 (Fed. Cir. 2011); *Vanderlande Indus. Nederland BV v. Int'l Trade Comm.*, 366 F.3d 1311, 1323 (Fed. Cir. 2004); *Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

14). The Administrative Law Judge may disregard any attachments to the *Markman* briefs that have not been admitted into the record during the *Markman* hearing.

The parties are expected to use extrinsic evidence only for the purposes set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) and *General Protecht Group, Inc. v. International Trade Comm'n*, 619 F.3d 1303, 1310-11 (Fed. Cir. 2010) or any other purpose the Federal Circuit has described in later opinions. "[A]n expert's subjective understanding of a patent term is irrelevant." *General Protecht*, 619 F.3d at 1310-11. The Administrative Law Judge may, in her discretion, strike or disregard improperly advanced extrinsic evidence.

Reply or responsive *Markman* briefs are generally disfavored. Such briefs are permitted only with leave, and then only with a showing of good cause. Reply or responsive briefs are likely to be page limited to no more than 25 pages without leave. They should not repeat arguments presented in initial *Markman* briefs.

### 1.14.2.    *Markman* Pre-Hearing Statement.

This section applies to **all** Investigations, whether or not patents are involved. However, any party who intends to take part in the *Markman* hearing in this Investigation must file on or before the date set forth in the procedural schedule a brief statement containing the following information:

(a) The names of all known speakers or witnesses, including an identification of whether the speaker is counsel, a fact witness, or an expert witness. If a party intends to use witnesses, the pre-hearing statement should include a very brief outline of the testimony of each witness.

(b) A list, by title and number, of all exhibits which the parties will seek to introduce at the *Markman* hearing. The list shall include five columns. In the first four columns, the party shall include the number of the exhibit, a brief description and the title of the exhibit, the purpose for which it is being offered, and each sponsoring witness. The last column shall be labeled "Received" and need only include sufficient space for a date.

(c) A list of any stipulations to which the parties have agreed. All stipulations should be filed on EDIS.

(d) A proposed schedule/allocation of time for the *Markman* hearing, including the estimated length for the appearance of each speaker or witness. (The parties shall confer on estimated dates and approximate length prior to submission of their pre-hearing statements).

### 1.14.3.    *Markman* Hearing Evidence.

### 1.14.3.1.    Exchange of Proposed Exhibits.

As noted above, the parties should meet and confer to identify and number joint exhibits prior to submission of the *Markman* briefs. Copies of proposed exhibit lists shall be served on the opposing parties by no later than the date set forth in the procedural schedule. Once the parties have exchanged their proposed exhibit lists, they shall further eliminate any inadvertent duplicate exhibits or renumber such exhibits as joint exhibits and update their exhibit lists. Any

exhibits that have been cited to in the *Markman* briefing that have been consolidated or renumbered must remain on the exhibit lists with a clear indication of what the new proposed exhibit number is.  For example, if Respondents, in Respondents' *Markman* brief, had cited to some dictionary definitions marked as RXM-0003 and this exhibit was later renumbered as JXM-0056 to remove duplication, the entry on Respondents' proposed exhibit list would reflect this change.

| RXM-0003 | Excerpts from Oxford English Dictionary, 2nd Ed. | Extrinsic evidence as to common meaning of disputed terms "coextensive" and "adjacent" | Respondents' presentation | **Renumbered to JXM-0056** |
|---|---|---|---|---|

Copies of proposed exhibits, if any, including all demonstratives, along with an updated proposed exhibit list, shall be served on the opposing parties by no later than the date set forth in the procedural schedule.  Proposed exhibits shall not be filed with the Office of the Secretary of the Commission or served on the Administrative Law Judge in advance of the *Markman* hearing.

Final proposed exhibit lists should be filed as part of the *Markman* pre-hearing statement.

### 1.14.3.2.	Service of Proposed Exhibits upon Administrative Law Judge.

Prior to the start of the *Markman* hearing, the parties must file their presentation slides which will be used by the Administrative Law Judge during and after the hearing (the "ALJ Set"), along with a proposed exhibit list.

### 1.14.3.3.	Format and Submission of Admitted Exhibits.

The parties should refer to the procedures in Ground Rule 8 below with respect to the format and submission of admitted and rejected *Markman* hearing exhibits.  *See* Ground Rule 8. Written exhibits shall be marked in order beginning with the four-digit number "0001" and preceded by the prefix "CXM" for Complainants' *Markman* exhibits, "RXM" for Respondents' exhibits, "SXM" for the Staff's *Markman* exhibits (if applicable), and "JXM" for any joint exhibits.

***Additionally, all exhibits that are filed on EDIS with a motion, memorandum, or Markman brief should contain an explanation of content and not simply identified as an exhibit with an alpha character or number.  For example, "Exhibit A:  Declaration of ____;" "Exhibit 1:  Declaration of ___."***

### 1.14.4.	*Markman* Hearing.

The parties have the discretion to determine the order of presentation and allocation of time for the *Markman* proceedings.  For example, the parties may have Complainants discuss all

of the patents before moving on to Respondents and then Staff (if applicable), or the parties may each present their arguments with respect to one patent before moving on to the next patent. The parties may also determine what, if any, time will be allocated for rebuttal. The parties should keep in mind that the total time allocated for one *Markman* hearing day is 6.5 hours.

### 1.14.4.1.        Opening Statement and Closing Argument.

Opening statements and closing arguments are not necessary. They are however helpful. The options are left to the parties. Technology tutorials for each asserted patent are recommended, but not required.

### 1.14.4.2.        *Markman* Hearing Hours.

Normal hearing hours are 9:30 a.m. to 5:30 p.m., with a one (1) hour luncheon recess and two (2) fifteen (15) minute breaks.

### 1.14.4.3.        Admission of Exhibits.

The parties are responsible for moving their exhibits into the record and should initiate admission of exhibits on the record with the Administrative Law Judge well in advance of the 5 p.m. (or other time) close of the *Markman* hearing. If the Administrative Law Judge approves admission of the requested exhibits, the parties should be prepared to submit a list of admitted exhibits to the hearing reporter for entry into the record.

The parties may seek to have demonstrative exhibits admitted into evidence for substantive or solely for demonstrative purposes. Such designation should be made clear on the record at the time of submission.

### 1.14.4.4.        Transcript.

The parties have the option of arranging for the *Markman* hearing transcript in real time. The Administrative Law Judge prefers to have hearing transcripts in real time.

## 1.15.   Stipulations.

### 1.15.1.        Stipulations Generally.

All stipulations between/among the parties should be filed on EDIS. The parties should also notify the Administrative Law Judge's Attorney Advisors via e-mail to McNamara337@usitc.gov of any such stipulations.

### 1.15.2.        Technology Stipulations.

If the Administrative Law Judge has set a deadline for submission of a technology stipulation in the procedural schedule, the private parties are required to meet and confer in good faith and then, after consultation with Staff (if applicable), shall submit to the Administrative Law Judge two copies of a joint stipulation regarding the patent technology at issue in this

Investigation.  The parties shall further state the position of the Staff (if applicable) on the joint technology stipulation.

Said stipulation shall have one section for each asserted patent or family of patents, if it would be more appropriate, and, if applicable, a general technology section should be included that discusses technology common to all of the patents at issue.  At a minimum, said stipulation should provide sufficient background information to understand the disputed claim constructions of each of the asserted claims in issue and should not include any facts upon which the parties are not in agreement.

It is expected that any facts listed in said stipulation may be used and relied upon throughout the remainder of the Investigation, including, *inter alia*, in the Administrative Law Judge's final initial determination on violation.  Also, said stipulation should not be a vehicle for presenting legal arguments.

It is expected that the parties will use their best efforts to jointly create the technology stipulation.  The joint technology stipulation to be submitted should have substance and should not be a list of quotations or paraphrases from the patents at issue (although discussion of the patents is expected to be a component part).  *See Certain Electronic Devices, Including Mobile Phones, Portable Music Players, and Computers*, Inv. No. 337-TA-701, Order No. 26 at 1 (U.S.I.T.C., July 29, 2010).

### 1.16.   Protective Orders and Patent Prosecution Bars.

In certain investigations, the private parties or nonparties have confidential materials that are relevant and discoverable, and which may warrant heightened protections beyond those ordered[14] at the outset of the case.  Parties in need of such heightened protections are promptly expected to begin negotiations for a protective order addendum, *i.e.*, within five (5) business days of the issuance of these Ground Rules.  A party that has subpoenaed a nonparty for discovery is expected to immediately inquire, *i.e.,* within two (2) business days of subpoena service, whether nonparty intends to seek such protections and begin negotiations in good faith if source code or other highly confidential materials are identified in the subpoena.  If a protective order addendum is sought by motion, rather than by private stipulation, such motion must be brought as soon as practicable to avoid discovery delays and should include evidence, such as a declaration, setting forth good cause for heightened protections under the circumstances.  Parties and nonparties may not use the need for a protective order addendum as a basis to withhold other discovery that is non-confidential or that may be produced under the already governing protective order.

The parties should not include the Commission, Commission staff, the Administrative Law Judge or the Administrative Law Judge's staff in protective orders.  They are already covered under Commission rules that protect CBI.

The Administrative Law Judge orders that any party bringing a motion for a protective order addendum containing provisions for a proposed patent prosecution bar should review

---

[14] This is usually Order No. 1, Protective Order.

*Certain Consumer Electronics, Including Mobile Phones and Tablets,* Inv. No. 337-TA-839, Order No. 28 (U.S.I.T.C., 2013).  It is further recommended, but not required, that rather than seek a patent prosecution bar in advance, the parties instead incorporate a notification provision requiring any individual seeking to view highly confidential materials subject to a protective order addendum to certify in writing whether or not they have recently, are, or in the near future intend to be engaged in patent prosecution or competitive decision making.  This would allow the supplier to promptly seek an individually tailored patent prosecution bar (by stipulation or motion) prior to access, and would improve the chances of meeting the criteria set forth in *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010).

**2.     Motions.**

Parties with similar interests should coordinate and consolidate motion practice to the extent practicable.

**2.1.     Contents.**

All written motions shall consist of (i) the motion; (ii) a separate memorandum of points and authorities in support of the motion;[15] (iii) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities; and (iv) a Certificate of Service as required by Commission Rule 201.16(c).  It is recommended that a moving party clearly articulate what relief is requested in the motion, as well as the law and facts supporting said request(s).  Without leave, the motions and supporting memoranda together shall not exceed thirty-five (35) pages, and all attachments to motions shall not exceed a total of one hundred (100) pages.  Any motion exceeding either page limit may be denied without prejudice or stricken.  An Order may issue for the party to re-submit its motion to comply with the Ground Rule.

Offers of Proof fall under this category. An Offer of Proof is a type of Motion, in some sense a motion for reconsideration.  A written offer of proof may not exceed the page limitations specified in this section.  It should not even come close to the page limitation for motions. The ALJ may specify a different page limitation based upon the circumstances and type of evidence.  Please do not misuse the Offer of Proof for a purpose that is inappropriate.  For example, if a defense has been denied and eliminated, it is inappropriate to try to resurrect it through an Offer of Proof.  Another example is an attempt to change inadequate or existing discovery testimony to enhance the record to the advantage of the proponent for the Offer of Proof.  Moreover, a proper Offer of Proof is more often than not a proffer of a line of questions and answers that would have been given in testimony, and typically, based upon already existing evidence.  Please review Fed. R. Evid. 103, commentary and precedent that pertains to the same before making an Offer of Proof.

All motion responses shall consist of:  (i) a memorandum of points and authorities in response to the motion; (ii) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities; and (iii) a Certificate of Service as

---

[15] A separate memorandum of points and authority is not necessary for motions shorter than five (5) pages.

required by Commission Rule 201.16(c).  <u>All responses to motions shall also include the Motion Docket Number assigned to the motion by the Commission's Office of the Secretary in either the title or the first paragraph of any such responses.</u>  EDIS discloses what docket number has been assigned to a motion.  Without leave, responses to motions and memoranda supporting such responses together shall not exceed twenty-five (25) pages, and all attachments to responses to motions shall not exceed a total of one hundred (100) pages.

Unopposed motions and joint motions shall contain a proposed order.  On the same day the motion is filed, a version of the motion including the proposed order in MS Word for Windows shall be submitted to McNamara337@usitc.gov via e-mail.

***All exhibits submitted with any motion/memorandum must contain exhibit descriptions of the content of the exhibits in addition to an alpha or numerical character.***

### 2.2.    Certification.

All motions shall include a certification that the moving party has made a reasonable, good-faith effort to contact and resolve[16] the matter with the other parties at least two (2) business days before filing the motion, and shall state, if known, the position of the other parties regarding the motion.  Non-moving parties shall try to timely and substantively respond in good faith to moving party's efforts to resolve a motion.

### 2.3.    Motions to Strike.

Typically, motions to strike ("MTS") are filed to exclude documents/testimony/evidence that *are already in the record.  They should not be used in lieu of motions in limine, which, typically, are preclusive.* In addition to the foregoing requirements, motions to strike must include by page and line number the text and/or testimony the movant seeks to have stricken, if applicable.

All MTSs filed within two (2) months of the start of an evidentiary hearing will be counted against that party's motions in *limine* ("MIL") and high priority objections ("HPO").  Complainants as a group and respondents as a group may not file more than one (1) motion to strike without leave (or by each party in a group if they do not share an identity of interests).

Any motions to strike made during the hearing that follows an objection to testimony that cannot be resolved on the spot, will be subject to a written motion, and to a five (5) page limit, with no more than 10 pages of attachments unless leave is requested from the Administrative Law Judge and is given.  Any such motion must be filed on EDIS the same day as raised during the hearing unless otherwise changed by the Administrative Law Judge.  The response must be filed the next day and will be subject to the same limits as for the motion to strike.  References to the exact pages and lines of testimony or documents to be stricken must be included, together with the pages of those citations.  Testimony citations and sections/paragraphs from an expert report (with cover page and date thereof) should be attached, with the surrounding testimony, or relevant portions of the expert report(s).  No more than two (2) motions to strike will be allowed

---

[16] Emailing the other parties to inquire as to their position on the proposed motion does not constitute a good faith effort to resolve the matter.

during the hearing by complainants as a group or respondents as a group (or by each party in a group if they do not share an identity of interests) without leave and for good cause.

If a party who files a motion loses the motion on a ruling made during the hearing, that party may be penalized by a time deduction.

### 2.4.    Summary Determination Motions.

No more than one (1) motion for summary determination may be filed by complainants as a group and by respondents as a group (or individually by each party in a group if they do not share an identity of interests) without first filing a motion for leave.  A motion for summary determination is limited to 10,000 words (which equates to approximately 40 pages), using 12-point font in text, 11-point font in footnotes and 1.0-inch side margins.  Tables of contents, a page(s) containing abbreviations, the page(s) of citations to case precedent, and document headings will not be counted in the count for the number of pages.  No more than 100 pages in Exhibits may be attached without leave of court.

Motions for summary determination shall be accompanied by a separate statement of the material facts with which the moving party contends there is no genuine issue, and which entitles the moving party to a summary determination as a matter of law.

Additionally, the statement of material facts must include a chart that consists "of short, factual statements with specific references to supporting declarations, affidavits or other materials."

Whenever possible, the factual statement should be a direct quote from record evidence, using quotation marks. The format of the chart should be substantially as follows:

| Item # | Factual Statement | Citation | Disputed | Factual Citation | Citation |
|--------|-------------------|----------|----------|------------------|----------|
|        |                   |          |          |                  |          |

The moving party shall fill out the first three columns of the chart (item number, factual statement/quote, and citation), and any non-moving party shall fill out the remaining columns (indication of dispute, factual rebuttal, citation).

### 2.4.1.    Response to a Motion for Summary Determination.

A response to a motion for summary determination is limited to 10,000 words (approximately 40 pages) as counted above in Ground Rule 2.4.

The response shall complete and append the chart of facts prepared by the movant.  The response shall complete the last three columns of the chart (indication of dispute, factual rebuttal, citation) by reproducing specific record evidence that shows or other materials.  Whenever possible, the factual rebuttal should be a direct quote from record evidence using quotation marks.  The chart shall not be included in the word count.

Parties should avoid boilerplate rebuttals, and particularly should avoid rebuttals or objections that are not directly relevant to the material fact at issue.  If a material fact, or a portion of a material fact, is undisputed, the responding party should so state.

All material facts set forth in the moving party's chart may be deemed admitted by a non-moving party unless the non-moving party specifically controverts the statement.

### 2.5. Management Conferences, Discovery Conferences and Discovery-Related Motions.

The Administrative Law Judge will schedule as part of the Adopted Procedural Schedule at least two (2) management conferences with the parties, at least one of which will be during the discovery period.  The parties may be asked to alternate responsibility for securing a dial-in number and a court reporter to transcribe these conferences, beginning with the complainant, unless the management conferences are held on the Commission's WebEx platform, in which case the Commission likely will provide the court reporter.  The transcript for all management conferences shall be filed on EDIS after the parties have jointly submitted a management conference transcript that contains their proposed redactions because of CBI no more than seven (7) days from the parties' receipt of the final (not the rough) transcript unless otherwise directed.

Management conferences are not limited to the two (2) scheduled.  If prior to or after the two (2) scheduled management conferences, there are issues to be resolved, the party who wishes to raise an issue that may require a motion to compel discovery or another form of intervention, should submit a letter to McNamara337@usitc.gov at least five (5) days before the scheduled management conference explaining the issue(s) to be resolved.  Responses are due at least two (2) days before the management conference.  The moving party should submit a request indicating a need for a management conference, and dates when all parties will be available for a management conference within the next two (2) weeks. Chambers will contact the parties with a date for the management conference.

If there are other issues to be resolved that do not involve discovery disputes, the parties must submit a joint agenda for discussion during the management conference at least two (2) days before a management conference after notifying Chambers by letter of the need for intervention.

If no disputes are pending or there are no other issues to be resolved, and there is no need for the scheduled management conference on the procedural schedule from the parties' perspective, the parties jointly shall notify the Administrative Law Judge by email to McNamara337@ustic.gov at least *two (2) full business days* before the scheduled management conference that it is not necessary.

 With respect to any motion related to a discovery dispute or any other issue that requires resolution and is subject to typical motion practice, the party that seeks to file such a motion must discharge its obligation to meet and confer under Ground Rule 2.2.  If, after discharging its obligation under that rule, the discovery or other dispute persists, that party shall submit a letter of no more than four (4) pages that explains the nature of the discovery dispute, by e-mail to McNamara337@usitc.gov. Any party that seeks to submit a responsive letter must do so no later than (2) business days following submission of the initial letter by the intended movant.  Any

responsive letter(s) should be submitted by e-mail to the address above and any response should also be no more than four (4) pages.  The non-movant(s) must also advise Chambers within two (2) business days of receiving the moving party's papers whether they have chosen not to respond in writing.

The underlying dispute(s) will then be placed on the agenda for the next scheduled management conference with the Administrative Law Judge.  If that management conference is too far in the future, there may be one or more interim management conferences scheduled after a discovery dispute letter is submitted.  However, the parties should not expect a management conference to be held until a responsive letter(s) has been received or the non-movant(s) has advised Chambers that a responsive letter will not be submitted.

Leave to file a discovery-related motion will be granted, if at all, only after the intended movant has complied with the described procedure, above.

### 2.5.1.    Contents

Any discovery-related motion must have appended to it the pertinent parts of the discovery request and all objections and answers thereto.  Additionally, if the party subject to the motion to compel serves supplemental discovery responses while the motion is pending, then the response to the motion must include copies of the supplemental responses, or, where documents are produced, a detailed accounting of what additional documents were produced.

### 2.6.    Request for Shortened Time to Respond to Motion.

If a party seeks expedited treatment pursuant to Ground Rule 1.9, such motion shall include any request to shorten the time for which other parties may respond to the motion.  The fact that a shortened response time is requested shall be noted in the title of the motion and the motion shall include an explanation of the grounds for such a request.  A request for a shortened response time shall not be made through a separate motion.

### 2.7.    No Motion Stops Discovery Except Motion to Quash Subpoena.

The submission of a motion does not stop discovery except in the case of a timely motion to quash a subpoena, and only with respect to the party or witness who may be a non-party who is served with a subpoena.

### 2.8.    Motion Deadlines in the Procedural Schedule.

Although the procedural schedule contains several cutoff points for bringing motions (motions to compel discovery, summary determination motions, and motions *in limine*), parties are expected to bring their motions on a rolling basis.  Parties who fail to diligently bring issues to the attention of the Administrative Law Judge as close to the time of the dispute as practicable may find that their arguments have lost persuasive value.  *See e.g.*, *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, Order No. 52 at 2 (U.S.I.T.C., 2012).

Motions to compel discovery must comply with Ground Rule 2.5.

**2.9.    Mootness.**

The parties should file a notice on EDIS within seven (7) business days when any issue, such as an invalidity argument, a substantive contention, or any other allegation or defense becomes moot, or is being dropped.

If a change in circumstances renders all or any portion of a motion moot, the moving party is expected to promptly file notice (with the pertinent motion number in the document title) as to whether all or a specific portion of said motion is being withdrawn.  In addition, movant is expected to notify my Attorney Advisor via email within 24 hours.

**3.    Discovery.**

The parties should make intensive good faith efforts promptly commence and respond to discovery.  Lack of diligence may affect a party's showing of good cause for motions to enforce discovery, particularly if such motions are adjacent to the close of fact discovery.  In the same vein, failure to promptly seek a protective order in the face of highly objectionable or inappropriate discovery requests may undermine the opposition of a party responding to a motion to compel.  The parties should also note that the deadlines in the procedural schedule are considered to be the last day to complete a task.  Because these are fast-paced proceedings, parties are expected to exert diligence and file motions earlier than the stated deadline, such as motions to compel discovery or to enforce subpoenas.  Parties should not tactically seek to withhold or delay motions or discovery, as every party is expected to proceed expeditiously. Commission Rule 210.2.

The Commission has affirmed that the notice of investigation, not a complaint, defines the scope of an investigation.  78 F.R. 23476 (April 19, 2013).  "The scope of discovery is necessarily commensurate with the scope of the investigation."  *Certain Rechargeable Lithium-Ion Batteries, Components Thereof, and Prods. Containing Same*, 337-TA-600, Order No. 8 (July 25, 2007).  Thus it is unacceptable for a party to unilaterally limit the scope of discovery to solely those products specifically accused in the complaint, and a party refusing to respond to discovery requests on this ground may be subject to sanctions in light of the Commission's clear guidance on this issue.  Should a party have serious concerns about the scope of the notice of investigation or about the scope of requested discovery, it has a responsibility to promptly take appropriate action.

**3.1.    Resolution of Disputes; Coordinated Discovery.**

The parties shall make reasonable efforts to resolve between or among themselves disputes that arise during discovery.  Parties with similar interests must coordinate and consolidate depositions and all other discovery.

**3.1.1.    Discovery Committee.**

Starting the first full week after these Ground Rules are issued, a discovery conference committee (the "Discovery Committee") consisting of the lead counsel for each party and Staff,

if Staff is a party, shall confer at least once every two (2) weeks during the discovery phase of this Investigation, either in person or by telephone, to resolve discovery disputes. The Discovery Committee shall confer in good faith to resolve every outstanding discovery dispute in a timely manner within the deadlines set forth in the procedural schedule.

Within ten (10) calendar days after the end of each month during the discovery phase, the Discovery Committee shall report in writing to the Administrative Law Judge all disputes that were resolved during the preceding month and all disputes about which there is an impasse as of the end of that month. No motion to compel discovery may be filed unless the subject matter of the motion has first been brought to the Discovery Committee and the Committee has reached an impasse in trying to resolve it. It is recommended, but not required, that within twenty-four (24) hours of each meeting the Discovery Committee members exchange[17] written confirmation of what disputes have reached an impasse.

### 3.2.    Stipulations Regarding Discovery Procedure.

Unless otherwise directed by the Administrative Law Judge, the parties may, by written stipulation, modify procedures for, or limitations placed upon, discovery. The parties may not stipulate to change any Commission Rule with respect to discovery unless the Rule expressly permits it. *See, e.g.*, Commission Rules 210.28(a), 210.29(a). Furthermore, stipulations extending the time provided in Ground Rule 3.4.2 and Commission Rules 210.30(b)(2) and 210.31(b) for responses to discovery, if they would interfere with (i) the target date of this Investigation, (ii) any time set in the procedural schedule or other order related to completion of discovery,[18] or (iii) the evidentiary hearing or hearing of a motion, may only be made with the advance approval of the Administrative Law Judge upon a timely written motion showing good cause.

### 3.3.    Service of Discovery Requests and Responses.

Discovery requests and responses must be served on all parties, including Staff (if applicable), but are not to be served on the Administrative Law Judge, or her Attorney Advisor, or filed on EDIS unless they are appended to a motion.

### 3.4.    Timing of Discovery Requests, Responses and Objections.

### 3.4.1.    Depositions.

In addition to the requirements of Commission Rule 210.28(c), unless otherwise ordered or stipulated pursuant to Ground Rule 3.2, any party desiring to take a deposition shall give **at least ten (10) days'** written notice to every other party if the deposition is to be taken of a person located in the United States, or at least **fifteen (15) business days'** written notice if the deposition is to be taken of a person located outside the United States. No party shall notice the

---

[17] Such exchange should not be served on the Administrative Law Judge or filed on EDIS, unless it is appended as a necessary component to a discovery motion or response thereto.

[18] *See, e.g., Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Products Containing Same*, Inv. No. 337-TA-803, Order No. 42 at 3, n.1 (U.S.I.T.C., 2012).

deposition of a party witness without first consulting with the opposing party and Staff, if Staff is a party, regarding the availability of witnesses and counsel for the deposition.  Opposing party (and Staff) shall make a good faith effort to timely consult with the party requesting said deposition.

### 3.4.1.1.    Depositions in Japan.

If an application for a recommendation to the U.S. District Court requiring depositions of a party in Japan is necessary, it should be titled as an "application" but filed on EDIS as a "motion."  The application should include a statement as to the other parties' positions regarding the application as well as any relevant supportive material.

If the Administrative Law Judge determines that the application should be granted, an order and recommendation will issue.  A copy will then be served on all parties.  It is the responsibility of the applicant to determine whether the U.S. District Court requires a certified original.  If so, the applicant should include in a cover letter, or include in the application itself, clear instructions explaining the requirement, and if the applicant prefers to pick up the certified original, the manner of pick up and the individual to be contacted.  Absent these instructions, only the service copy will be sent to the applicant.

### 3.4.2.    Interrogatories.

In addition to the requirements of Commission Rule 210.29(b), unless otherwise ordered, the party on whom interrogatories have been served shall serve a copy of the answers, and any objections, within **ten (10) days** after the service of the interrogatories.

### 3.4.2.1.   Contentions and Contention Interrogatories

Parties are expected to provide their complete contentions, contention interrogatories and answering responses affirmatively and timely and by the cutoff dates.  By definition, contention interrogatories, are used to explore an adversary's support, factual bases, or scope of their legal theories of the case. They relate to fact or application of law to fact.  (Parties might be guided by Fed. R. Civ. P. 33 and case law thereunder).  Parties that fail to assert complete contentions by the cutoff date risk having their unsupported theories, undisclosed contentions, and any subsequent opinions that build on contentions that were not disclosed by the cutoff dates in the Adopted Procedural Schedule excluded from the Investigation.  *See, e.g., Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, Order No. 86 (U.S.I.T.C., 2012).

Parties are expected to respond to contention interrogatories by the date set forth in the Adopted Procedural Schedule unless the cutoff date is modified by the Administrative Law Judge.  A party may not introduce theories or evidence at the hearing that are outside the scope of its own contentions, or responses to contention interrogatories unless there is clear showing of good cause.

Conclusory statements in either contentions, or responses to contention interrogatories are insufficient.  For example,  if a party simply states: "there is also infringement under the

doctrine of equivalents," that party likely will be prohibited from later introducing evidence and/or the contentions themselves that are produced or disclosed too late in the discovery process or after the cutoff date in the schedule.

As with any other type of discovery request, parties have a duty to timely compel responses that they believe are incomplete. The parties are expected to use their best efforts to avoid delay or concealment with respect to their own theories of the case, their contention interrogatories and responses thereto. While it may be that some evidence in support of contentions or responses thereto may not be available until fact discovery is complete, or almost complete, it may be that multiple supplementations to contention interrogatories will be necessary before the close of fact discovery.

### 3.4.3. Requests for Production of Documents or Things or for Entry upon Land.

*See* Commission Rule 210.30. Additionally, the parties should start providing documents to one another within fifteen (15) days of receiving a Request for Production.

### 3.4.4. Request for Admission.

In addition to the requirements of Commission Rule 210.31(a) and (b), a request for admission may be served at any time **twenty (20) days** after the date of service of the Complaint and Notice of Investigation.

### 3.4.5. Discovery Cutoff and Completion.

All discovery requests, including requests for admissions, must be initiated long enough before the fact discovery cutoff and completion date to allow responses by that date without curtailing the response times prescribed in the Commission Rules and Ground Rules. Discovery requests by any party that would require responses after the fact discovery cutoff and completion date must be approved in advance by the Administrative Law Judge upon a showing of compelling circumstances.

### 3.5. Subpoenas.

Subpoenas may be requested to compel third parties to testify or produce documents. The Administrative Law Judge expects the parties to diligently seek third-party subpoenas as early as practicable in the Investigation, and to take quick action to enforce said subpoenas if third parties delay. *See* Ground Rule 3.5.3. Hearing subpoenas will be issued only if the subpoenaed party refuses to testify.

### 3.5.1. Issuance and Service.

Pursuant to Commission Rule 210.32, applications for subpoenas may be made *ex parte* to the Administrative Law Judge. An application shall be in writing with the proposed subpoena

attached.  One (1) original and one (1) copy thereof shall be submitted to the Office of Administrative Law Judges, at this time, through McNamara337@usitc.gov.

The subpoena application shall set forth: (i) the relevancy of the information sought and the reasonableness of the scope of the inquiry; and (ii) shall state that the subpoena will be served (on the individual or entity subject to subpoena) by overnight delivery, if not sooner.  The subpoena should:  (i) set forth a time limit for a motion to quash; and (ii) should refer to and also have a copy of the Protective Order in this Investigation as an attachment.  At a minimum, the subpoenaed party shall be given ten (10) days after receipt of the subpoena to file a motion to quash.

Dates in a subpoena for appearance of a deponent or production of documents shall accommodate the time allowed for the filing of any motions to quash and shall accommodate for the time needed for the Office of Administrative Law Judges to process the subpoena application.[19]  *See* Commission Rule 201.14(a); Ground Rule 1.12.  A copy of the issued subpoena and the application shall be served by the applicant on the subpoenaed party by overnight delivery, if not sooner, and on all other parties to this Investigation on the next business day, at the latest, after the subpoena is issued.

A sample of a subpoena application is attached as **Appendix A**.  In addition, two forms of subpoenas, which the parties must follow precisely, are attached as **Appendix A**.  The parties must seek advance leave if they wish to make substantive changes to the subpoena forms.  The application and subpoena shall not be filed on EDIS or served on the Office of the Secretary of the Commission unless they are appended to a motion.

### 3.5.2.        Signed Subpoenas.

Parties typically arrange for pick-up of signed subpoenas.  During the Pandemic, signed subpoenas are being returned by e-mail.  The Administrative Law Judge's office will contact the party's designated individual when subpoenas are ready, and then will deliver the package to the U.S. International Trade Commission's mail room to await a courier or during the Pandemic, will simply send the signed documents by e-mail.  If a party is requesting an alternate form of delivery of the signed subpoenas, the party should contact the Administrative Law Judge's Attorney Advisor in advance.

### 3.5.3.        Extensions and Enforcement.

Any stipulated extensions to the time set forth for discovery in a subpoena must be made in writing and signed by the requesting party and the nonparty.  A stipulation to extend the deadline to respond to a subpoena may be filed once as a matter of course.  A motion for leave demonstrating good cause must be filed for any additional extensions.  The same applies to third-party subpoenas.

---

[19] This is typically 24-48 hours, depending in part on whether the application is delivered by mail or by courier.  Parties with urgent subpoena requests should contact the Administrative Law Judge's Attorney Advisor.

There is always an expectation that good faith efforts to rapidly negotiate with a nonparty to gain subpoena compliance should be made and documented. *See also* Ground Rule 1.16. However, these are expeditious proceedings and a nonparty's failure to cooperate or respond to a subpoena should be brought promptly to the attention of the Administrative Law Judge by way of a supported motion for judicial enforcement. Lack of diligence may affect a party's showing of good cause for motions to enforce (or defend against) discovery, particularly if such motions are adjacent to the close of fact discovery.

If a motion to enforce or quash a subpoena, or a response to such a motion, contains confidential business information, a public version with confidential materials redacted must accompany the confidential filing. *See* Commission Rule 210.32(g).[20] If movant, nonparty, or other responding parties fail to timely file non-confidential versions of their pertinent papers on EDIS, then the Administrative Law Judge will exercise discretion as to what portions of a final order may be treated as confidential. Commission Rule 210.5(e)(1). In addition, in the event of a failure to timely file non-confidential version when another party or a nonparty is not permitted to view the confidential business information contained therein, the Administrative Law Judge may consider whether such failure was effected for an improper purpose.

### 3.6.   Bates Numbering.

Documents produced in response to a document request which are copies of original documents, shall be numbered sequentially by a unique number (commonly known as a "Bates number"). The Bates number shall appear stamped on the lower right-hand corner of the page. The parties are encouraged to use Bates numbers without long prefixes. For example, the short Bates number XYZ-00001 is preferable over LONGPARTYNAME-ITCNUMBER-00001.

### 3.7.   Translations.

A document produced in response to a document request shall be either the original or a legible and complete copy. If an English translation of any document produced exists, the English translation must also be produced. If any of the parties dispute the translation provided by the producing party, then the translation must be certified by a qualified and neutral translator upon whom counsel can agree.

### 3.8.   Privileged Matter.

In addition to the requirements set forth in Commission Rule 210.27(e) with respect to privilege logs, each privilege log shall contain a certification that all elements of the claimed privilege are met and have not been waived with respect to each document. The parties should not provide a "key" at the end of a privilege log with the position and entity of each sender and recipient, or otherwise require cross-referencing.

---

[20] This is necessary because a certification to the Commission requires simultaneous public and confidential orders to issue. *Id.* Therefore, proposed redactions submitted after an order issues are not feasible.

**4.       Notice of Patent Priority Dates and Notice of Prior Art.**

**4.1.  Patent Priority Dates.**

Complainant(s) must file on or before the date set in the procedural schedule, a notice setting forth the alleged priority date[21] for each asserted patent, and if applicable because of differences in priority dates, for each asserted patent claim.  Such notice will be binding on Complainant(s) and may not be amended absent a timely written motion showing good cause

**4.2.  Prior Art.**

The purpose of the prior art identification is to notify all parties (early in the Investigation) of the prior art likely to be raised during the evidentiary hearing on the question of violation of section 337, and thus to allow the parties to formulate their contentions, and to allow the experts to provide meaningful reports and deposition testimony. Notices of Prior Art should be limited to no more than 30, non-redundant references per patent.  Thereafter, just as patents or claims may be terminated or reduced, as discovery proceeds, respondents should focus on trimming their prior art references to no more than 4-5 primary references per patent, whether alone or in combination (and depending upon complexity), and respondents should also focus their invalidity contentions accordingly.  This is guidance given time constraints.

Parties must file on or before the date set in the procedural schedule, notices of any prior art containing of the following information: issuing country, number, date, and name of the patentee of any patent; the title, date and page numbers of any publication to be relied upon as evidence of invalidity of the patent in suit; and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit.  Such notices should include the information set out in 35 U.S.C. § 282.

If a trademark is involved, the parties must file on or before the date set in the procedural schedule, notices of any art on which a party will rely at the hearing regarding the functionality or non-functionality of any trademarks at issue.

Prior art, as well as related evidence, that is not disclosed in the Notice of Prior Art on or before the date set forth in the procedural schedule will not be admitted at the hearing absent a timely written motion showing good cause.  Notices of prior art with excessive disclosures have been stricken in the past on the basis that they thwart the purpose of this Ground Rule 4.  *See, e.g., Certain Wireless Communications System Server Software, Wireless Handheld Devices and Battery Packs*, Inv. No. 337-TA-706, Order No. 10 (U.S.I.T.C., 2010); *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Inv. No. 337-TA-794, Order Nos. 40, 56 (U.S.I.T.C., 2012).

---

[21] This disclosure should make clear what date(s) Complainant(s) intend to rely on for asserting priority of invention, if at all, as Complainant(s) are presumed to be in possession of dates of conception and reduction to practice for the asserted patent claim(s).  Likewise, if Complainant(s) intend to rely on an earlier related or foreign application to the asserted patent claim(s), the priority disclosure should also make this clear.  The purpose of this notice in light of the expeditious nature of these proceedings is to help delineate the boundaries of the search for prior art.

**5.     Expert Witnesses and Reports.**

On or before the dates set forth in the procedural schedule, a party shall disclose to all other parties the identity of any person who is retained or employed to provide expert testimony at the hearing and shall provide the other parties a written report prepared and signed by that witness.  Experts who are not disclosed on or before the date set forth in the procedural schedule must be approved in advance by the Administrative Law Judge upon a showing of compelling circumstances.

An electronic courtesy copy of the expert report shall be served on the Administrative Law Judge's Attorney Advisor, excluding exhibits, as noted in Ground Rule 1.3.2.  Two (2) double-sided courtesy copies of the expert report shall be served on the Administrative Law Judge no later than the next business day after the date set forth in the procedural schedule.  The report shall not be filed with the Office of the Secretary of the Commission.

The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at hearing or by deposition within the preceding four (4) years.  The parties shall supplement these disclosures as needed in the manner provided in Commission Rule 210.27(c).

The parties should note, however, that unseasonable,[22] substantive supplementation of an expert report requires agreement prior approval from the Administrative Law Judge.

**6.     Settlement; Settlement Reports.**

All parties, throughout the proceedings, shall explore reasonable possibilities for settlement of all or any of the contested issues.  All parties shall certify in their pre-hearing statements that good faith efforts were undertaken to settle the remaining issues.

Additionally, for each of the required settlement conferences provided for in the procedural schedule, the parties shall provide the Administrative Law Judge with two (2) double-sided copies of a joint report signed by all the parties setting forth any stipulations on which the parties have agreed.  The report must also disclose what meeting(s) took place, who attended, and what result, if any, was obtained in each meeting.  *See e.g., Certain Dynamic Random Access Memory and NAND Flash Memory Devices and Products Containing Same*, Inv. No. 337-TA-803, Order No. 16 (U.S.I.T.C., 2011).  These reports are due by the time designated in the procedural schedule or within such other time as the Administrative Law Judge may allow. The reports shall not be filed with the Office of the Secretary of the Commission.

---

[22] For example, if a party wishes to supplement an initial expert report after the deadline for rebuttal reports has passed.

7.      **Pre-Hearing Submissions.**

Courtesy copies of all pre-hearing submissions shall be 3-hole punched in addition to being double-sided once evidentiary hearings are again held in the Commission building.  Until then, courtesy copies of any documents filed on EDIS should be e-mailed to McNamara337@usitc.gov.  **If after the Pandemic, there is a return to paper files, filings exceeding 100 pages in length must be placed in binders, preferably not exceeding 3" in width.**  Courtesy copies of all motions *in limine* should also meet this format requirement. Ground Rule 2.9 regarding mootness applies to all motions *in limine* and high priority objections.

7.1.    **Pre-Hearing Statement.**

Pre-hearing statements are limited to 50 pages, including attachments, without leave of Court.  Each party who intends to take part in the hearing in this Investigation must file on or before the date set forth in the procedural schedule a pre-hearing statement containing the following information:

(a)  The names of all known witnesses, their addresses, whether they are fact or expert witnesses (and their fields of expertise), and a brief outline of the testimony of each witness.  In the case of expert witnesses, a copy of the expert's curriculum vitae shall accompany this submission.  The identification of witnesses should be contained in the text of the pre-hearing statement and not attached as an exhibit.

(b)  A list, by title and number, of all exhibits that the parties will seek to introduce at the trial.  The list shall include five columns.  In the first four columns, the party shall include the four-digit number of the exhibit, a brief description and the title of the exhibit, the purpose for which it is being offered, and each sponsoring witness.  The last column shall be labeled "Received" and need only include sufficient space for a date.

(c)  A list of any stipulations on which the parties have agreed.  It is expected that all stipulations other than discovery stipulations will be marked as joint exhibits.  For example, the technology stipulation (*see* Ground Rule 1.15) should be marked as a joint exhibit.

(d)  A proposed agenda for the pre-trial conference.

(e)  Estimated date and approximate length for appearance of each witness.  (The parties must confer on this prior to submission of the pre-hearing statements).

(f)  Certification regarding good faith efforts to settle.  *See* Ground Rule 6 *infra*.

**Additional Submission, Complainant(s).**

In addition to the above, in patent Investigations, Complainant(s) shall attach a chart or table to the pre-hearing statement specifically matching all asserted patent claims to each accused article.  If there are nuances, *e.g.*, with respect to model number or particular components, these should be identified.  Furthermore, Complainant(s) should identify representative accused articles, if any.  The chart should further identify the asserted type(s) of infringement.  For example, if there are three asserted claims and five accused articles, a sample chart might appear as follows.

| '##1 Patent, claim 5 | '##1 Patent, claim 7 | '##2 Patent, claim 12 |
|---|---|---|
| P Product family:<br>  Accused Product AA (7MA config. only)<br>  Accused Product BB | P Product family:<br>  Accused Product BB | P Product family: n/a |
| Q Product family:<br>  Accused Product CC<br>  Accused Product EE | Q Product family:<br>  Accused Product DD<br>  Accused Product EE | Q Product family:<br>  Accused Product CC (T6 config. only)<br>  Accused Product DD<br>  Accused Product EE |
| Representative Products:<br>  Accused Product BB<br>  Accused Product CC | Representative Products:<br>  Accused Product BB<br>  Accused Product EE | Representative Products:<br>  Accused Product CC (T6 config. only)<br>  Accused Product EE |
| Infringement:<br>  Literal<br>  Direct, induced, contributory | Infringement:<br>  Literal<br>  Direct, induced, contributory | Infringement:<br>  Literal, Doctrine of Equivalents (Accused Product CC, T6 config. only)<br>  Direct |

Complainant(s) shall be bound by the identification of asserted claims as matched to the accused products in this submission.

**Additional Submission, Respondent(s).**

In addition to the above, in patent Investigations, Respondent(s) asserting any Section 102 or 103 invalidity defenses shall attach a chart or table to the pre-hearing statement listing all asserted prior art references, or combinations of references, and specifically matching these to each asserted patent claim.  For example, if there are four prior art references and five asserted patent claims, a sample chart might appear as follows.

| Cheng (§102) | Davis (§103) | Davis, Scott, Maxwell (§103) | Davis, Maxwell, Aguilar (§103) |
|---|---|---|---|
| '##1 Patent, claim 5 | '##1 Patent, claim 12 | '##1 Patent, claim 12 | '##1 Patent, claim 12 |
| '##2 Patent, n/a | '##2 Patent, claims 12, 16, 17 | '##2 Patent, claim 17 | '##2 Patent, claim 12, 16 |

If Respondent(s) use a single chart, each entry must clearly state whether Section 102 or 103 is applicable.  (*See* above sample.)  Respondent(s) may alternatively separate the Section 102 and 103 invalidity defenses into two charts in the same submission.

Respondent(s) shall be bound by the identification of asserted prior art as matched to the asserted patent claims in this submission.

For any 103 invalidity defenses identified in the chart attached to Respondent(s)'s pre-hearing statement that are based on a combination of prior art references, Respondent(s) must specifically identify in its/their invalidity contentions the combinations and provide rationale for each 103 invalidity contention.

### 7.2.    Pre-Hearing Brief.

The parties must meet and confer prior to filing the pre-hearing briefs in order to determine appropriate common locations for each issue.  *See, e.g.*, **Appendix B**.  For example, in an Investigation involving patent litigation, this conference should, *inter alia*, determine the order of patents to be set forth in the pre-hearing briefing.

On or before the date set in the procedural schedule, each party shall file a pre-hearing brief.  Absent prior approval of the Administrative Law Judge said brief shall consist of no more than one hundred fifty  (150) pages and  may have no more than fifty (50) pages of relevant attachments.  The parties should not use attachments to bypass the page limits of the pre-hearing brief, but may use them to attach critical charts, figures, or other pertinent material.

The pre-hearing brief shall be prefaced with a table of contents and a table of authorities, which do not count toward the page limits.  The brief shall set forth <u>with particularity</u> the authoring party's contentions on each of the proposed issues, including citations to legal authorities in support thereof, and shall conform to the sample outline set forth in **Appendix B** hereto.  All issues, including issues not specifically named in the general outline set forth in said appendix that any party seeks to address, shall be added where appropriate.  The parties need not use precious space on lengthy introductory arguments.

If claim construction issues have not been resolved in a *Markman* order prior to the hearing, the parties need only cite to the last claim construction the party argued in its claim construction brief, or in its post-*Markman* hearing brief.

Any contentions not set forth in detail as required herein shall be deemed abandoned or withdrawn,[23] except for contentions of which a party is not aware and could not be aware in the exercise of reasonable diligence at the time of filing the pre-hearing brief.  However, the parties are advised to select their best, well-reasoned and persuasive arguments, and abandon extraneous or far-fetched contentions at this time.

### 7.2.1.    Content of Pre-Hearing Brief

There seems to be confusion about the content of pre-hearing briefs.  A pre-hearing brief should never be is a diatribe against the other parties or claims made for which the party knows there is virtually no support.  Choose issues carefully.  Limit.  Focus on the strongest issues for which there is evidence.  Additionally, a pre-hearing brief should *not* consist of primarily attorney argument, conclusory statements, or a mere re-recitation of language contained in patent claims or specifications.  If you argue a proposition or issue which you know you will not win

---

[23] *Certain Automated Media Library Devices*, Inv. No. 337-TA-746, Comm'n Op. at 14-16 (U.S.I.T.C., 2013).

and there truly is little or no dispute or evidence, concede it and focus where there is at least a colorable argument.

Any contention made, whether for infringement or for validity, and any other issues, must be supported by citations to likely exhibits, deposition testimony, expert reports, and be supported by case law. The reasoning and explanations of expert testimony or likely expert testimony should be clear and cite to supporting evidence.

Validity arguments, where there are multiple sources, should be clearly explained. At a minimum, *why* the piece of prior art was chosen should be explained. The technology from which it comes or relates to should be explained. If there are aspects of the prior art that do not apply, be clear about that. Too often parties attempt to hide or obfuscate. It cannot be emphasized enough that conclusory statements, including about anticipation or motivation to combine needs to be explained, with reasoning, or to put it another way, a structured argument is a requirement. If the other party's critique is wrong, explain *why*, with reasoning and evidentiary support.

*Block string cites* are not appropriate. Similarly, merely attaching Appendices to a pre-hearing brief with block string cites is never appropriate. String cites that have meaning or contain necessary, corroborative evidence from different sources may be appropriate, especially if there are multiple evidentiary sources for a contention, proposition, illustrative point or argument. Charts are fine if, in fact, the individual elements are supported, again, by *evidence.* Include the citations to evidence.

All of the above applies to expert reports.

### 7.3.    Joint Outline of Issues in Chart Form.

The parties must jointly create and maintain a single chart of substantive legal issues being litigated in the Investigation. The chart shall be jointly filed as a separate docket entry simultaneously with the pre-hearing and the post-hearing briefs. The parties' pre-hearing and initial post-hearing briefs will follow the order of the issues set forth in the chart. The leftmost column of the chart will list the issues being litigated, including all infringement and invalidity theories and defenses. The parties will create subsequent columns for each of their briefs, grouped by party (i.e., the chart accompanying the post-hearing reply briefs will include columns for Complainant(s)'s pre-hearing brief, initial post-hearing brief, and post-hearing reply brief, followed by columns for Respondent(s)'s pre-hearing brief, initial post-hearing brief, and post-hearing reply brief). The cells of the columns will contain page numbers of the particular sections of the briefs where those issues are addressed.

If issues, contentions, arguments, or defenses have dropped out from the pre-hearing briefs, that should be noted explicitly in the chart accompanying the initial post-hearing briefs. That same principle should carry through to the outline accompanying the post-hearing reply briefs.

**8.      Hearing Exhibits.**

**8.1.      Material to Be Received Into Evidence.**

Only factual material and expert opinion shall be received into evidence.  Legal argument shall be presented in the briefs.

**8.2.      Legal Experts.**

Legal experts may only testify as to procedures of the U.S. Patent and Trademark Office. In the event that legal experts are called to testify on foreign law, Federal Circuit Court and Commission precedent will apply to interpretation.

**8.3.      Witness Sequestration.**

Fact witnesses may be in the courtroom during opening statements.  However, fact witnesses must then remain outside the courtroom until they have completed all testimony. Otherwise, Fed. R. Evid. 615 is referenced.

**8.4.      Witness Testimony.**

Unless ordered otherwise, all witness testimony will be live testimony.  To minimize the risk of biased testimony, after the parties provide opening statements, live fact witnesses shall not observe in the courtroom during the hearing until after they have completed their live testimony.

In the event I order or allow witness statements (which will be rare), the following rules will apply.

**8.4.1.      Witness Statements in Lieu of Direct Testimony (RARE).**

Witness statements are disfavored and except as described, will not be allowed in place of direct testimony during the evidentiary hearing.  Witnesses will not be permitted to read prepared testimony into the record.  Staff may ask a witness supplemental direct testimony on the witness stand.  Witnesses shall be available for cross-examination on the witness stand unless waived by the parties entitled to conduct cross-examination.  While generally not a substitute for live testimony, witness statements containing background statements, such as CV type information, may be marked with exhibit numbers and offered into evidence as exhibits.  Short witness statements, or preferably declarations, may be used to sponsor the admission of exhibits, only upon a showing of good cause set forth in a motion and only if: (1) a list of all such exhibits is attached to the witness statement; and (2) each such exhibit is explicitly cross-referenced to the corresponding portion of the witness statement in which the witness laid a foundation for the exhibit.

### 8.4.2.    Format of Witness Statements (RARE).

In the exceedingly rare event that a witness statement of the type used by other Administrative Law Judges for direct testimony is allowed, the witness statement shall be in the form of consecutively numbered questions from counsel, with each question followed by the witness's own answer to that question.  The final question from counsel should ask the witness whether or not the witness statement contains the witness's independent answers to the questions from counsel and should be followed by the witness's answer to this question and the witness's signature.  The questions shall be in the form of a direct examination and the answers shall be in the form of verbal testimony, although the witness statement may be organized (e.g. headings, table of contents, and bulleted or numbered lists) to facilitate an understanding of the issues and may include illustrative excerpts from admissible exhibits.  For evidentiary support, witness statements shall cite to exhibit numbers and brief descriptions of the exhibits (e.g., JX-0002 ('123 Patent File History)) that will be introduced at the hearing.  A witness statement must contain the entirety of the witness's direct testimony; attachments or incorporation of other documents by reference is not allowed.

A witness statement shall be in the language of the witness, and a foreign language witness statement shall be accompanied by a certified English translation thereof.

Except upon a timely written motion and for good cause shown, fact witnesses shall not review the witness statements of other witnesses and shall be excluded from the hearing prior to their testimony.  Subject to restrictions imposed by any protective order entered in an investigation, this rule does not apply to exclude a party who is a natural person, or an officer or employee of a party designated as the party's representative by its attorney.

If allowed in the first instance, witness statements may not be withdrawn, in whole or in part, without leave.  Witness statements may not be amended.  If witnesses desire to correct typographical or clerical errors in their testimony, they should prepare errata sheets.  Counsel should mark the errata sheets as exhibits and should give them as quickly as possible to the other parties and to the Administrative Law Judge.  During the hearing, a motion may be made to have the errata sheets accepted into the record.

Absent leave granted by the Administrative Law Judge, the total number of witness statement pages offered by the complainants (collectively) may not exceed one hundred (100) pages.  Similarly, absent leave granted by the Administrative Law Judge, the respondents (collectively) may not offer more than one hundred (100) pages of witness statements.  Tables of contents and certified translations are not counted toward the page limits.  The text of the questions and answers in the witness statements may be single spaced, provided that at least double spacing is used between questions and answers, and at least a 12-point font is used.  Illustrations may be included in the witness statements, but they will be counted among the aggregate number of pages that may be offered.

The parties shall provide one set of witness statements in binders (without exhibits). Each binder shall be labeled on its spine to indicate the witness and the party providing the binder.  Additionally, the parties shall provide a single hard drive or a single flash drive containing the witness statements in searchable PDF format.  Each expert witness statement shall

include a detailed table of contents.  The witness statements in PDF format must include a file name with a brief description of the exhibit, e.g., CX-0005C (Smith Witness Statement).pdf.  If the PDF witness statements are submitted on the same electronic medium as other trial exhibits, the witness statements shall be placed in a separate folder.

### 8.5.    Expert Reports.

Pursuant to the procedural schedule, each party, including the Staff (if Staff is a party), shall submit to the Administrative Law Judge, after conferring with each other, two (2) double-sided copies of a statement stating its position on whether or not it intends to offer into evidence[24] any parts of their expert reports as part of a motion, or for any other purpose permitted under the rules.  The expert report expected to be used as described should be identified.  The statement shall not be filed with the Office of the Secretary of the Commission.

Courtesy copies of all expert reports must be submitted to McNamara337@usitc.gov. when they are submitted to other parties.

If a party files a motion to preclude parts of an expert report or makes any type of motion to strike any part of an expert report or expert deposition testimony, that party should take care not to withdraw or exclude any part of that same expert report and expert deposition testimony in exhibit lists.  The opposing party may always rebut such a motion with other parts of the expert record.  If the submissions are inadequate or distortive of testimony, the ALJ may, *sua sponte*, use other parts of the expert report or expert testimony to ensure that what is being presented is accurate in context.

### 8.6.    Foreign Language Exhibits.

No foreign language exhibit will be received in evidence for substantive purposes unless a complete English translation of it is provided at the time set for exchange of exhibits.  ***Translations of only a part or a section of a document will not be permitted.***  The entirety of any document must be translated.  If any of the parties dispute the translation, then the translation must be certified by a qualified and neutral translator upon whom counsel can agree.

### 8.7.    Exhibits.

#### 8.7.1.    Exchange of Proposed Exhibits.

The Ground Rules no longer specify an exact date by which copies of proposed documentary exhibits, along with a proposed exhibit list, shall be served on the opposing parties (including the Staff, if applicable  That gives the parties some flexibility.  However, exhibit lists should be exchanged at least seven (7) days before the evidentiary hearing.  After the proposed exhibit list exchange, the parties shall eliminate any duplicate exhibits or renumber such exhibits as joint exhibits and update their exhibit lists before they are submitted to the Administrative Law Judge.

---

[24] Relevant parts of expert reports may be admitted into evidence.

Proposed physical and demonstrative exhibits need not be served but shall be identified in the proposed exhibit list.  Proposed physical and demonstrative exhibits, however, must be made available for inspection by the other parties on the date established for the submission and service of proposed exhibits.

Proposed exhibits shall not be filed with the Office of the Secretary of the Commission.

### 8.7.2.      Service of Proposed Exhibits upon Administrative Law Judge.

Just before, or during the evidentiary hearing, the parties shall provide the Administrative Law Judge with hard copies of the exhibits they plan to introduce, including an electronic PDF version of all proposed exhibits, along with a proposed exhibit list, on a portable hard drive (e.g., flash drive).  The format of the exhibits as set forth below in Ground Rule 8.6.3.[25]

### 8.7.3.      Format of Optional Paper Version of ALJ Exhibit Set.

The exhibits in the ALJ Set shall be individually tabbed, with each tab reflecting the number of the corresponding exhibit, *e.g.,* CX-0003C.  Each binder must be labeled on its spine with the name and number of this Investigation and the nature of the contents of the binder, *e.g.* Complainant's Exhibits CX-0001 through CX-0018C.  The Administrative Law Judge requires double-sided copies for the ALJ Set, in binders no wider than 3".

### 8.7.4.      Maintenance and Filing of Final Exhibits and Final Exhibit List.

Each party must submit a final exhibit list in conformity with Ground Rule 8.6.7, reflecting the status of all exhibits, including those admitted and rejected during the hearing. Any withdrawn exhibit shall be identified on the final exhibit list only, by exhibit number, and shall indicate that it has been withdrawn.  Withdrawn exhibits are not to be submitted; however, the rejected exhibits will be retained with the official record.

The parties are responsible throughout the course of the hearing for updating the exhibit lists and for maintaining and updating the ALJ Set, as well as for confirming that all admitted and rejected exhibits are included in this Set and in the final exhibit list at the conclusion of the hearing.

The ALJ Set, as well as the final exhibit list, should be submitted on paper no later than 5 p.m. on the second business day after the last day of the hearing.  On the same day, the parties shall further submit a complete set of all admitted and rejected exhibits (organized as: (i) Admitted Confidential; (ii) Admitted Public; (iii) Rejected Confidential; and (iv) Rejected Public) to be filed with the Commission on EDIS ("the Commission Set").  These two sets should be submitted to the Administrative Law Judge's assistant by appointment.  The Administrative Law Judge's assistant will review the exhibits with the parties and notify them of any necessary corrections.  It is advisable to leave time between the appointment with the Administrative Law Judge's assistant and the submission deadline in order to make any needed

---

[25] Parties who prefer to submit a paper copy should contact the Attorney Advisor and McNamara337@usitc.gov in advance.

corrections.  Please be timely and courteous when working with the Administrative Law Judge's assistant on the submission of these exhibit sets.

All documents submitted as exhibits should be dated.  If there are multiple iterations of the same documents, those multiple iterations should be dated.  If, for example, screen shots of web sites are used, then the dates the screen shots were taken along with the https://address should be provided.

The parties are responsible for confirming that all admitted and rejected exhibits are included in the Commission set.  Any exhibits that are not included in the Commission Set and the final exhibit list will not be considered as part of the record to be certified to the Commission when the final initial determination issues.

The Commission Set shall be submitted on electronic media[26] pursuant to Ground Rule 8.7 unless prior permission has been received pursuant to Commission Rule 19 C.F.R. § 210.4(f)(8) and The Handbook of Filing Procedures § II.C(3)(a).  All confidential exhibits and public exhibits shall be submitted on separate discs.  Each disc shall have a table of contents, and the parties are required to verify the accuracy of the table of contents.  For example, if an exhibit on the public exhibit disc is labeled CX-0022, it should not contain any confidential designations.  "Each type of exhibit (i.e., CX, CDX, CPX, RX, RDX, RPX, JX, JDX, JPX, SX, SDX, SPX, CX-{four digit number}C, CDX-{four digit number}C, RX-{four digit number}C, RDX-{four digit number}C, JX-{four digit number}C, JDX-{four digit number}C, SX-{four digit number}C, and SDX-{four digit number}C) must be submitted on a different [disc] or set of [disc]s so they may be uploaded and labeled more reliably by Docket[]" Services.  Each disc "must have a label with the investigation name and number, and the range of exhibits contained thereon."

If the appropriate permission is received pursuant to Commission Rule 19 C.F.R. § 210.4(f)(8) and The Handbook of Filing Procedures § II.C(3)(a) to submit the Commission Set on paper, the following shall apply.  In order to facilitate the optical scanning of the exhibits, the exhibits in the Commission Set shall consist of loose sheets (which may be clipped but not stapled) in folders (file folders, accordion folders, etc.) that are provided in sequentially-numbered boxes.  Each folder must be labeled to reflect the number of the exhibit contained therein, e.g., RX-0014C.  In each box of the Commission Set, the folders containing the exhibits shall be placed in numerical order.  Confidential exhibits and public exhibits shall be placed in separate boxes which are clearly marked as containing either confidential or public exhibits.  *See* Ground Rule 8.6.5.  Because public and confidential exhibits are to be placed in separate boxes, numerical gaps may appear in each box, e.g., the public box may contain exhibits CX-0001, CX-0002 and CX-0004, while the confidential box may contain CX-0003C and CX-0005C.

*Finally, every exhibit that has been identified in the Pre-Hearing Briefs must use the same exhibit numbers in Post-Hearing Briefs and in the final submitted exhibit lists.*  The parties should take care not to withdraw exhibits they have used or are using in motions to strike or for offers of proof.

### 8.7.5.   Numbering and Labeling of Exhibits; Confidential Exhibits.

[26] The Commission Set "may not be submitted on a hard drive or flash drive."

All exhibits or copies of exhibits shall be clear and legible. Each exhibit shall be identified by placing a label bearing the exhibit's **four-digit**[27] number (*e.g.*, CX-0003C or RX-0005) in the upper right portion of the exhibit's first page. Each exhibit may be assigned no more than one number. Further, the pages of each exhibit must be sequentially numbered in a consistent location on the pages and in a manner that will not permanently conceal information that is included in the exhibit. Except for good cause shown, each exhibit shall consist of no more than one (1) document and every page of every document shall be Bates numbered in accordance with Ground Rule 3.6. Exceptions to this "one document per exhibit" rule include instances when it would be appropriate to group certain documents together as a single exhibit, such as a group of invoices or related e-mails.

Respondent(s) shall coordinate their numbering to avoid duplication. Additionally, all parties shall coordinate exhibits to avoid unnecessary duplication (*e.g.*, patents; file wrappers).

If any portion of an exhibit contains confidential business information, the entire exhibit shall be treated as confidential. For certain lengthy exhibits of which only portions are confidential, the parties may be asked to submit a public version of the exhibit.

If an exhibit (including physical or demonstrative exhibits) contains confidential business information, a "C" shall be placed after the exhibit number. Furthermore, exhibits containing confidential business information shall also be marked according to the Protective Order requirements, preferably on every page. Exhibit lists must also reflect whether exhibits contain confidential business information by placing a "C" after the exhibit number in the listing. No exhibit list shall contain confidential information; all exhibit lists shall be public documents.

For exhibits submitted electronically, in accordance with Ground Rule 8.7, public and confidential exhibits must be placed on separate discs. Each disc must have an accurate table of contents. Exhibits submitted in the ALJ or OGC binder sets shall be in numerical order and shall not be separated according to confidential or public status.

### 8.7.5.1.    Documentary Exhibits.

Written exhibits shall be marked in order beginning with the number "0001" and preceded by the prefix "CX" for Complainant's exhibits, "RX" for Respondent(s)' exhibits, "SX" for the Commission Investigative Staff's exhibits (if applicable), and "JX" for any joint exhibits. The parties shall not "reserve" numbers, but instead must assign all numbers to the exhibits in their proper order.

### 8.7.5.2.    Physical Exhibits.

Physical exhibits shall be numbered in a separate series commencing with "0001" preceded by the prefixes "CPX", "RPX", "SPX" and "JPX", for Complainant, Respondent, the Staff (if applicable), and joint exhibits, respectively. For the Commission Set, physical exhibits should be boxed and provided to the Administrative Law Judge's assistant no later than the

---

[27] All exhibits submitted to the Commission are now required to have "a four-digit exhibit number, with leading zeros as necessary."

second day after the close of the evidentiary hearing, by appointment.  *See* Ground Rule 8.6.4 above.  Physical exhibits that have been admitted into evidence are retained by the Commission.  A party may request permission from the Administrative Law Judge to substitute a photograph for an admitted physical exhibit prior to the deadline for submission of exhibits.

All Exhibits must be labeled with their content as well as according to the numbering scheme identified above.

### 8.7.5.3.    Demonstrative Exhibits.

Demonstrative exhibits shall be numbered in a separate series commencing with "0001" preceded by the prefixes "CDX", "RDX", and "SDX", for Complainant, Respondent(s), and the Staff (if applicable), respectively.  Additionally, the parties shall provide the Administrative Law Judge with two (2) double-sided copies of key demonstrative exhibits (*e.g.*, charts, drawings, etc.) reduced to 8 ½ inches x 11 inches for use during the hearing.  If applicable, demonstrative exhibits shall indicate what documentary or physical exhibit was the source for its creation.

The parties may seek to have demonstrative exhibits admitted into evidence, for substantive or solely for demonstrative purposes.  Such designation must be made clear on the record at the time of admission.  Admitted demonstrative exhibits must be submitted with the ALJ and Commission Sets pursuant to Ground Rules 8.6.4 and 8.7.

### 8.7.5.4.    Joint Exhibits.

If agreed to by parties, they may submit joint documentary exhibits, including for example, a patent in issue, prosecution history, etc.

The joint documentary exhibits shall include an index which identifies the parties that have submitted each joint exhibit and should be arranged based on the various groups offering such exhibits.  For example, if complainant and respondent A have offered a series of joint documentary exhibits, those exhibits would appear as the first group of joint documentary exhibits in the joint documentary exhibit index.  The index would then include all joint documentary exhibits offered by complainant and respondent B, then joint documentary exhibits offered by complainant and respondent C, etc.

### 8.7.6.    Exhibit Lists.

Every exhibit list shall include a table enumerating all exhibits consecutively by exhibit number and identify each exhibit by a descriptive title, a brief statement of the purpose for which the exhibit is being offered in evidence, the name of the sponsoring witness, and the status of receipt of the exhibit into evidence.

Every joint exhibit list shall identify each exhibit, and the parties shall meet and confer before submitting the lists for the purpose of seeking an agreement on a common descriptive title, statement of purpose, and sponsoring witnesses that shall appear on every list for each joint exhibit.

In any exhibit list submitted before the offer of an included exhibit into evidence, the entry in the column for the status of receipt shall be left blank.  In any exhibit list submitted after the exhibit is offered into evidence or withdrawn, the entry in that column shall show the date of admission into evidence or rejection of the exhibit or shall indicate its withdrawal.

Exhibit lists shall include public and confidential exhibits, and shall list all exhibits together in (four-digit) numerical order, *e.g.*, CX-0001, CX-0002, CX-0003C, CX-0004, CX-0005C, etc.  Exhibit lists are public documents and should not contain confidential business information.

Two days after the deadline for the exhibit lists, the parties shall jointly submit to the Administrative Law Judge an electronic copy of a combined exhibit list, which has all parties' exhibit lists in a single document.

***Again, all exhibit lists should explain the content of the exhibit as well as contain the alpha character or number, and whether it has been withdrawn.***

### 8.7.7.    Witness Exhibit Binder.

In questioning a witness on direct examination, cross-examination, or examination of an adverse witness during the hearing, counsel shall provide the witness, the Administrative Law Judge, and other counsel, before the commencement of the examination, with a binder (or binders) containing all the exhibits that the examining attorney intends to use with that witness. The binder should contain double-sided exhibits, in numerical order and individually tabbed. Each witness binder must be labeled on its spine with the name and number of this Investigation and the nature of the contents of the binder, *e.g.*, Cross-Examination of Witness - Volume 1 of 1. In addition, the front of the witness binder must include a table of contents.

If there are certain exhibits (*i.e.* patent, prosecution histories) that will be used frequently with more than one witness, a separate exhibit binder containing those exhibits may be used with those witnesses and those exhibits may be omitted from the individual witness binders.

### 8.7.8.    Authenticity.

All documents that appear to be regular on their face shall be deemed authentic, unless it is shown by other evidence that the document is not genuine.

### 8.7.9.    Sponsoring Witness.

Each exhibit that is offered into evidence shall have a "sponsoring witness."  One of the purposes for a sponsoring witness is to establish a foundation for the exhibit and to prevent exhibits from entering the record that have not been adequately explained.  Sponsoring witness testimony does not have to be in the form of oral testimony if all parties agree to allow otherwise.  For example, if the parties are willing to stipulate and agree to designate portions of deposition testimony , along with certain exhibits that were discussed during the deposition, such request will generally be permitted upon the filing of a motion demonstrating good cause, as long

as the exhibit was clearly identified and discussed during the deposition and the deposition pages discussing the exhibit are included in the designation.

Except for investigations without a participating respondent, if a party believes evidence to be non-controversial and appropriate for admission into evidence without a sponsoring witness, that party may present with each such exhibit on or before the due date set forth in the procedural schedule (i) an affidavit or declaration that the declarant prepared or someone under the declarant's direction prepared the exhibit; (ii) a request that the exhibit be received in evidence without a witness at the hearing; and (iii) a statement of grounds for receiving the exhibit in evidence without a witness at the hearing.  Any party who wishes to cross-examine the declarant may object in writing within three (3) days of service of the affidavit or declaration and request, specifying whom the party intends to examine.  In the absence of objections, and upon good cause being shown, the Administrative Law Judge may in her discretion admit the exhibit in evidence without a witness.

### 8.7.10.    High Priority Objections and Motions *in Limine* for Hearing.

The procedural schedule provides a date for filing a document listing and providing a narrative explanation of the objections to exhibits which the party believes to be of high priority for discussion or ruling at the hearing.  Additionally, the procedural schedule also specifies the dates for motions *in limine*.

All motions *in limine* and high priority objections must be numbered as 1, 2 or 3, etc. Similarly, the responses to motions *in limine* and high priority objections should use the same number of the motion or objection it addresses, i.e., MIL No. 1, 2, 3, etc.

Without leave, each motion *in limine* and high priority objection shall not exceed twenty-five (25) pages, and all attachments to such motions shall not exceed a total of fifty (50) pages. Responses to such motions shall not exceed the same.  Any motion exceeding any of these page limits may be denied without prejudice or stricken.

### 8.8.    Filing of Exhibits by CD/DVD Media.

The procedure for submitting exhibits on electronic media is set forth in the Docket Services section of the U.S.I.T.C. website.  Currently the procedure may be found at the following Internet address:

*http://www.usitc.gov/docket_services/documents/EDIS3UserGuide-CDSubmission.pdf*

An accurate Table of Contents (TOC) file which lists the names of all files on the disc should be created and included **on each** disc.  "Each [disc] must have a label with the investigation name and number, and the range of exhibits contained thereon."  "Each type of exhibit (i.e., CX, CDX, CPX, RX, RDX, RPX, JX, JDX, JPX, SX, SDX, SPX, CX-{four digit number}C, CDX-{four digit number}C, RX-{four digit number}C, RDX-{four digit number}C, JX-{four digit number}C, JDX-{four digit number}C, SX-{four digit number}C, and SDX-{four digit number}C) must be submitted on a different [disc] or set of [disc]s so they may be uploaded and labeled more reliably by Docket[] [Services]."

**9.      Hearing Procedure.**

**9.1.      Order of Examination.**

Unless altered during the pre-hearing conference, or as necessitated by exigent circumstances such as the unavailability of witnesses on certain days, the order of examination at the hearing is as follows:

(1)      Complainant's Case-in-Chief.

(2)      Respondent's Case-in-Chief.  In the event there is more than one respondent, the order of presentation will be determined at the pre-hearing conference. Respondents should avoid unnecessary repetition of testimony or other evidence.

(3)      Staff's Case-in-Chief (if applicable).

(4)      Complainant's Rebuttal.  Complainant's rebuttal, absent prior approval, shall be limited to the scope of Respondent's defense case.

(5)      Respondent's Rebuttal.  Respondent's rebuttal, absent prior approval, shall be limited to the issues for which Respondent carries ultimate burden of proof.

**9.2.      Opening Statement and Closing Argument.**

The Administrative Law Judge does not require opening statements and closing arguments.  The parties may present opening statements.  Opening statements are limited to one (1) hour for the complainant, one (1) hour for respondent(s), and thirty (30) minutes for Staff (if applicable).  The parties may make a request to present closing arguments.

**9.3.      Hearing Hours.**

Normal hearing hours are 9:30 a.m. to 5:30 p.m., with a one (1) hour luncheon recess beginning each day at approximately 12:15-12:30 p.m.  Also, there will be a morning and an afternoon break of approximately fifteen (15) minutes each.

**9.4.      Hearing Decorum.**

**9.4.1.      Conversations at Hearing.**

No audible discourse between opposing counsel will be permitted while the hearing is in session.  If an attorney has anything to address to opposing counsel, it must be done through the Administrative Law Judge.

**9.4.2.      Cell Phones and Beepers; Food and Beverages.**

Audible cell phone and beeper signals shall be turned off in the courtroom during hearing, and all cell phone conversations must occur outside the courtroom.  No food or drink other than water is permitted in the courtroom during hearing.

### 9.4.3.        Swearing of Witnesses.

Each witness shall stand while being administered the oath of affirmation.  All others in the hearing room should remain seated and quiet.

### 9.4.4.        Arguments on Objection.

Arguments or objections may only be made by counsel prior to a ruling.  Once a ruling is made, no further discussion of the matter will be permitted.  The basis for the objection must be stated; general objections are not acceptable.

## 9.5.    Examination of Witnesses.

### 9.5.1.        Scope of Examination.

Except in extraordinary circumstances, examination of witnesses for Complainant(s)' case-in-chief and Respondent(s)' case-in-chief shall be limited to direct, cross, redirect, and re-cross.

### 9.5.2.        Scope of Cross-Examination.

Cross-examination is typically limited to the scope of the direct examination.  For witnesses called for the purpose of giving testimony in support of a position on an issue that is the same as the position on that issue of a party desiring cross-examination of that witness, that party is precluded from asking that witness leading questions, *i.e.* "no friendly cross-examination."

When counsel is presenting a witness with a question that refers back to the witness's previous testimony, counsel shall refrain from summarizing the witness's previous testimony because this can lead to a time-consuming objection that counsel's summary was not an accurate recitation of the witness's previous testimony.  If counsel wishes to refer back to a witness's previous testimony, counsel must use direct quotations.

### 9.5.3.        Scope of Redirect and Re-Cross Examination.

Redirect examination is limited to matters brought out on cross-examination.  Re-cross examination is limited to matters brought out on redirect examination.

### 9.5.4.        Coordination of Witnesses.

The parties are expected to conduct their witness examination in a matter that will adhere to the total time allotted for the hearing.

### 9.5.5.        Documents Presented to Witnesses.

Any document that an attorney wishes to show a witness must first be shown to opposing counsel.

### 9.5.6.    Scope of Expert Witness Testimony.

Expert witness testimony at the hearing shall be confined to the scope of the expert's report(s), and deposition testimony.  The proponent of the witness is expected to be prepared to demonstrate promptly where in that witness's reports or deposition may be found each element of testimony sought to be elicited at the hearing.

### 9.5.7.    Coordination of Respondents' Cross-Examination.

Respondents are expected to coordinate cross-examination through one attorney as far as practicable to avoid duplication.  If that is not possible, counsel who intend to cross-examine must be present in the hearing room during the entire preceding cross-examination of the witness so as not to engage in repetitive questioning.

### 9.5.8.    Requests for Clarification of a Question.

Requests for clarification of a question may only be made by the witness or the Administrative Law Judge.

### 9.5.9.    Use of Translators.

If a translator will be used at the hearing, the parties are responsible for obtaining a qualified, neutral translator on whom they can agree.  It is suggested that the translator be chosen from a list of approved translators, such as the ones maintained by various federal courts and federal agencies.  Translators will be administered an oath or affirmation.

### 9.5.10.    Conferring with a Witness during a Break in Testimony.

Counsel or intermediaries shall not confer with a witness during a break in the witness's testimony on the witness's substantive testimony.

### 9.6.    Transcript.

The parties have the option of arranging for the hearing transcript in real time.  The Administrative Law Judge prefers to have hearing transcripts in real time.  The parties should monitor the admission of exhibits on the transcript as it comes out, and promptly bring any errors or omissions to the Administrative Law Judge's attention at the hearing.

If a transcript needs to be corrected after the conclusion of the hearing, the party requesting the change shall do so through a motion.  Once an order issues adopting the proposed correction, it is incumbent upon the party requesting the change to send a copy of the order to Ace-Federal Reporters, Inc. so that the corrections can be made.

### 9.7.    Bench Briefs.

Bench briefs, if they are permitted by the Administrative Law Judge during the hearing, must be filed on EDIS as motions and must comport with the Commission Rules and Ground Rules relating to motions.

### 9.8.    Objections to Evidence/Testimony and Motions to Strike.

Motions to strike should be few in number and filed rarely.  (*See* above.).  Any motion to strike filed after the close of discovery and before the evidentiary hearing will be treated as a motion *in limine* or high priority objection.  A motion to strike will count against that party's permitted number of motions *in limine* and high priority objections.

Complainants as a group and respondents as a group are limited to one (1) such motion before the hearing.

It is preferable that any substantive evidentiary objection or a motion to strike that requires support from documents or testimony that is raised during the evidentiary hearing be resolved within twenty-four (24) hours.  To facilitate this turnaround, the evening of the day on which a party makes an objection, the objecting party should file a motion on EDIS.  Any response to such a motion must be filed on EDIS by close of business the following day. Without leave of court, motions to strike and responses thereto may not exceed 10 pages. Any attached exhibits may not exceed 20 pages.

If a motion is ruled on during the pendency of the hearing, and the party who filed the motion loses the motion, that party will be subject to a time deduction penalty.

Post-hearing motions to strike are discouraged.  No more than one (1) motion to strike will be allowed post-hearing without leave by complainants as a group and respondents as a group (or by each party in a group if they do not share an identity of  interests).

## 10.    Post-Hearing Submissions.

### 10.1.    Initial Post-Hearing Briefs.

On or before the date set forth in the procedural schedule, the parties shall file a post-hearing brief on the issues for which they have the burden of proof.  Absent prior approval of the Administrative Law Judge said brief shall consist of no more than one hundred (100) pages and have no more than fifty (50) pages of relevant attachments.  In addition, each party shall file a copy of its final exhibit list.  Courtesy copies of all post-hearing briefs and final exhibit lists shall be submitted in binders, preferably not exceeding 3" in width.

The post-hearing brief for each party shall discuss the issues and evidence tried (through, *e.g.*, citations to specific supporting evidence) within the framework of the general issues determined by the Commission's Notice of Investigation, identified in the joint issue chart for which that party bears the burden (except Staff), and any permitted amendments thereto.  All other issues shall be deemed waived.[28]

---

[28] *Certain Automated Media Library Devices*, Inv. No. 337-TA-746, Comm'n Op. at 14-16 (U.S.I.T.C., 2013).

The parties' initial post-hearing briefs must follow the order set forth in the joint issue chart.

Additionally, if a claim, argument or issue was briefed in a pre-hearing brief, but the party who raised the issue or made the argument did not adduce evidence on the same during the evidentiary hearing, then any such issue should be identified in the joint issue chart with the page numbers to each party's brief where such an unsupported issue or argument appears in a party's pre-hearing brief, and it shall be deemed waived.

The parties should not attempt to bypass the page limits by attaching[29] dense appendices, incorporating other documents by reference, such as a pre-hearing brief, or cross-referencing other sections of the post-hearing brief.

*Neither should they change fonts to enhance words or use footnotes in lieu of text.  Case citations should be in the text body, not in footnotes.*  In the same vein, the parties should set forth a clear, concise analysis of fact and law for each issue, and should not substitute their discussion of supporting facts with long string cites to the evidence.  For example, a heading with a single sentence beneath it, followed by cites to thirty-five evidentiary citations is not likely to be a sufficient analysis of fact and law, particularly if an issue is disputed.  Furthermore, arguments should not be hidden in footnotes, but should instead be presented in a straightforward and visible manner.  The initial post-hearing brief is the most critical brief in the Investigation, and parties that do not set forth an articulate analysis may find they have failed to carry their burden on a particular issue.

The parties should make sure they understand the law for each issue and touch upon all the elements for an issue.  For example, an analysis relating to a 35 U.S.C. § 103 obviousness defense should encompass a discussion of the scope and content of the prior art, the level of ordinary skill in the art, a comparison of the claimed invention and the prior art, and any secondary considerations of non-obviousness—not just a comparison of the claimed invention and the prior art.  A discussion of whether a domestic industry product, accused product, or prior art reference does *or does not* meet an asserted patent claim should prominently identify what elements are disputed.  If an element is not in dispute, each party must identify it with equal clarity or risk waiver of any opposition.

The parties are further advised to carefully select their best arguments, and set them forth in a logical, reasoned, persuasive manner.  The method of spilling out every possible permutation of evidence in an unordered series of one sentence arguments until the allotted space is exhausted is not likely to be effective.  The Administrative Law Judge may in her discretion treat only a few of the strongest arguments in such a case and ignore the remainder.

---

[29] The parties are likewise barred from attaching evidence that is not in the record and that should have been offered during the hearing.  For example, if an exhibit containing an expert report was not admitted at the hearing then it should not be attached to a post-hearing brief.  To the extent such an exhibit might be necessary to argue that another party's argument was waived or should be stricken, this must be introduced by way of separate motion papers and must not be submitted with any post-hearing briefing.

Staff will be permitted to change its pre-hearing position(s) on invalidity and infringement after the evidentiary hearing ("Hearing") where the evidence that came in during a Hearing appears to Staff to warrant such a change in its previous position. Staff will have seven (7) days after the last day of the evidentiary hearing to file a "Notice" on EDIS that it has changed its position. Staff should identify its filing on EDIS as a "Post-Hearing Notice." Staff should identify each issue on which it has changed its position, and explain why, citing to evidence from the hearing. The filing should be limited to 15 pages unless Staff requests leave to file a longer notice and explains why. The other parties will have seven (7) business days to respond to Staff's Notice. They may respond but need not and it will not be held against the parties. However, the parties will be expected to address Staff's change in position in post-hearing briefs.

### 10.2.    Post-Hearing Reply Briefs.

On or before the date set in the procedural schedule, the parties shall file a post-hearing reply brief. Absent prior approval of the Administrative Law Judge said brief shall consist of no more than fifty pages (50) pages and shall have no more than twenty (20) pages of relevant attachments. The post-hearing reply brief shall discuss and rebut only the issues and evidence raised in the initial post-hearing brief of an opposing party and follow the joint issue chart accompanying the pre-hearing and initial post-hearing briefs as set forth in Ground Rule 7.3.

Ground Rules 10.1 and 10.2 allow parties to devote a maximum of 150 pages to post-hearing briefing, excluding attachments, absent prior leave from the Administrative Law Judge. Although these rules contemplate a party devoting no more than 100 pages to an initial post-hearing brief and no more than 50 pages to a post-hearing reply brief, any party may allocate its 150 pages of post-hearing briefing, as it sees fit, between an initial post-hearing brief and a post-hearing reply brief. For example, without leave, a party can devote 75 pages to each brief.

### 10.3.    Proposed Findings of Fact

In accordance with Commission Rule 210.40, a party may elect to file proposed findings of fact and conclusions of law; however, the other side is not required to respond to the proposed findings of fact and conclusions of law. The lack of a response does not mean that the proposed findings of fact and conclusions of law are admitted, unless specifically stated as such. If a party chooses to file proposed findings of fact and conclusions of law, they must be filed on the same date as the initial post-trial brief.

The proposed findings of fact shall be in the form of numbered paragraphs. The findings shall reflect all section 337 elements, all issues outlined in the Notice of Investigation, and any other issues that arose during the course of the Investigation. Section headings consistent with the outline of the post-hearing brief may be used to set off paragraphs that relate to particular section 337 elements or issues. To be accepted without alteration, a proposed finding of fact must be an assertion of fact only (i.e., without argument more appropriately placed in the post-hearing brief). Each proposed finding of fact must be followed with citations to supporting authority in the evidence.

## 11.    Citations.

### 11.1.    Citations Generally.

The parties should not substitute their discussion of supporting facts with long string cites to the evidence.  No combination charts of citations of any kind will suffice by themselves.  Such arguments may be stricken.

Any party that cites to foreign language documents or provisions contained in foreign language documents in claim charts and discovery documents is required without exception to provide translations of the documents or provisions.  Any document or portion of a document that circumvents this Ground Rule, or that mis-translates or mis-characterizes the foreign language, may be stricken.

All citations to case law and evidence must be included in the text of the motion/response /brief/document, i.e., not in footnotes.

### 11.2.    Citation to Cases.

Every party must cite to the specific page(s) of the cited decision or order that includes the holding for which the authority is cited.  The official case reporter citation must be included for any published decision or order that is cited in a party's briefs or pleadings.  Additionally, the docket number and the full date of the disposition must be included in the citation of any unreported decision or order that is referenced by the parties.  Citations to unreported cases or those without precedential authority should be clearly marked with a parenthetical in the brief or pleading.  For example, such a citation might read:

*Case Name*, ### F.3d ###, at ## (Fed. Cir. ####) (nonprecedential).

A copy of any cited decision or order that is not available on EDIS, LEXIS, or WESTLAW shall be provided in an appendix to the brief or pleading.

## 12.    Cooperation among Parties.

Because of the time limitations imposed by Section 337, all counsel shall attempt to resolve, by stipulation or negotiated agreement, any procedural disputes encountered, including those relating to discovery and submission of evidence.  To assure the proper cooperative spirit in this Investigation, continuing good faith communications between counsel for the parties is essential and is expected.

## 13.    *Ex Parte* Contacts.

There shall be no *ex parte* communication with the Administrative Law Judge.  Any questions of a technical or procedural nature shall be directed to the Administrative Law Judge's Attorney Advisor.  Except for service of electronic copies pursuant to Ground Rule 1.3.2, the parties should take care not to copy the Attorney Advisor on email communications not specifically directed to them.

Informal communications with the Administrative Law Judge's Attorney Advisor or Chambers via email or telephone shall not be referenced in briefs, documents, or papers filed on EDIS.  Otherwise, formal communications on EDIS only will be entertained.

The parties should note that the Docket Manager for this Investigation, as well as other staff in Docket Services and the Administrative Law Judge's Secretary, should not be contacted relating to such issues as whether an order has been signed, when an order posted on EDIS will be processed, whether an order posted on EDIS will go out by overnight courier or U.S. Mail (as opposed to an issue of non-receipt several days later).  This is not to say that Docket Services may never be contacted with respect to this Investigation.  If the parties have generic questions relating, e.g., to a party filing, such an inquiry would be appropriate.  However, Docket Services' staff members are not allowed to give out information relating to the status of the Administrative Law Judge's orders.  The Docket Manager for this Investigation and the Administrative Law Judge's Secretary may log any inappropriate calls made in this Investigation and bring them to the attention of the Administrative Law Judge if necessary.

**14. Mediation.**

The Commission has approved the initiation of a voluntary mediation program for investigations under Section 337 of the Tariff Act of 1930 as amended, to facilitate the settlement of disputes.  Parties who wish to participate in the mediation program should notify the Administrative Law Judge's Attorney Advisor.

**15. Management Conference Instructions.**

For Case/Discovery Management Conferences that will be held by telephone, the Parties should jointly submit one e-mail to Chambers through McNamara337@usitc.gov at least 24 hours before:  (1) the names of the speaker and listener for each party with the identity of the party they represent;[30] (2) the name of the court reporter; and (3) the call-in telephone number and passcode.

For WEBEX conferences, several days before, the Parties will be invited to submit:  (1) the names of the speaker and listener for each party with the identity of the party they represent; and (2) their e-mail addresses and telephone numbers where they can be reached if necessary. The Parties will then be sent an invitation, that will include a dial-in number, which they must accept if they wish to participate.  Other procedural suggestions or directions will be sent before a WEBEX proceeding.

The Parties should notify Chambers of the names of all non-parties or third-parties that are known to have discoverable information in this Investigation by a filing a Notice on EDIS before the first Discovery Management Teleconference, or as soon as can be determined.  A copy of the same should be sent to Chambers through McNamara337@usitc.gov.

---

[30] Each party is limited to one (1) speaker and one (1) listener.

**APPENDIX A**

-1-

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

**Before the Honorable MaryJoan McNamara**
**Administrative Law Judge**

|  |  |
|---|---|
| **In the Matter of** | |
| **Certain . . .** | **Investigation No. 337-TA-____** |

**[SAMPLE] APPLICATION FOR ISSUANCE OF SUBPOENA AD TESTIFICANDUM**

[Party name], pursuant to 19 C.F.R. § 210.32(a)(1), hereby applies to the Administrative Law Judge for the issuance of the attached subpoena *ad testificandum* to:

[Name]
[Address]

The subpoena *ad testificandum* requires [Name] to appear and testify at the taking of a deposition on [date], at [location], or at such other date and location as is mutually agreed upon.

[Party name] believes that [Name] may be in possession of substantial information relevant to this Investigation.  [Insert explanation re relevance, *see* Ground Rule 3.5.1.] Furthermore, the topics identified in Attachment A of the subpoena are narrowly tailored to address only the aforementioned subjects.  [Insert explanation re reasonableness of the scope of inquiry, *see* Ground Rule 3.5.1.]

[Name] will receive the application and subpoena by overnight delivery, if not sooner, and all other parties to this Investigation will receive them on the next business day, at the latest, after the subpoena has issued.  For the reasons set forth above, [Party name] respectfully requests that its application for issuance of a subpoena *ad testificandum* be granted and the attached

-2-

subpoena be issued.


Dated: _____, 20__                          Respectfully submitted,


                                                _____
                                                [Counsel]
                                                [Address]

                                                *Counsel for* [Party Name]

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

In the Matter of

Certain . . .

Investigation No. 337-TA-___

## [SAMPLE] SUBPOENA DUCES TECUM

TO:    NAME
       ADDRESS

TAKE NOTICE:  By authority of Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by ["Complainant(s)" / "Respondent(s)"/ etc., followed by name of company] _____,

YOU ARE HEREBY ORDERED to produce at _____, on _____, or at such other time and place agreed upon, all of the documents and things in your possession, custody or control which are listed and described in Attachment A hereto.  Such production will be for the purpose of inspection and copying, as desired.

If production of any document listed and described in Attachment A hereto is withheld on the basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list.  The privileged document list must identify each document separately, specifying for each document at least: (i) the date the information was created or communicated; (ii) author(s)/sender(s); (iii) all recipient(s); and (iv) the general subject matter contained in the document.  The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated.  If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified.  The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

Any motion to limit or quash this subpoena shall be filed within ten (10) days after the receipt hereof.  At the time of filing of any motion concerning this subpoena, two (2) double-sided courtesy copies shall be served concurrently on the Administrative Law Judge at her office.

-4-

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set her hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this _11__ day of _March, 2021.


MaryJoan McNamara
Administrative Law Judge

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND
COMPONENTS THEREOF**

Inv. No. 337-TA-1263

Certificate of Service – Page 1

**PUBLIC CERTIFICATE OF SERVICE**

I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served upon the following parties as indicated, on **May 21, 2021**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC 20436

**On Behalf of Complainant Roku, Inc.:**

| | |
|---|---|
| Jonathan D. Baker, Esq.<br>**DICKINSON WRIGHT PLLC**<br>800 W. California Avenue, Suite 110<br>Sunnyvale, CA 94086<br>Email: JDBaker@dickinsonwright.com | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail<br>☒ Other: Email Notification<br>of Availability for Download |

**On Behalf of Respondents Altice USA, Inc., Cablevision Systems Corp., Cequel Communications, LLC d/b/a Suddenlink Communications, Charter Communications, Inc., Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, Universal Electronics Inc., Universal Electronics BV, UEI Brasil Controles Remotos Ltda., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., and CG México Remote Controls, S. de R.L. de C.V.:**

| | |
|---|---|
| Adam D. Swain, Esq.<br>**ALSTON & BIRD LLP**<br>950 F Street, NW<br>Washington, DC 20004<br>Email: adam.swain@alston.com | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail<br>☒ Other: Email Notification<br>of Availability for Download |

**On Behalf of Respondents LG Electronics Inc. and LG Electronics USA, Inc.:**

| | |
|---|---|
| James J. Lukas, Jr., Esq.<br>**GREENBERG TRAURIG LLP**<br>77 WEST WACKER DRIVE | ☐ Via Hand Delivery<br>☐ Via Express Delivery |

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND**                    Inv. No. 337-TA-1263
**COMPONENTS THEREOF**

Certificate of Service – Page 2

SUITE 3100                                          ☐ Via First Class Mail
Chicago, IL 60601                                  ☒ Other: Email Notification
E-mail: lukasj@gtlaw.com                            of Availability for Download

**On Behalf of Respondents Samsung Electronics Co., Ltd.**
**and Samsung Electronics America, Inc.:**

Richard A. Edlin, Esq.                             ☐ Via Hand Delivery
**GREENBERG TRAURIG LLP**                          ☐ Via Express Delivery
MetLife Building                                    ☐ Via First Class Mail
200 Park Avenue                                     ☒ Other: Email Notification
New York, NY 10166                                  of Availability for Download
Email: edlinr@gtlaw.com

**On Behalf of Respondent Wideopenwest, Inc.:**

Richard L. Brophy, Esq.                            ☐ Via Hand Delivery
**ARMSTRONG TEASDALE LLP**                         ☐ Via Express Delivery
7700 Forsyth Blvd., Suite 1800                      ☐ Via First Class Mail
St. Louis, MO 63105                                 ☒ Other: Service to Be
Email: rbrophy@atllp.com                            Completed by Complainant

# ATTACHMENT D

# UNITED STATES INTERNATIONAL TRADE COMMISSION

## Washington, D.C.

In the Matter of

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND COMPONENTS THEREOF**

**Inv. No. 337-TA-1263**

ORDER NO. 1:  PROTECTIVE ORDER

(May 12, 2021)

**Part of this Protective Order** is Administrative Order: 16-01, attached.  All parties should read it carefully. The language of Paragraph 3(vi) augments and clarifies the purposes for which confidential information may be used. All Parties must now include the acknowledgement language in Paragraph 4(i) and 4(ii) in any letter submitted to the Commission that constitutes the agreement to be bound by a Protective Order.

**WHEREAS**, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

**IT IS HEREBY ORDERED THAT**:

1.  Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary

to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information. The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).   Any information submitted, in pre hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted. Documents shall be clearly and prominently marked on their face with the legend:  "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice. Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

2(b).   The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein. If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.   In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than: (i) outside counsel for parties to this investigation, including

necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

4.      Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission: (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.      If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6(a).   Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above.  Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal.  When any confidential business information submitted in accordance with paragraph 2 above is included

in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof.  Alternatively, he or she shall sign the agreement included as Attachment A hereto.  Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

6(b).   Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure.  The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission.  If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7.      The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order.  *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8.       The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge.   When such information is made part of a pleading or is offered into the evidentiary record, the data set forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge.   During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.       Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative

Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.     If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.     No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior

to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.     If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.     Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.     Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.  Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business

information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy those additional copies in its possession which it regards as surplusage.

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.    If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.    Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.    The Secretary shall serve a copy of this order upon all parties.

**SO ORDERED**.

MaryJoan McNamara
Administrative Law Judge

## Attachment A

### NONDISCLOSURE AGREEMENT FOR
### REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____,* Investigation No. 337-TA-___, except as permitted in the protective order issued in this case.  I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.


Signed_____

Dated_____

Firm or affiliation _____



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

   a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

   b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

   a. The acknowledgement provision reads as follows:

   I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or
(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b.  The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c.  The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

i.   in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and
ii.  in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d.  In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

e.  In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

f.  Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:


*Meredith M. Broadbent*

_____

Meredith M. Broadbent

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND**　　　**Inv. No. 337-TA-1263**
**COMPONENTS THEREOF**

Certificate of Service – Page 1

<u>**PUBLIC CERTIFICATE OF SERVICE**</u>

I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served upon the following
parties as indicated, on **May 12, 2021**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

<u>**On Behalf of Complainant Roku, Inc.:**</u>

Jonathan D. Baker, Esq.
**DICKINSON WRIGHT PLLC**
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Email: JDBaker@dickinsonwright.com

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Email Notification
of Availability for Download

<u>**On Behalf of Respondents Altice USA, Inc., Cablevision
Systems Corp., Cequel Communications, LLC d/b/a
Suddenlink Communications, Charter Communications,
Inc., Charter Communications Operating, LLC, Spectrum
Management Holding Company, LLC, Universal Electronics
Inc., Universal Electronics BV, UEI Brasil Controles
Remotos Ltda., Gemstar Technology (Qinzhou) Co. Ltd.,
Gemstar Technology (Yangzhou) Co. Ltd., C.G.
Development Ltd., and CG México Remote Controls, S. de
R.L. de C.V.:**</u>

Adam D. Swain, Esq.
**ALSTON & BIRD LLP**
950 F Street, NW
Washington, DC 20004
Email: adam.swain@alston.com

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Email Notification
of Availability for Download

<u>**Respondents:**</u>

LG Electronics Inc.
LG Twin Tower
128, Yeoui-daero
Yeongdeungpo-gu, Seoul, 07336

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND**          Inv. No. 337-TA-1263
**COMPONENTS THEREOF**

Certificate of Service – Page 2

Republic of Korea

☒ Other: Service to Be
Completed by Complainant

LG Electronics USA, Inc.
1000 Sylvan Avenue
Englewood Cliffs, NJ 07632

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Service to Be
Completed by Complainant

Samsung Electronics Co., Ltd.
129, Samsung-Ro, Maetan-3dong
Yeongtong-Gu
Suwon-si, Gyeonggi-do, 16677
Republic of Korea

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Service to Be
Completed by Complainant

Samsung Electronics America, Inc.
85 Challenger Road
Ridgefield Park, NJ 07660

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Service to Be
Completed by Complainant

Wideopenwest, Inc.
7887 E Belleview Avenue
Suite 1000
Englewood, CO 80111

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Service to Be
Completed by Complainant

# ATTACHMENT E



SILICON VALLEY
800 W CALIFORNIA AVENUE
SUITE 110
SUNNYVALE, CA 94086
TELEPHONE: 408-701-6200
FACSIMILE: 844-670-6009
http://www dickinsonwright com

JONATHAN D BAKER
JDBaker@dickinsonwright com
408-701-6180

April 27, 2021

**VIA EDIS**

The Honorable Lisa R. Barton
Secretary to the Commission
U.S. International Trade Commission
500 E Street, S.W., Room 112A
Washington, DC  20436

>    Re:    *In the Matter of Certain Televisions, Remote Controls, and Components Thereof*,
>           Docket No. 337-TA-3542

Dear Secretary Barton:

On behalf of Complainant Roku, Inc. ("Roku"), please find enclosed for filing herewith the following:

1.   An Amended Complaint Under Section 337 of the Tariff Act of 1930, as Amended; and

2.   Supplemental Exhibits 85–99 to the Amended Complaint.

Thank you for your attention to this matter.  Please contact me with any questions regarding this submission.

Sincerely,

Jonathan D. Baker
*Counsel for Complainant
Roku, Inc.*

**UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.**

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN TELEVISIONS, REMOTE<br>CONTROLS, AND COMPONENTS<br>THEREOF** | Investigation No. 337-TA-_____ |

**AMENDED COMPLAINT UNDER SECTION 337
OF THE TARIFF ACT OF 1930, AS AMENDED**

**Complainant:**

Roku, Inc.
1155 Coleman Avenue
San Jose, CA 95110
Tel: (408) 556-9040

**Counsel for Complainant:**

Jonathan D. Baker
Craig Y. Allison
Dino Hadzibegovic
Mark Rogge
DICKINSON WRIGHT RLLP
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Tel:  (408) 701-6200

Steven R. Daniels
Michael D. Saunders
DICKINSON WRIGHT PLLC
607 W. 3rd Street, Suite 2500
Austin, Texas 78701
Tel:  (512) 770-4200

Evi S. Li
DICKINSON WRIGHT PLLC
1825 Eye St. NW, Suite 900
Washington, DC 20006
Tel: (202) 659-6965

**Proposed Respondents:**

Universal Electronics, Inc.
15147 N. Scottsdale Road
Suite H300
Scottsdale, Arizona 85254
Tel: (480) 530-3000

Gemstar Technology (Qinzhou) Co. Ltd.
Hedong Industrial Park
Qinzhou, Guangxi Province, 535000 China
Tel: + 86-777-3899118

Gemstar Technology (Yangzhou) Co. Ltd.
1 Junsheng Road Industry Park
Fanshui Industrial Zone
Baoying, Yanzhou,
Jiangsu Province, 225800 China
Tel: + 86-514-8808-7815

C.G. Development Ltd.
Units 902-905, 9/F,
One Harbourfront
18 Tak Fung Street, Hung Hom
Kowloon, Hong Kong
Tel: + 852.2766.0577

Universal Electronics BV
Colosseum 2
7521 PT Enschede
Netherlands
Tel: + 31 53.488.8000

UEI Brasil Controles Remotos Ltda.
Avenida Torquato Tapajos
no 4010 Galpao 04
Colonia Santo Antonio
CEP:69093-018
Manaus – Amazonas – Brasil
Tel: + 55 92 3617 3203

CG México Remote Controls, S. de R.L. de
C.V.
Séptima No. 840-B
Parque Industrial Monterrey
Apodaca, NUEVO LEON, 66603
Mexico
Tel: + 52-8188528500

LG Electronics Inc.
LG Twin Tower
128, Yeoui-daero
Yeongdeungpo-gu, Seoul, 07336
Rep. of Korea
Tel: + 82-264564337

LG Electronics USA, Inc.
1000 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
United States
Tel: (888) 865-3026

Samsung Electronics Co., Ltd.
129, Samsung-Ro, Maetan-3dong,
Yeongtong-Gu
Suwon-si, Gyeonggi-do, 16677
Rep. of Korea
Tel: + 82-312001114

Samsung Electronics America, Inc.
85 Challenger Road
Ridgefield Park, New Jersey 07660
United States
Tel: (855) 382-3353

Charter Communications, Inc.
400 Atlantic Street
Stamford, CT 06901
Tel: (203) 905-7801

Charter Communications Operating, LLC
12405 Powerscourt Drive
St. Louis, Missouri 63131
Tel: (314) 965-0555

Spectrum Management Holding
Company, LLC
400 Atlantic Street
Stamford, CT 06901
Tel: (203) 905-7801

Altice USA, Inc.
One Court Square
Long Island City, New York 11101
Tel: (516) 803-2300

Cablevision Systems Corp.
1111 Stewart Ave.
Bethpage, New York 11714
Tel: (516) 803-2300

Cequel Communications, LLC d/b/a
Suddenlink Communications
One Court Square
Long Island City, New York 11101
Tel: (516) 803-2300

Wideopenwest, Inc.
7887 E Belleview Ave
Ste. 1000
Englewood, CO 80111
Tel: (720) 479-3500

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................... 1

II.    THE PARTIES.......................................................................................... 3

    A.     Complainant Roku ......................................................................... 3

    B.     Proposed Respondents ................................................................... 4

        1.     UEI ...................................................................................... 4

        2.     LG ....................................................................................... 6

        3.     Samsung .............................................................................. 7

        4.     Charter ................................................................................ 8

        5.     Altice .................................................................................. 9

        6.     WOW ................................................................................ 10

III.   THE ACCUSED PRODUCTS AT ISSUE ........................................... 11

    A.     The UEI Accused Products ........................................................... 11

    B.     The LG Accused Products ............................................................ 13

    C.     The Samsung Accused Products ................................................... 14

    D.     The Charter Accused Products ..................................................... 17

    E.     The Altice Accused Products ....................................................... 18

    F.     The WOW Accused Products ....................................................... 19

IV.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE
      INVENTIONS ......................................................................................... 20

    A.     U.S. Patent No. 8,378,875........................................................... 20

    B.     U.S. Patent No. 7,388,511............................................................ 22

    C.     Foreign Counterparts of the Asserted Patents.............................. 23

    D.     Licensees Under the Asserted Patents .......................................... 23

V.     UNLAWFUL AND UNFAIR ACT OF THE PROPOSED RESPONDENTS ............... 23

    A.     Infringement of U.S. Patent No. 8,378,875 ................................. 24

        1.     UEI's Infringement of the '875 Patent...................................... 24

        2.     Charter's Infringement of the '875 Patent ................................ 26

        3.     Altice's Infringement of the '875 Patent ................................... 27

        4.     WOW's Infringement of the '875 Patent................................... 29

    B.     Infringement of U.S. Patent No. 7,388,511 ................................. 30

        1.     UEI's Infringement of the '511 Patent...................................... 30

**TABLE OF CONTENTS** (cont.)

      2.     LG's Infringement of the '511 Patent ........................................ 34

      3.     Samsung's Infringement of the '511 Patent................................ 36

VI.    SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE .......................... 38

    A.    UEI ........................................................................................... 38

    B.    LG .............................................................................................. 40

    C.    Samsung .................................................................................... 41

    D.    Charter....................................................................................... 41

    E.    Altice......................................................................................... 42

    F.    WOW ......................................................................................... 43

VII.   HARMONIZED TARIFF SCHEDULE INFORMATION ........................................ 43

VIII.  DOMESTIC INDUSTRY ................................................................................ 43

    A.    Technical Prong ......................................................................... 44

      1.     U.S. Patent No. 8,378,875......................................... 44

      2.     U.S. Patent No. 7,388,511......................................... 45

    B.    Economic Prong......................................................................... 46

IX.    RELATED LITIGATION ............................................................................... 47

X.     REQUESTED REMEDIAL ORDERS................................................................ 48

    A.    Limited Exclusion Order............................................................ 48

    B.    Cease and Desist Order.............................................................. 49

XI.    RELIEF ..................................................................................................... 49

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1. | U.S. Patent No. 8,378,875 |
| 2. | U.S. Patent No. 7,388,511 |
| 3. | Copy of Assignment Record for U.S. Patent No. 8,378,875 |
| 4. | Copy of Assignment Record for U.S. Patent No. 7,388,511 |
| 5C. | **Confidential** Declaration of Kevin Bright |
| 6. | *Universal Electronics, All products Web Page*, https://www.urcsupport.com/all-products/?section-id=117 |
| 7. | *Charter Spectrum URC 1160*, https://www.urcsupport.com/urc_product/charter-spectrum-urc1160/ |
| 8. | *Optimum URC 2464;* https://www.urcsupport.com/urc_product/optimum-urc2464/ |
| 9. | *Wow! Experience Remote*, https://www.urcsupport.com/urc_product/wow-remote/?product-provider=7486 |
| 10. | *LG 55NANO81ANA Smart TV Web Page*, https://www.lg.com/us/tvs/lg-55nano81ana-4k-uhd-tv# |
| 11. | *LG Smart TV 2020 – URC Support – Frequently Asked Questions*, https://www.urcsupport.com/urc_product/lg-smart-tv-2020/ |
| 12. | *Samsung QN55Q70TAFXZA Smart TV Web Page;* https://www.samsung.com/us/televisions-home-theater/tvs/qled-4k-tvs/55-class-q70t-qled-4k-uhd-hdr-smart-tv-2020-qn55q70tafxza |
| 13. | *Samsung Smart TV 2020 – URC Support – Frequently Asked Questions),* https://www.urcsupport.com/urc_product/samsung-smart-tv-2020/ |
| 14. | *Charter, Charter Spectrum URC1160 Remote control Web Page*, https://www.spectrum.net/support/remote/spectrum-guide-remote |
| 15. | *Optimum Remote Control Programming Web Page* https://www.optimum.net/FAQ/#/answers/a_id/3829 |
| 16. | *WOW Ultra Remotes Support*, https://www.wowway.com/docs/wow/documents-support-ultra/ultra-remotes.pdf] |
| 17. | List of Foreign Counterparts for Asserted Patents |
| 18C. | **Confidential** List of Licensees Under the Asserted Patents |
| 19. | Claim Chart showing Infringement of U.S. Patent No. 8,378,875 via UEI Accused Products |
| 20. | Claim chart showing Infringement of U.S. Patent No. 8,378,875 via Charter Accused Products |

**TABLE OF EXHIBITS (cont.)**

| Exhibit No. | Description |
|---|---|
| 21. | Claim Chart Showing Infringement of U.S. Patent No. US 8,378,875 via Altice Accused Products |
| 22. | Claim Chart Showing Infringement of U.S. Patent No. 8,378,875 via WOW Accused Products |
| 23. | *Replace a Lost or Damaged Remote Control*, https://www.spectrum.net/support/tv/replace-lost-or-damaged-remote-control/ |
| 24. | *Replacement of a Remote Control*, https://www.optimum.net/FAQ/#/answers/a_id/331/kw/replacement%20remote |
| 25. | *WOW TV FAQs*, https://www.wowway.com/support/tv |
| 26. | Claim Chart Showing Infringement of U.S. Patent No. 7,388,511 via LG Accused Products (55NANO81ANA TV and Magic Remote Control) |
| 27. | Claim Chart showing Infringement of U.S. Patent No. US 7,388,511 via Samsung Accused Products (Samsung QN55Q70TAFXZA TV and Samsung Universal Remote Control) |
| 28. | Declaration of Dino Hadzibegovic |
| 29C. | **Confidential** Receipts for the Purchase of Exemplary Accused Products |
| 30. | UEI URC 7935 OFA Streamer Remote Control Photographs |
| 31. | *Universal Electronics, Inc. importation records from March 18,2021*; https://www.importgenius.com/ |
| 32. | *Crane Worldwide Logistics importation records from February 2, 2021*; https://www.importgenius.com/ |
| 33. | UEI URC 1160 Charter Spectrum Remote Control Photographs |
| 34. | *UEI URC 1160 Charter Spectrum remote control photographs*, https://fccid.io/MG3-R31160B |
| 35. | *Universal Electronics, Inc. importation records from July 18,2021*; https://www.importgenius.com/ |
| 36. | UEI URC 2464 Optimum Remote Control Photographs |
| 37. | UEI URC 2135 WOW! Experience Remote Control Photographs |
| 38. | LG ThinQ AI, Model No. 55NANA81ANA Television Photographs |
| 39. | *LG Electronics U.S.A. Inc. importation records from September 10, 2020*; https://www.importgenius.com/ |
| 40. | Samsung 55" Q70T 4KSmart QLED TV, Model No. QN55Q70TAF photographs |

**TABLE OF EXHIBITS (cont.)**

| Exhibit No. | Description |
|---|---|
| 41. | *Samsung Electronics America Inc. importation records from May 30, 2020,* https://www.importgenius.com/ |
| 42C. | **Confidential** Patent Purchase Agreement Between Home Control Singapore Pte. Ltd. D/B/A Omni Remotes and Roku Inc. |
| 43C. | **Confidential** Feature Guide for new Roku Remote Control |
| 44C. | **Confidential** Claim chart for U.S. Patent No. 8,378,875 via Roku Domestic Industry Products (new Roku remote control) |
| 45. | *Roku Ultra LT Web Page,* https://www.roku.com/products/roku-ultra-lt |
| 46. | *How do I set up my Roku® enhanced remote to control my TV?,* https://support.roku.com/article/115013019828 |
| 47. | Claim Chart for U.S. Patent No. 7,388,511 via Roku Domestic Industry Products (Roku Ultra LT and Roku Remote) |
| 48. | *Streamer Remote URC 7935 User Manual, OneForAll,* https://www.oneforall.us/sites/default/files/2019-05/711949%20QSG%20ENG%20URC7935%20Walmart%20%20RDN1060319.pdf |
| 49. | Photographs of URC 7935 Teardown Images |
| 50. | *16-Bit Microcontroller with Infrared Module, Maxim Integrated Products, 2011,* https://datasheets.maximintegrated.com/en/ds/MAXQ610.pdf |
| 51. | *SR-002-R Remote Control Users Guide, Spectrum,* https://d15yx0mnc9teae.cloudfront.net/sites/default/files/User_Manual_SR002R.pdf |
| 52. | *1160 Charter Spectrum Remote 2015 Teardown Internal Photos Full page photo Universal Electronics,* https://fccid.io/MG3-1160/Internal-Photos/Internal-Photos-2714082 |
| 53. | *Qorvo GP565, Qorvo,* https://www.qorvo.com/products/p/GP565 |
| 54. | *GP565 RF4CE Communications Controller for Remote Control Product Brief, GP_P007_PB_06535 V2.00, Qorvo, 2017;* https://www.qorvo.com/products/d/da006198 |
| 55. | *URC2464 Remote Control User's Guide, Optimum, Universal Electronics, 2014,* https://www.urcsupport.com/wp-content/uploads/2020/09/Optimum-Manual-ENG-Span.pdf |
| 56. | *WOW URC 2135 User Manual,* https://www.urcsupport.com/wp-content/uploads/2020/08/WOW-Remote_URC2135-FNL.pdf |
| 57. | *Wow URC 2135 Teardown Internal Photos,* https://fccid.io/MG3-2135/Internal-Photos/Internal-Photos-3168480 |

**TABLE OF EXHIBITS** (cont.)

| Exhibit No. | Description |
|---|---|
| 58. | *LG NanoCell 81 Series 2020 55 inch Class 4K Smart UHD NanoCell TV w/ AI ThinQ® (54.6" Diag)*, https://www.lg.com/us/tvs/lg-55nano81ana-4k-uhd-tv# |
| 59. | *LG TV Owner's Manual, LED TV, 2020*, https://gscs-b2c.lge.com/downloadFile?fileId=9X76ZwBS1TIQGBKDpaLQ |
| 60. | *LG TV User Guide*, https://gscs-b2c.lge.com/downloadFile?fileId=mkYY1ZIJPdh0Jbeon2vqDA |
| 61. | *QuickSet Cloud, QuickSet Frameworks,* https://quicksetcloud.com/technology/ |
| 62. | *QuickSet Cloud, Start Building A Smarter Home With QuickSet*, https://quicksetcloud.com/quickset-in-action/ |
| 63. | *Owner's Manual, Magic Remote, AN-MR19BA, LG Electronics Inc., 2019*, https://www.lg.com/us/support/product/lg-AN-MR19BA.AUS |
| 64. | *Panasonic Blu-ray Disc Player Model No. DP-UB420 User Manual, TQBS0234, Panasonic Corporation of North America, 2019*, https://eww.pavc.panasonic.co.jp/bd/UB420_330_320/DP-UB420_P_EN_TQBS0234.pdf |
| 65. | *High-Definition Multimedia Interface Specification Version 1.3a, by Hitachi, Ltd., Matsushita Electric Industrial Co., Ltd., Philips Consumer Electronics International, B.V., Silicon Image, Inc., Sony Corporation, Thomson Inc., and Toshiba Corporation, November 10, 2006*, https://ez.analog.com/cfs-file/__key/telligent-evolution-components-attachments/00-317-00-00-00-05-21-37/HDMISpecification13a.pdf |
| 66. | *Panasonic DMR-EZ28K DVD Recorder Support Page*, https://shop.panasonic.com/support-only/DMR-EZ28K.html?t=manuals |
| 67. | *LG TV - Simplink Function*, https://www.lg.com/uk/microsites/tv/simplink-function |
| 68. | *55" Class Q70T QLED 4K UHD HDR Smart TV (2020)*, https://www.samsung.com/us/televisions-home-theater/tvs/qled-4k-tvs/55-class-q70t-qled-4k-uhd-hdr-smart-tv-2020-qn55q70tafxza/ |
| 69. | *Samsung TV User Manual, dated March 4, 2020*, https://www.samsung.com/us/support/owners/product/qled-tv-q70t-2020 |
| 70. | *Samsung TV E-Manual, dated November 16, 2020*, https://www.samsung.com/us/support/owners/product/qled-tv-q70t-2020 |
| 71. | *Why is my Roku® enhanced remote not controlling volume and power on my TV?*, https://support.roku.com/article/360004786894 |
| 72. | *What type of remote does my Roku® device use?",* https://support.roku.com/article/115013256808 |

**TABLE OF EXHIBITS (cont.)**

| Exhibit No. | Description |
|---|---|
| 73. | *Vizio M-Series Quantum 55" Class (54.5" diag) 4K HDR Smart TV,* https://www.vizio.com/en/tv/m-series/M55Q7-H1 |
| 74. | *Vizio M-Series Quantum Manual, Vizio, 2020,* http://cdn.vizio.com/user-manual/PDF/2020/TV/M7-Series_M50Q7-H1_M50Q7-H61_M55Q7-H1_M65Q7-H1_UM-ENG.pdf |
| 75. | *VIZIO M-Series™ All-in-One 2.1 Home Theater Sound Bar,* https://www.vizio.com/en/sound-bar/m-series/M21d-H8 |
| 76. | *Vizio Soundbar User Manual Model: M21d-H8, Vizio, 2020,* http://cdn.vizio.com/misc/KBImages/models/m21dh8/manual.pdf |
| 77. | *Hardware Specifications,* https://developer.roku.com/docs/specs/hardware.md |
| 78. | *Roku Express,* https://www.roku.com/products/roku-express |
| 79. | *Roku Express +,* https://www.roku.com/products/roku-express-plus |
| 80. | *Roku Premiere,* https://www.roku.com/products/roku-premiere |
| 81. | *Roku Premiere +,* https://www.roku.com/products/roku-premiere-plus |
| 82. | *Roku Streaming Stick +,* https://www.roku.com/products/streaming-stick-plus |
| 83. | *Roku Ultra,* https://www.roku.com/products/roku-ultra |
| 84. | *Streaming Specifications,* https://developer.roku.com/docs/specs/media/streaming-specifications.md |
| 85. | *UEI 10-K,* https://investors.uei.com/static-files/5839ef4c-a214-4d56-a414-d6692898f85f |
| 86. | *UEI Locations,* https://www.uei.com/locations |
| 87. | *Press Release "Universal Electronics Acquires Leading Remote Control Company,"* https://investors.uei.com/news-releases/news-release-details/universal-electronics-acquires-leading-remote-control-company |
| 88. | *Internal Photographs of Samsung RMCSPT1CP1 Remote Control,* https://apps.fcc.gov/oetcf/eas/reports/ViewExhibitReport.cfm?mode=Exhibits&RequestTimeout=500&calledFromFrame=N&application_id=EThmsaah10%2Bir5hW8xPwKw%3D%3D&fcc_id=A3LRMCSPT1CP1 |
| 89. | *External Photographs of Samsung RMCSPT1CP1 Remote Control,* https://apps.fcc.gov/oetcf/eas/reports/ViewExhibitReport.cfm?mode=Exhibits&RequestTimeout=500&calledFromFrame=N&application_id=EThmsaah10%2Bir5hW8xPwKw%3D%3D&fcc_id=A3LRMCSPT1CP1 |
| 90. | *About LG,* http://www.lgnewsroom.com/about/about-lg/ |

**TABLE OF EXHIBITS** (cont.)

| Exhibit No. | Description |
|---|---|
| 91. | *Corporate Profile of LG Electronics USA, Inc.,* https://www.lg.com/us/business/corporate-profile |
| 92. | *Samsung Electronics Co. Ltd.,* https://www.bloomberg.com/profile/company/005930:KS |
| 93. | *Samsung Electronics America Inc.,* https://www.bloomberg.com/profile/company/2868Z:US |
| 94. | *About Charter,* https://corporate.charter.com/about-charter |
| 95. | *Charter Communications Inc. 10-K,* https://ir.charter.com/static-files/b3555fee-685e-453b-a732-b427584ccc7d |
| 96. | *Altice USA,* https://investors.alticeusa.com/investors/overview/default.aspx |
| 97. | *About Altice USA,* https://www.alticeusa.com/about-altice-usa |
| 98. | *Altice USA Inc. 10-K,* https://investors.alticeusa.com/investors/alticeusa/sec-filings/2021/default.aspx |
| 99. | *WOW 10-K,* https://ir.wowway.com/investor-relations/sec-filings/sec-filings-details/default.aspx?FilingId=14740690 |

## **TABLE OF APPENDICES**

| Appendix | Description |
|:---:|:---|
| A | Copy of Prosecution History of U.S. Patent No. 8,378,875 |
| B | Copy of References cited in Prosecution History of U.S. Patent No. 8,378,875 |
| C | Copy of Prosecution History of U.S. Patent No. 7,388,511 |
| D | Copy of References cited in Prosecution History of U.S. Patent No. 7,388,511 |

# I.      INTRODUCTION

1.      This Complaint is filed by Roku, Inc. ("Roku") pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337").  Roku respectfully requests that the U.S. International Trade Commission ("Commission") institute an investigation relating to the unlawful importation into the United States, the sale for importation, and/or the sale within the United States after importation of certain televisions, remote controls, and components thereof (collectively "the Accused Products") without Roku's authorization.  The Accused Products include at least the products listed in Section III of the Complaint.

2.      The proposed respondents are:  (i) Universal Electronics Inc., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., Universal Electronics BV, UEI Brasil Controles Remotos Ltda., and CG México Remote Controls, S. de R.L. de C.V. (collectively, "UEI"); (ii) LG Electronics Inc., and LG Electronics USA, Inc. (collectively, "LG"); (iii) Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. (collectively, "Samsung"); (iv) Charter Communications, Inc., Charter Communications Operating, LLC, and Spectrum Management Holding Company, LLC (collectively, "Charter"); (v) Altice USA, Inc., Cablevision Systems Corp., and Cequel Communications, LLC d/b/a Suddenlink Communications (collectively, "Altice"); and (vi) Wideopenwest, Inc. ("WOW").[1]  The Proposed Respondents continue to harm Roku's domestic industry and to violate Section 337 through unlawful and unauthorized sale for importation into the United States, importation into the United States, and/or sale within the United States after importation of Accused Products which embody or are used to practice the inventions claimed in Roku's patents without Roku's authorization.

---

[1] Collectively, UEI, LG, Samsung, Charter, Altice, and WOW are referred to herein as the "Proposed Respondents."

1

3.      The Proposed Respondents are infringing, directly or indirectly, one or more claims

of U.S. Patent Nos. 8,378,875 (the "'875 patent"); and 7,388,511 (the "'511 patent") (collectively

"the Asserted Patents") through the sale for importation into the United States, importation, and/or

sale within the United States after importation of the Accused Products:

| U.S. Patent No. | Asserted Claims | Proposed Respondents |
|---|---|---|
| 8,378,875 | 1-5, 8-11, 14 | • UEI<br>• Charter<br>• Altice<br>• WOW |
| 7,388,511 | 5 | • UEI<br>• LG<br>• Samsung |

**Table 1**

4.      The unlawful activities of the Proposed Respondents include the manufacture, sale

for importation into the United States, importation, and/or sale within the United States after

importation of the Accused Products.

5.      An industry in the United States relating to articles protected by the '511 patent

exists within the meaning of 19 U.S.C. §§ 1337(a)(2) and 1337 (a)(3).  Roku makes significant

domestic investments in plant and equipment and labor and capital, and likewise makes substantial

domestic investments in research and development relating to articles protected by this patent.  Ex.

5C.

6.      Furthermore, an industry in the United States relating to articles protected by the

'875 patent is in the process of being established within the meaning of 19 U.S.C. §§ 1337(a)(2)

and 1337(a)(3).  Roku is actively engaged in steps leading to the development of new technologies

that practice the '875 patent, and there is a significant likelihood that a relevant domestic industry

will be established.  Ex. 5C.

7.      Roku seeks a permanent limited exclusion order directed towards the Proposed Respondents that excludes from entry into the United States all infringing products, manufactured by or for the Proposed Respondents or any of their subsidiaries, related companies, or agents.

8.      Roku also seeks cease and desist orders pursuant to 19 U.S.C. § 1337(f) prohibiting the Proposed Respondents or any of their subsidiaries, related companies, and agents from, among other things, engaging in the importation, marketing, advertising, provision of services, distribution, offering for sale, sale after importation, use after importation, licensing, and/or other transfers within the United States after importation of all infringing products.

9.      Further, Roku requests that the Commission impose a bond upon Proposed Respondents' importation of infringing products during the 60-day Presidential review period, pursuant to 19 U.S.C. § 1337(j), to prevent further injury to Roku's domestic industry relating to the Asserted Patents.

## II.      THE PARTIES

### A.      Complainant Roku

10.      Complainant Roku is a public corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1155 Coleman Avenue, San Jose, California 95110.

11.      Roku pioneered streaming media content to the TV and is the leading TV streaming platform in the United States by hours streamed.  By the end of 2020, Roku had 51.2 million active accounts.  Roku users streamed 58.7 billion hours of content in 2020.  Roku manufactures and sells Roku streaming players, Roku-branded speakers, and accessories.  Roku also partners with third party TV manufactures for the development of Roku-branded TVs.

12.      Roku's mission is to be the TV streaming platform that connects the entire TV ecosystem.  Roku enables users to access a wide selection of content by connecting their Roku

3

device to the Roku streaming platform via a home broadband network.  Roku also enables content

publishers to build and monetize large audiences and provide advertisers with unique capabilities

to engage consumers.  Roku invests significant resources to provide an industry-leading platform

for Roku's users, content publishers and advertisers.

### B.    Proposed Respondents

#### 1.  UEI

13.    On information and belief, **Universal Electronics Inc.** is a Delaware corporation

with its headquarters at 15147 N. Scottsdale Road, Suite H300, Scottsdale, Arizona 85254.  On

information and belief, Universal Electronics Inc. designs, develops, manufactures, imports, sells,

and/or sells after importation into the United States the accused remote controls and UEI's

QuickSet technology.  Ex. 85 at 3-4.

14.    On information and belief, **Gemstar Technology (Qinzhou) Co. Ltd.** is a

company organized under the laws of the People's Republic of China with its principal place of

business at Hedong Industrial Park, Qinzhou, Guangxi Province, 535000 China.  On information

and belief, Gemstar Technology (Qinzhou) Co. Ltd. manufactures accused remote controls in

China and then imports and/or sells the accused remote controls for importation into the United

States.  Ex. 85 at 7; Ex. 86.

15.    On information and belief, **Gemstar Technology (Yangzhou) Co. Ltd.** is a

company organized under the laws of the People's Republic of China with its principal place of

business at 1 Junsheng Road Industry Park, Fanshui Industrial Zone, Baoying, Yanzhou, Jiangsu

Province, 225800 China.  On information and belief, Gemstar Technology (Yangzhou) Co. Ltd.

manufactures accused remote controls in China and then imports and/or sells the accused remote

controls for importation into the United States.  Ex. 85 at 7; Ex. 86.

4

16.     On information and belief, **C.G. Development Ltd.** is a company organized under the laws of the Hong Kong with its principal place of business at One Harbourfront, 18 Tak Fung Street, Hung Hom Kowloon, Hong Kong. On information and belief, C.G. Development Ltd., manufactures accused remote controls in China and then imports and/or sells the accused remote controls for importation into the United States.  Exs. 86, 87.

17.     On information and belief, **Universal Electronics BV** is a company organized under the laws of the Netherlands with its principal place of business at Colosseum 2, 7521 PT Enschede, Netherlands.   On information and belief, Universal Electronics BV imports and/or sells for importation the accused One For All remote controls into the United States.  Exs. 86, 32.

18.     On information and belief, **UEI Brasil Controles Remotos Ltda**. is a company organized under the laws of Brazil with its principal place of business at Avenida Torquato Tapajos, no 4010 Galpao 04, Colonia Santo Antonio, CEP:69093-018, Manaus – Amazonas – Brasil.  On information and belief, UEI Brasil Controles Remotos Ltda. manufactures accused remote controls in Brazil and then imports and/or sells the accused remote controls for importation into the United States.  Ex. 85 at 7; Ex. 86.

19.     On information and belief, **CG México Remote Controls, S. de R.L. de C.V.** is a company organized under the laws of Mexico with its principal place of business at Séptima No. 840-B, Parque Industrial Monterrey, Apodaca, NUEVO LEON, 66603, Mexico.  On information and belief, CG México Remote Controls, S. de R.L. de C.V. manufactures accused remote controls in Mexico and then imports and/or sells the accused remote controls for importation into the United States.  Ex. 85 at 7; Ex. 86.

20.     On information and belief, Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., Universal Electronics BV, UEI Brasil

Controles Remotos Ltda., and CG México Remote Controls, S. de R.L. de C.V are wholly-owned subsidiaries of Universal Electronics Inc. Universal Electronics Inc. and its subsidiaries are collectively referred to as "UEI."

21.     On information and belief, UEI designs, develops, manufactures, imports, and sells a variety of remote control products for use in controlling home electronics devices.  Ex. 85 at 3. UEI's customers include consumer electronics manufacturers, video service providers such as cable and satellite companies, and end users.  *Id*.  On information and belief, UEI owns and operates manufacturing and assembly factories in China, Mexico and Brazil.  *Id*. at 7.

22.     On information and belief, UEI also designs, develops, licenses, and distributes software and hardware solutions that incorporate or implement its QuickSet technology.  *Id*. at 4. On information and belief, UEI's QuickSet technology can be embedded in home electronics devices such as televisions or delivered as a cloud-based service to enable universal remote setup and control.  *Id*.  On information and belief, QuickSet enables universal remote control device set-up using automated and guided on-screen instructions and a wireless two-way communication link between the remote and the QuickSet-enabled device.  *Id*.  UEI also sells its UE878 chip for incorporation into its customer's universal remote controls which are then imported into the United States.  Exs. 88, 89.

23.     On information and belief, UEI designs, develops, manufactures (or has manufactured on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States the UEI Accused Products (as further described below) that infringe the Asserted Patents.

### 2.  LG

24.     On information and belief, **LG Electronics Inc.** is a South Korean corporation with a principal place of business at LG Twin Tower 128, Yeoui-daero, Yeongdeungpo-gu, Seoul,

Korea 07336.  On information and belief, LG Electronics Inc. manufactures televisions in Korea and then imports and/or sells the televisions for importation into the United States.  Ex. 90.

25.     On information and belief, **LG Electronics USA, Inc.**, a Delaware corporation with a principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, United States.  On information and belief, LG Electronics USA, Inc. imports into the United States and/or sells after importation a variety of consumer electronics devices including televisions.  Ex. 91.

26.     On information and belief, LG Electronics USA, Inc. is a wholly owned subsidiary of LG Electronics Inc.  LG Electronics Inc. and LG Electronics USA, Inc. are collectively referred to as "LG."

27.     On information and belief, LG designs, develops, manufactures, imports, and sells a variety of consumer electronics products, including televisions that incorporate UEI's QuickSet technology.

28.     On information and belief, LG designs, develops, manufactures (or has manufactured on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States the LG Accused Products (as further described below) that infringe the '511 patent.

### 3.  Samsung

29.     On information and belief, **Samsung Electronics Co., Ltd.** is a corporation organized and existing under the laws of Korea with its principal place of business at 129, Samsung-Ro, Maetan-Dong, Yeongtong-Gu, Suwon-Si, Gyeonggi-do, 16677, Republic of Korea.  On information and belief, Samsung Electronics Co., Ltd. manufactures televisions in Korea and then imports and/or sells the televisions for importation into the United States.  Ex. 92.

30.     On information and belief, **Samsung Electronics America, Inc.** is a corporation organized and existing under the laws of the state of New York, having its principal place of

7

business at 85 Challenger Rd., Ridgefield Park, New Jersey 07660.  On information and belief, Samsung Electronics America, Inc. imports into the United States and/or sells after importation a variety of consumer electronics devices including televisions. Ex. 93.

31.     On information and belief, Samsung Electronics America, Inc. is a wholly-owned subsidiary of Samsung Electronics Co., Ltd.  Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. are collectively referred to as "Samsung."

32.     On information and belief, Samsung designs, develops, manufactures, imports, and/or sells a variety of consumer electronics equipment and products, including televisions that incorporate UEI's QuickSet technology, as well as remote controls that include UEI's UE878 chip (UEI's Multi-protocol QuickSet Certified chip platform). Exs. 88, 89.

33.     On information and belief, Samsung designs, develops, manufactures (or has manufactured on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States the Samsung Accused Products (as further described below) that infringe the '511 patent.

### 4.  Charter

34.     On information and belief, **Charter Communications, Inc.** is a Delaware corporation with its principal place of business at 400 Atlantic Street, Stamford, Connecticut 06901.  On information and belief, Charter Communications, Inc. is a broadband and cable operator that provides television services to subscribers in various states throughout the United States under the Spectrum brand.  Ex. 94.  On information and belief, Charter Communications, Inc. imports and/or sells after importation remote controls to its subscribers.

35.     On information and belief, **Charter Communications Operating, LLC** is a Delaware company with its principal place of business at 12405 Powerscourt Drive, St. Louis, Missouri 63131.  On information and belief, Charter Communications Operating, LLC participates

8

with Charter Communications, Inc. in the management and operation of Charter's cable systems, including in the importation and/or sale after importation of accused remote controls to Charter's subscribers.  Exhibit 95 at F-8.

36.     On information and belief, **Spectrum Management Holding Company, LLC** is a Delaware company with its principal place of business at 400 Atlantic Street, Stamford, Connecticut 06901.  On information and belief, Spectrum Management Holding Company, LLC participates with Charter Communications, Inc. in the management and operation of Charter's cable systems, including in the importation and/or sale after importation of accused remote controls to Charter's subscribers.  Exhibit 95 at F-38.

37.     On information and belief, Charter Communications Operating, LLC and Spectrum Management Holding Company, LLC are subsidiaries of Charter Communications, Inc.  Charter Communications, Inc. and its subsidiaries are collectively referred to as "Charter."

38.     On information and belief, Charter designs, develops, manufactures (or has manufactured on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States the Charter Accused Products (as further described below) that infringe the '875 patent.

### 5.  Altice

39.     On information and belief, **Altice USA, Inc.** is a Delaware corporation with its principal place of business at One Court Square West, Long Island City, New York 11101.  On information and belief, Altice is a broadband and cable operator that provides television services to subscribers in various states throughout the United States under the Optimum and Suddenlink brands.  Ex. 96, 97.  On information and belief, Altice USA, Inc. imports and/or sells after importation remote controls to its subscribers.

9

40.     On information and belief, **Cablevision Systems Corp.** is a Delaware corporation with its principal place of business at 1111 Stewart Ave., Bethpage, New York 11714-3533. On information and belief, Cablevision Systems Corp. together with Altice USA, Inc. provide broadband communications and video services in the United States and participate in the importation and/or sale after importation of accused remote controls to their subscribers.  Ex. 98 at 49.

41.     On information and belief, **Cequel Communications, LLC d/b/a Suddenlink Communications** is a Delaware company with its principal place of business at 1 Court Square West, Long Island City, New York 11101.  On information and belief, Cequel Communications, LLC d/b/a Suddenlink Communications together with Altice USA, Inc. provide broadband communications and video services in the United States and participate in the importation and/or sale after importation of remote controls to their subscribers.  Ex. 98 at 49.

42.     On information and belief, Cablevision Systems Corp., and Cequel Communications, LLC d/b/a Suddenlink Communications are subsidiaries of Altice USA Inc. Altice USA Inc. and its subsidiaries are collectively referred to as "Altice."

43.     On information and belief, Altice designs, develops, manufactures (or has manufactured on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States the Altice Accused Products (as further described below) that infringe the '875 patent.

### 6.  WOW

44.     On information and belief, **Wideopenwest, Inc. ("WOW")** is a Delaware corporation with its principal place of business at 7887 E. Belleview Ave., Ste. 1000, Englewood, Colorado 80111.

45.     On information and belief, WOW is a broadband and cable operator that provides television services to subscribers in various states in the United States. Ex. 99 at 3.

46.     On information and belief, WOW designs, develops, manufactures (or has manufactured on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States the WOW Accused Products (as further described below) that infringe the '875 patent.

## III.     THE ACCUSED PRODUCTS AT ISSUE

47.     Pursuant to 19 C.F.R. § 210.12(a)(12), the Accused Products include televisions, remote controls and components thereof.

### A.     The UEI Accused Products

48.     The UEI Accused Products that infringe one or more of the Asserted Patents include but are not limited to the following UEI remote controls:

| U.S. Patent No. | Asserted Claims | The UEI Accused Products |
|---|---|---|
| 8,378,875 | 1-5, 8-11, 14 | <ul><li>URC 6420 OFA Simple 2</li><li>URC 7140 OFA Essence 4</li><li>URC 8200 Slate</li><li>Videotron Illico Remote</li></ul> |
| 8,378,875 | 1-5, 8, 10-11, 14 | <ul><li>URC 6820 OFA Zapper+</li><li>URC 7115 OFA Evolve TV</li><li>URC 7125 OFA Evolve 2</li><li>URC 7145 OFA Evolve 4</li><li>URC 7880 OFA Smart Control 8 (US)</li><li>URC 7980 OFA Smart Control 8</li><li>URC 7935 OFA Streamer Remote</li><li>URC 7955 OFA Smart Control 5</li></ul> |
| 8,378,875 | 1-4, 8-11, 14 | <ul><li>URC 6410 OFA Simple TV</li></ul> |
| 8,378,875 | 1-5, 8-10, 14 | <ul><li>URC 2020BC2 Champ</li><li>URC 2020B0 Champ</li><li>URC 2025B1 Champion</li></ul> |

| U.S. Patent No. | Asserted Claims | The UEI Accused Products |
|---|---|---|
| | | • URC 2025B2 Champion<br>• URC 2025B1-BB Eclypse<br>• URC 2025B2-BB Eclypse<br>• URC 2060 Charter<br>• URC 2060B0 Royal<br>• URC 2068 Pulse RF<br>• URC 2069 Pulse IR<br>• URC 2125 Champion Plus<br>• URC 2125 Rogers<br>• URC 2135 Experience<br>• URC 2135 UEI WOW! Experience Remote<br>• URC 2464 Optimum<br>• URC 6800 Proton<br>• URC 6810 Neutron<br>• URC 7110 OFA Essence TV<br>• URC 7120 OFA Essence 2<br>• URC 7130 OFA Essence 3<br>• URC 8820 Cox |
| 8,378,875 | 1-5, 8, 10, 14 | • URC 1160 Charter Spectrum |
| 8,378,875 | 1-4, 8-10, 14 | • URC 2220 Cox Mini IR<br>• URC 3220 Cox Mini RF |
| 8,378,875 | 1-4, 8, 10, 14 | • URC 1035 Universal A/C Remote |

**Table 2**

49.    For example, exemplary infringing UEI products are shown below:



Exs. 6-9.

## B.      The LG Accused Products

50.      The LG Accused Products that infringe one or more of the Asserted Patents include but are not limited to the following television models that incorporate UEI's QuickSet technology and their associated remote controls:

| U.S. Patent No. | Asserted Claims | The LG Accused Products |
|---|---|---|
| 7,388,511 | 5 | • **NanoCell TVs**<br>  o LG NanoCell 80 Series 2020<br>  o LG NanoCell 81 Series 2020<br>  o LG NanoCell 85 Series 2020<br>  o LG NanoCell 90 Series 2020<br>  o LG NanoCell 91 Series 2020<br>  o LG NanoCell 99 Series 2020<br>  o LG NanoCell 75 Series 2021<br>  o LG NanoCell 90 Series 2021<br>  o LG NanoCell 99 Series 2021<br>  o LG NanoCell 81 Series 4K<br>  o LG NanoCell 86 Series 4K<br>  o LG NanoCell 90 Series 4K<br>  o LG NanoCell 95 Series 4K<br>  o LG NanoCell 97 Series<br>  o LG NanoCell 99 Series 8K<br>  o LG QNED MiniLED 90 Series 2021<br>  o LG QNED MiniLED 99 Series 2021<br><br>• **4K OLED TVs**:<br>  o LG B9 4K Smart OLED TV<br>  o LG BX 4K Smart OLED TV<br>  o LG C1 4K Smart OLED TV<br>  o LG C9 4K Smart OLED TV<br>  o LG CX 4K Smart OLED TV<br>  o LG E9 Glass 4K Smart OLED TV<br>  o LG G1 4K Smart OLED TV<br>  o LG GX 4K Smart OLED TV<br>  o LG WX 4K Smart OLED TV<br>  o LG SIGNATURE W9 Wallpaper 4K Smart OLED TV<br>  o LG SIGNATURE OLED TV RX<br><br>• **4K UHD TVs**<br>  o LG Class 4K Smart UHD TV |

| U.S. Patent No. | Asserted Claims | The LG Accused Products |
|---|---|---|
| | | o  LG UHD 70 Series 4K HDR Smart LED TV<br>o  LG UHD 73 Series 4K HDR Smart LED TV<br>o  LG UHD 85 Series 4K HDR Smart LED TV<br>o  LG UN 4K Smart UHD TV<br>o  LG Class 4K HDR Smart LED TV<br>o  4K HDR Smart LED TV<br>o  4K HDR Smart LED UHD TV (at least including UK6090PUA and UK6300PUE)<br><br>• **8K OLED TVs**<br>o  LG SIGNATURE ZX 8K Smart OLED TV<br>o  LG SIGNATURE Z9 8K Smart OLED TV |

**Table 3**

51.    For example, the LG NanoCell 81 Series 2020 Smart TV (Model number: 55NANO81ANA), which includes UEI's QuickSet technology, is shown below:



Exs. 10-11.

### C.    The Samsung Accused Products

52.    The Samsung Accused Products that infringe one or more of the Asserted Patents include but are not limited to the following television models that incorporate UEI's QuickSet technology and their associated remote controls that may include UEI's UE878 chip.

| U.S. Patent No. | Asserted Claims | The Samsung Accused Products |
|---|---|---|
| 7,388,511 | 5 | • **8K QLED Series**<br>   ○ QN800A<br>   ○ QN900A<br>   ○ Q800T<br>   ○ Q900<br>   ○ Q900TS<br>   ○ Q950TS<br><br>• **4K QLED Series**<br>   ○ Q60A<br>   ○ Q70A<br>   ○ Q80A<br>   ○ QN85A<br>   ○ QN90A<br>   ○ Q60T<br>   ○ Q70T<br>   ○ Q80T<br>   ○ Q90T<br>   ○ Q50R<br>   ○ Q60R<br>   ○ Q80R<br>   ○ Q6DT<br>   ○ Q8DT<br>   ○ Q6F<br>   ○ The Frame QLED 4K<br>   ○ The Terrace QLED 4K<br>   ○ The Serif QLED 4K<br><br>• **6000 Series**<br>   ○ HU6840<br>   ○ JU6000<br>   ○ JU6500<br>   ○ KU6300<br>   ○ MU6070<br>   ○ MU6290<br>   ○ MU6300<br>   ○ NU6080<br>   ○ NU6900<br>   ○ TU6950<br>   ○ TU6980<br>   ○ EH6000<br>   ○ F6300<br>   ○ F6400<br>   ○ H6350 |

| U.S. Patent No. | Asserted Claims | The Samsung Accused Products |
|---|---|---|
| | | ○ K6500<br><br>• **7000 Series**<br>   ○ KU7000<br>   ○ MU7500<br>   ○ NU7100<br>   ○ RU7100<br>   ○ RU7300<br>   ○ TU7000<br>   ○ TU700D<br><br>• **8000 Series**<br>   ○ MU8000<br>   ○ MU8500<br>   ○ NU8500<br>   ○ RU8000<br>   ○ TU8000<br>   ○ TU8200<br>   ○ TU8300<br>   ○ TU800D<br><br>• **9000 Series**<br>   ○ RU9000<br>   ○ TU9000 |

**Table 4**

53.　　For example, the Samsung QN55Q70TAFXZA Smart TV, which includes UEI's QuickSet technology, is shown below:



Exs. 12-13.

### D.    The Charter Accused Products

54.    The Charter Accused Products that infringe one or more of the Asserted Patents

include, but are not limited to the following remote controls:

| U.S. Patent No. | Asserted Claims | The Charter Accused Products |
|---|---|---|
| 8,378,875 | 1-5, 8-10, 14 | • URC 2060<br>• URC 2068 Pulse RF<br>• URC 2069 Pulse IR<br>• URC 2464 |
| 8,378,875 | 1-5, 8, 10, 14 | • SR-002-R (Charter Spectrum URC 1160) |

**Table 5**

55.    For example, the SR-002-R (Charter Spectrum URC 1160) is shown below:



**Charter Spectrum
URC1160**

Exs. 6-7, 14.

E.     **The Altice Accused Products**

56.    The Altice Accused Products that infringe one or more of the Asserted Patents include, but are not limited to the following remote controls:

| U.S. Patent No. | Asserted Claims | The Altice Accused Products |
|---|---|---|
| 8,378,875 | 1-5, 8-10, 14 | • URC 2068 Pulse RF<br>• URC 2069 Pulse IR<br>• Optimum Silver with "O" Button Remote (URC 2464) |

**Table 6**

57.    For example, the Optimum URC 2464 is shown below:



**Optimum URC2464**

Exs. 6, 8, 15.

      **F.**    **The WOW Accused Products**

      58.    The WOW Accused Products that infringe one or more of the Asserted Patents include, but are not limited to the following remote controls:

| U.S. Patent No. | Asserted Claims | The WOW Accused Products |
|---|---|---|
| 8,378,875 | 1-5, 8-10, 14 | • WOW! Experience Remote (URC 2135) |

**Table 7**

      59.    For example, the WOW! Experience Remote (URC 2135) is shown below:



**WOW! Experience Remote**

Exs. 6, 9, 16.

60.      This identification of exemplary Accused Products above for each of the Proposed Respondents is intended for illustration and is not intended to limit the scope of the investigation. Any remedy should extend to all present and future infringing products made by Proposed Respondents.

61.      Without discovery, Roku cannot exhaustively identify all devices imported and/or sold within the United States after importation that infringe or are used to infringe the Asserted Patents.  Roku reserves its right to supplement its allegations, to further amend this Complaint, and to add respondents and accused products in the future if necessary.

## IV.    THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE INVENTIONS[2]

### A.    U.S. Patent No. 8,378,875

62.      United States Patent No. 8,378,875 is entitled "Method of programming a universal remote control" and issued on February 19, 2013.  The named inventors are Michael Walter Paul D'Hoore, Juergen Forscht, and Rogier Louis Jacques Willem Thissen.  The '875 patent expires on December 11, 2029, and is based on PCT Application No. PCT/B2007/050714, filed on March 5, 2007, and claims priority to European Patent Application No. 06111201, filed on March 15, 2006.

63.      The '875 patent has five (5) independent claims and ten (10) dependent claims.

---

[2] The non-technical descriptions of the inventions are presented for the purpose of providing a general background regarding the inventions.  The non-technical descriptions are not intended to set forth, and should not be understood as setting forth, any position regarding claim construction or any other substantive aspects of patent law concerning the Asserted Patents.

64.     Roku owns, by assignment, all right, title, and interest in and to the '875 patent. Copies of the recorded assignment documents related to the '875 patent accompany this Complaint as Exhibit 3.

65.     A copy of the '875 patent is being submitted with this Complaint as Exhibit 1.[3]   A copy of the U.S. Patent and Trademark Office file history for the '875 patent is being submitted with this Complaint as Appendix A, and a copy of the patents and applicable pages of each technical reference mentioned in the file history are being submitted with this Complaint as Appendix B.

66.     Per 19 C.F.R. § 210.12(a)(9)(vi), the following is a nontechnical description of the patented technology of the '875 patent.  Consumer electronics devices from different manufactures typically use different codesets for enabling a remote control to control their functional operations. Universal remote controls were developed in order to allow a single remote control to control devices from multiple manufacturers.   Such universal remote controls frequently contain a database of infrared codesets for use in controlling devices from different manufacturers. However, given the large number of codesets stored in the database, one problem is enabling the user to quickly and easily select the correct codeset for use in controlling a particular device. Finding the correct codeset can be difficult because of the large number of possible codesets.  The prior art methods for setting up a universal remote control all had drawbacks, such as being tedious to enter the necessary codeset information, taking a long time to find a working codeset, and/or consuming a lot of storage space.

---

[3] To the extent uncertified copies of the Asserted Patents, their assignments, and/or their prosecution histories are not submitted with the Complaint, they have been ordered and will be filed as soon as they are available.

67.     The '875 patent is generally directed to an improved universal remote control and method of setting up a universal remote control.  The improved method includes the steps of entering a configuration mode, accepting an identifier entry, and scanning though remote control codesets.  The step of scanning comprises:  in case that the identifier entry is a brand-identifier, iterating through the remote control code sets corresponding to the brand and testing the remote control codesets, and in case that the identifier-entry is a codeset-identifier, testing the remote control codeset corresponding to the codeset-identifier.

**B.      U.S. Patent No. 7,388,511**

68.     United States Patent No. 7,388,511 is entitled "System for Remote Control of Identical Devices" and issued on June 17, 2008.  The named inventor is Frank Amand.  The '511 patent expires on June 21, 2023, and is based on PCT Application No. PCT/BO2/04604, filed on October 31, 2002, and claims priority to European Patent Application No. 01204612, filed on November 29, 2001.

69.     The '511 patent has six (6) independent claims.

70.     Roku owns, by assignment, all right, title, and interest in and to the '511 patent. Copies of the recorded assignment documents related to the '511 patent accompany this Complaint as Exhibit 4.

71.     A copy of the '511 patent is being submitted with this Complaint as Exhibit 2.  A copy of the U.S. Patent and Trademark Office file history for the '511 patent is being submitted with this Complaint as Appendix C, and a copy of the patents and applicable pages of each technical reference mentioned in the file history are being submitted with this Complaint as Appendix D.

72.     Per 19 C.F.R. § 210.12(a)(9)(vi), the following is a nontechnical description of the patented technology of the '511 patent.  Many consumer electronics products, such as televisions

and videocassette recorders (VCRs) can be controlled by a remote control device.  However, many devices, particularly those from the same manufacturer, use the same or overlapping remote control codes.  As such, a consumer may have two or more controllable devices in their home entertainment system that will respond to the same signal from the remote control.  As a result, if the two controllable devices are situated fairly close to each other, a signal from the remote control device may cause both devices to respond even though the user was intending to control only one of the devices.  The '511 patent is generally directed to a system that allows the remote control signal to operate only the intended device by use of a coding device that adds a device identifier to the user command.  When the controllable devices receive a control signal, each device examines the device identifier in the control signal to determine if the command is addressed to it, and will respond to the command only if the identifier matches its own identifier.

### C.      Foreign Counterparts of the Asserted Patents

73.      A table identifying the foreign patents and applications corresponding to the Asserted Patents is included as Exhibit 17.  To the best of Roku's knowledge, information, and belief, there is no other foreign patent issued or foreign patent application pending, filed, abandoned, withdrawn, or rejected corresponding to the Asserted Patents.

### D.      Licensees Under the Asserted Patents

74.      To the extent known to Roku, a list of licensees under the Asserted Patents is provided in Confidential Exhibit 18C.

## V.      UNLAWFUL AND UNFAIR ACT OF THE PROPOSED RESPONDENTS

75.      The Proposed Respondents have engaged in unfair trade practices, including the sale for importation, importation, and sale after importation of certain televisions, remote controls, and components thereof that infringe the asserted claims of the Asserted Patents.  More specifically, the Proposed Respondents, directly and/or indirectly, literally and/or under the

doctrine of equivalents, infringe one or more of the Asserted Patents with the Accused Products that are manufactured and/or assembled outside the United States, sold for importation into United States, imported into the United States, and/or sold after importation in the United States. These activities by the Proposed Respondents constitute a violation of Section 337.

76.     The Proposed Respondents have knowledge of the Asserted Patents and their infringing activity based at least on the public filing of this Complaint and receipt of a copy of this Complaint by the Proposed Respondents.   The receipt of this Complaint by the Proposed Respondents provides them with knowledge of the Asserted Patents and their infringing acts so that continuing acts by the Proposed Respondents demonstrates an intent to induce others to infringe the Asserted Patents.

77.     At a minimum, together with the service of this Complaint, the Notice of Investigation that will be published by the Commission in the Federal Register (should the Commission institute an investigation) will serve as notice to the Proposed Respondents of the Asserted Patents and the Proposed Respondents' infringing activities.

78.     Additionally, UEI has knowledge of the Asserted Patents and its infringing activity by way of service of the district court complaint in the companion litigation which asserts the same Asserted Patents and which demonstrates UEI's infringement in connection with the Accused Products.

A.      **Infringement of U.S. Patent No. 8,378,875**

1.      **UEI's Infringement of the '875 Patent**

79.     On information and belief, UEI directly and/or indirectly infringes claims 1-5, 8-11 and 14 of the '875 patent, literally and/or under the doctrine of equivalents.

80.     For example, exemplary claim charts applying independent claims 1, 10, 11 and 14 of the '875 patent to the UEI Accused Products are attached as Exhibits 19-22.  Exhibits 19-22

show that the UEI Accused Products infringe at least these claims.  Exhibits 19-22 show that UEI directly infringes the '875 patent claims.  Exhibits 19-22 also show that UEI indirectly infringes the '875 patent claims by inducing and/or contributing to UEI's customers' and/or end users' direct infringement of the '875 patent claims.

81.   UEI directly infringes the apparatus claims by making, using, offering to sell, selling within the United States, and/or importing into the United States the UEI Accused Products. UEI directly infringes the method claims by using the UEI Accused Products in an infringing manner within the United States, including in testing and demonstrating the UEI Accused Products.

82.   UEI has induced, and continues to induce UEI's customers and/or end users to infringe the asserted claims.  UEI has taken active steps to encourage and facilitate direct infringement by UEI's customers and/or end users of the UEI Accused Products, with knowledge of that infringement, such as providing the UEI Accused Products, contracting for the distribution of the UEI Accused Products, by marketing the UEI Accused Products, and by creating and/or distributing user manuals, web pages, marketing materials, and/or similar materials with instructions on using the UEI Accused Products in an infringing manner. The use of the UEI Accused Products in accordance with UEI's instructions results in infringement of the asserted claims.

83.   UEI has also contributorily infringed, and continues to contributorily infringe, the asserted claims by offering to sell, selling, and importing into the United States the UEI Accused Products that perform the claimed methods for setting up a remote control, knowing that the UEI Accused Products are especially made for use in infringing the '875 patent, and are not staple articles of commerce suitable for a substantial non-infringing use.  In particular, the UEI Accused

Products are remote controls that need to be set up by the user in order to be operable to control the target devices.  The UEI Accused Products contain components, including executable code, that specifically implement the claimed methods for setting up the remote controls.  Indeed, these components are especially built to perform the accused functionalities.

### 2. Charter's Infringement of the '875 Patent

84.     On information and belief, one or more of the Charter Accused Products directly and/or indirectly infringes claims 1-5, 8-10, and 14 of the '875 patent, literally and/or under the doctrine of equivalents.

85.     For example, a claim chart applying independent claims 1, 10, and 14 of the '875 patent to the Charter Accused Products is attached as Exhibit 20.  Exhibit 20 shows that the Charter Accused Products infringe at least these claims.  Exhibit 20 shows that Charter directly infringes the '875 patent claims.  Exhibit 20 also shows that Charter indirectly infringes the '875 patent claims by inducing and/or contributing to Charter's customers' and/or end users' direct infringement of the '875 patent claims.

86.     Charter directly infringes the apparatus claims by making, using, offering to sell, selling within the United States, and/or importing into the United States the Charter Accused Products.  Charter directly infringes the method claims by using the Charter Accused Products in an infringing manner within the United States, including in testing and demonstrating the Charter Accused Products.

87.     Charter has induced, and continues to induce Charter's customers and/or end users to infringe the asserted claims.  Charter has taken active steps to encourage and facilitate direct infringement by Charter's customers and/or end users of the Charter Accused Products, with knowledge of that infringement, such as providing the Charter Accused Products, contracting for the distribution of the Charter Accused Products, by marketing the Charter Accused Products, and

by creating and/or distributing user manuals, web pages, marketing materials, and/or similar materials with instructions on using the Charter Accused Products in an infringing manner. The use of the Charter Accused Products in accordance with Charter's instructions results in infringement of the asserted claims.

88.     Charter has also contributorily infringed, and continues to contributorily infringe, the asserted claims by offering to sell, selling, and importing into the United States the Charter Accused Products that perform the claimed methods for setting up a remote control, knowing that the Charter Accused Products are especially made for use in infringing the '875 patent, and are not staple articles of commerce suitable for a substantial non-infringing use.  In particular, the Charter Accused Products are remote controls that need to be set up by the user in order to be operable to control the target devices.  The Charter Accused Products contain components, including executable code that specifically implement the claimed methods for setting up the remote controls.  Indeed, these components are especially built to perform the accused functionalities.

89.     On information and belief, Charter sells or leases the Charter Accused Products to its subscribers.  Ex. 14.  On information and belief, Charter also provides replacement remote controls and may charge a fee.  Ex. 23.

### 3.  Altice's Infringement of the '875 Patent

90.     On information and belief, Altice directly and/or indirectly infringes claims 1-5, 8-10, and 14 of the '875 patent, literally and/or under the doctrine of equivalents.

91.     For example, a claim chart applying independent claims 1, 10, and 14 of the '875 patent to the Altice Accused Products is attached as Exhibit 21.  Exhibit 21 shows that the Altice Accused Products infringe at least these claims.  Exhibit 21 shows that Altice directly infringes the '875 patent claims.  Exhibit 21 also shows that Altice indirectly infringes the '875 patent claims

by inducing and/or contributing to Altice's customers' and/or end users' direct infringement of the '875 patent claims.

92.   Altice directly infringes the apparatus claims by making, using, offering to sell, selling within the United States and/or importing into the United States the Altice Accused Products. Altice directly infringes the method claims by using the Altice Accused Products in an infringing manner within the United States, including in testing, and demonstrating the Altice Accused Products.

93.   Altice has induced, and continues to induce Altice's customers and/or end users to infringe the asserted claims.   Altice has taken active steps to encourage and facilitate direct infringement by Altice's customers and/or end users of the Altice Accused Products, with knowledge of that infringement, such as providing the Altice Accused Products, by contracting for the distribution of the Altice Accused Products, by marketing the Altice Accused Products, and by creating and/or distributing user manuals, web pages, marketing materials, and/or similar materials with instructions on using the Altice Accused Products in an infringing manner. The use of the Altice Accused Products in accordance with Altice's instructions results in infringement of the asserted claims.

94.   Altice has also contributorily infringed, and continues to contributorily infringe, the asserted claims by offering to sell, selling, and importing into the United States the Altice Accused Products that perform the claimed methods for setting up a remote control, knowing that the Altice Accused Products are especially made for use in infringing the '875 patent, and are not staple articles of commerce suitable for a substantial non-infringing use.   In particular, the Altice Accused Products are remote controls that need to be set up by the user in order to be operable to control the target devices.   The Altice Accused Products contain components, including executable code

that specifically implement the claimed methods for setting up the remote controls. Indeed, these components are especially built to perform the accused functionalities.

95. On information and belief, Altice sells or leases the Altice Accused Products to its subscribers. Ex. 15. On information and belief, Altice also provides replacement remote controls for a fee. Ex. 24.

### 4. WOW's Infringement of the '875 Patent

96. On information and belief, WOW directly and/or indirectly infringes claims 1-5, 8-10, and 14 of the '875 patent, literally and/or under the doctrine of equivalents.

97. For example, a claim chart applying independent claims 1, 10, and 14 of the '875 patent to the WOW Accused Products is attached as Exhibit 22. Exhibit 22 shows that the WOW Accused Products infringe at least these claims. Exhibit 22 shows that WOW directly infringes the '875 patent claims. Exhibit 22 also shows that WOW indirectly infringes the '875 patent claims by inducing and/or contributing to WOW's customers' and/or end users' direct infringement of the '875 patent.

98. WOW directly infringes the apparatus claims by making, using, offering to sell, selling within the United States and/or importing into the United States the WOW Accused Products. WOW directly infringes the method claims by using the WOW Accused Products in an infringing manner within the United States, including in testing, and demonstrating the WOW Accused Products.

99. WOW has induced, and continues to induce WOW's customers and/or end users to infringe the asserted claims. WOW has taken active steps to encourage and facilitate direct infringement by WOW's customers and/or end users of the WOW Accused Products, with knowledge of that infringement, such as providing the WOW Accused Products, by contracting for the distribution of the WOW Accused Products, by marketing the WOW Accused Products,

and by creating and/or distributing user manuals, web pages, marketing materials, and/or similar materials with instructions on using the WOW Accused Products in an infringing manner. The use of the WOW Accused Products in accordance with WOW's instructions results in infringement of the asserted claims.

100.    WOW has also contributorily infringed, and continues to contributorily infringe, the asserted claims by offering to sell, selling, and importing into the United States the WOW Accused Products that perform the claimed methods for setting up a remote control, knowing that the WOW Accused Products are especially made for use in infringing the '875 patent, and are not staple articles of commerce suitable for a substantial non-infringing use.  In particular, the WOW Accused Products are remote controls that need to be set up by the user in order to be operable to control the target devices.   The WOW Accused Products contain components, including executable code, that specifically implement the claimed methods for setting up the remote controls.  Indeed, these components are especially built to perform the accused functionalities.

101.    On information and belief, WOW sells or leases the WOW Accused Products to its subscribers.  Ex. 16.  WOW also provides replacement remote controls for a fee.  Ex. 25.

**B.      Infringement of U.S. Patent No. 7,388,511**

**1.      UEI's Infringement of the '511 Patent**

102.    On information and belief, UEI directly and/or indirectly infringes claim 5 of the '511 patent, literally and/or under the doctrine of equivalents.  For example, claim charts applying independent claim 5 of the '511 patent to a representative LG Accused Product and a representative Samsung Accused Product are attached as Exhibits 26 and 27.

103.    On information and belief, UEI directly infringes claim 5 of the '511 patent at least when UEI or those acting on UEI's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, perform the claimed method during product testing or

demonstration of the LG Accused Products and Samsung Accused Products as shown in Exhibits 26 and 27.

104.    On information and belief, UEI also indirectly infringes claim 5 of the '511 patent by inducing LG and Samsung, as well as the customers and end users of the LG Accused Products and the Samsung Accused Products, to directly infringe as shown in Exhibits 26 and 27.  UEI has taken and continues to take active steps to encourage and facilitate direct infringement by LG, Samsung, and the customers and end users of the LG Accused Products and Samsung Accused Products, with knowledge of that infringement.  UEI has and continues to encourage, instruct, assist and aid LG and Samsung to incorporate UEI's QuickSet technology into the LG Accused Products and Samsung Accused Products to enable those products to perform the claimed method by enabling the connection and control of attached devices, controlling whether user commands from the remote control are sent to attached devices via IR from the remote control or via HDMI-CEC from the LG Accused Products and Samsung Accused Products, and by enabling the LG Accused Products and Samsung Accused Products to perform the function of the claimed coding device by receiving user commands from the remote control and adding a device identifier to user commands.    On information and belief, UEI has and continues to encourage, instruct, assist and aid Samsung to incorporate UEI's UE878 chip (UEI's Multi-protocol QuickSet Certified chip platform) into Samsung's remote controls for Samsung Accused Products to enable those remote controls to communicate with and control the attached devices with knowledge that the remote controls containing the UE878 chip will be imported into the United States.  Exs. 87, 88. On information and belief, UEI also provides support to Samsung for remote controls containing the UE878 chip after they are imported into the United States.

105.    On information and belief, UEI's QuickSet technology is responsible for determining whether an attached device should be controlled by IR commands sent from the remote control to the device, or alternately by HDMI-CEC commands sent from the LG Accused Products and Samsung Accused Products to the device.   UEI's QuickSet technology is also responsible for configuring the LG Accused Products and Samsung Accused Products and their associated remote controls to transmit user commands to control the attached devices using either IR or HDMI-CEC.   When UEI's QuickSet technology configures the LG Accused Products and Samsung Accused Products to use IR commands to control an attached device, UEI's QuickSet technology is responsible for determining the appropriate IR codeset to use for controlling that device and programming the remote control to use that IR codeset.   When UEI's QuickSet technology configures the LG Accused Products and Samsung Accused Products to use HDMI-CEC commands to control an attached device, UEI's QuickSet technology is responsible for receiving user commands from the remote control, causing the addition of a device identifier to the user commands, and causing the transmission of the user commands with the device identifier to the attached devices using HDMI-CEC.

106.    On information and belief, UEI also induces infringement by LG and Samsung by creating and distributing software development kits, user manuals, white papers, datasheets, marketing materials, and similar documentation and materials with instructions on incorporating and using UEI's QuickSet technology in the LG Accused Products and Samsung Accused Products.   The use of UEI's QuickSet technology in the LG Accused Products and Samsung Accused Products in the intended fashion with various external devices results in infringement of the asserted claim.

107.    On information and belief, UEI also induces infringement by LG and Samsung and their respective customers and end users by operating the QuickSet Cloud service and providing cloud transactions via QuickSet Cloud that enable the LG Accused Products and Samsung Accused Products to perform the claimed method.  Moreover, in providing these cloud transactions, UEI has knowledge that it is facilitating the configuration of the LG Accused Products and Samsung Accused Products to control like controllable devices in an infringing manner.

108.    On information and belief, UEI also induces customers and end users of LG Accused Products and Samsung Accused Products to directly infringe by encouraging, instructing, assisting, and aiding those customer and end users to connect external devices to LG Accused Products and Samsung Accused Products and to configure those products to control such external devices either via IR or HDMI-CEC.  For example, on information and belief, UEI's contributes to the user interface instructions that are displayed to the user to enable the connection and configuration of the LG Accused Products and Samsung Accused Products to control external devices, and UEI operates its QuickSet Cloud service that provides configuration data to the LG Accused Products and Samsung Accused Products during the setup process to enable the user to configure the LG Accused Products and Samsung Accused Products to control the external devices in an infringing manner.

109.    Additionally, on information and belief, UEI and LG jointly induce infringement by end users of the LG Accused Products.  On information and belief, UEI and LG work together to design, develop, and integrate the QuickSet technology into the LG Accused Products.  On information and belief, UEI and LG also collaborate in the development of the user interface instructions, user manuals, and other documentation that encourage and instruct users to connect

external devices and configure the LG Accused Products to control those devices in an infringing manner.

110.    Additionally, on information and belief, UEI and Samsung jointly induce infringement by end users of the Samsung Accused Products.  On information and belief, UEI and Samsung work together to design, develop, and integrate the QuickSet technology into the Samsung Accused Products.  On information and belief, UEI and Samsung also collaborate in the development of the user interface instructions, user manuals, and other documentation that encourage and instruct users to connect external devices and configure the Samsung Accused Products to control those devices in an infringing manner.

### 2.  LG's Infringement of the '511 Patent

111.    On information and belief, LG directly and/or indirectly infringes claim 5 of the '511 patent, literally and/or under the doctrine of equivalents.  For example, claim charts applying independent claim 5 of the '511 patent to a representative LG Accused Product is attached as Exhibit 26.

112.    On information and belief, LG directly infringes claim 5 of the '511 patent at least when LG or those acting on LG's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, perform the claimed method during product testing or demonstration of the LG Accused Products as shown in Exhibit 26.

113.    On information and belief, LG also indirectly infringes claim 5 of the '511 patent by inducing the customers and end users of the LG Accused Products to directly infringe as shown in Exhibit 26.  LG has taken and continues to take active steps to encourage and facilitate direct infringement by LG's customers and end users of the LG Accused Products, with knowledge of that infringement.  For example, LG has and continues to encourage, instruct, assist and aid its customers and end users in practicing the claimed method by incorporating UEI's QuickSet

34

technology into the LG Accused Products to enable those products to perform the claimed method by enabling the connection and control of attached devices, controlling whether user commands from the remote control are sent to attached devices via IR from the remote control or via HDMI-CEC from the LG Accused Products, and by enabling the LG Accused Products to perform the function of the claimed coding device by receiving user commands from the remote control and adding a device identifier to user commands.  LG also induces infringement by incorporating on-screen instructions that are displayed to the user during setup operations that encourage the user to connect the LG Accused Products to external devices using an HDMI connection and to configure the LG Accused Products and their associated remote controls to control the attached devices using HDMI-CEC.  LG also induces infringement by selling the LG Accused Products that are designed and intended to connect to and control external devices in the claimed manner.  The use of the LG Accused Products containing UEI's QuickSet technology in their intended fashion with various external devices results in infringement of the asserted claim.

114.    On information and belief, LG also induces infringement by customers and end users of the LG Accused Products by enabling those products to connect to the QuickSet Cloud service and engaging in cloud transactions via QuickSet Cloud that enable the LG Accused Products to perform the claimed method.  Moreover, in engaging in these cloud transactions, LG has knowledge that it is facilitating the configuration of the LG Accused Products to control like controllable devices in an infringing manner.

115.    On information and belief, LG also induces infringement by creating and distributing user manuals, white papers, web pages, marketing materials, and/or similar materials with instructions on connecting the LG Accused Products to external devices using an HDMI

connection and configuring the LG Accused Products and their associated remote controls to control the attached devices using HDMI-CEC.

116.    Additionally, on information and belief, UEI and LG jointly induce infringement by end users of the LG Accused Products.  On information and belief, UEI and LG work together to design, develop, and integrate the QuickSet technology into the LG Accused Products.  On information and belief, UEI and LG also collaborate in the development of the user interface instructions, user manuals, and other documentation that encourage and instruct users to connect external devices and configure the LG Accused Products to control those devices in an infringing manner.

### 3.    Samsung's Infringement of the '511 Patent

117.    On information and belief, Samsung directly and/or indirectly infringes claim 5 of the '511 patent, literally and/or under the doctrine of equivalents.  For example, claim charts applying independent claim 5 of the '511 patent to a representative Samsung Accused Product is attached as Exhibit 27.

118.    On information and belief, Samsung directly infringes claim 5 of the '511 patent at least when Samsung or those acting on Samsung's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, perform the claimed method during product testing or demonstration of the Samsung Accused Products as shown in Exhibit 27.

119.    On information and belief, Samsung also indirectly infringes claim 5 of the '511 patent by inducing the customers and end users of the Samsung Accused Products to directly infringe as shown in Exhibit 27.  Samsung has taken and continues to take active steps to encourage and facilitate direct infringement by Samsung's customers and end users of the Samsung Accused Products, with knowledge of that infringement.  For example, Samsung has and continues to encourage, instruct, assist and aid its customers and end users in practicing the claimed method by

incorporating UEI's QuickSet technology into the Samsung Accused Products to enable those products to perform the claimed method by enabling the connection and control of attached devices, controlling whether user commands from the remote control are sent to attached devices via IR from the remote control or via HDMI-CEC from the Samsung Accused Products, and by enabling the Samsung Accused Products to perform the function of the claimed coding device by receiving user commands from the remote control and adding a device identifier to user commands.  Samsung also induces infringement by incorporating on-screen instructions that are displayed to the user during setup operations that encourage the user to connect the Samsung Accused Products to external devices using an HDMI connection and to configure the Samsung Accused Products and their associated remote controls to control the attached devices using HDMI-CEC.  Samsung also induces infringement by selling the Samsung Accused Products that are designed and intended to connect to and control external devices in the claimed manner.  The use of the Samsung Accused Products containing UEI's QuickSet technology in their intended fashion with various external devices results in infringement of the asserted claim.

120.    On information and belief, Samsung also induces infringement by customers and end users of the Samsung Accused Products by enabling those products to connect to the QuickSet Cloud service and engaging in cloud transactions via QuickSet Cloud that enable the Samsung Accused Products to perform the claimed method.  Moreover, in engaging in these cloud transactions, Samsung has knowledge that it is facilitating the configuration of the Samsung Accused Products to control like controllable devices in an infringing manner.

121.    On information and belief, Samsung also induces infringement by creating and distributing user manuals, white papers, web pages, marketing materials, and/or similar materials with instructions on connecting the Samsung Accused Products to external devices using an HDMI

connection and configuring the Samsung Accused Products and their associated remote controls to control the attached devices using HDMI-CEC.

122.     Additionally, on information and belief, UEI and Samsung jointly induce infringement by end users of the Samsung Accused Products.  On information and belief, UEI and Samsung work together to design, develop, and integrate the QuickSet technology into the Samsung Accused Products.  On information and belief, UEI and Samsung also collaborate in the development of the user interface instructions, user manuals, and other documentation that encourage and instruct users to connect external devices and configure the Samsung Accused Products to control those devices in an infringing manner.

## VI.     SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

123.     Proposed Respondents sell for importation into the United States, import into the United States, and/or sell within the United States after importation the Accused Products.

### A.     UEI

124.     On information and belief, the UEI Accused Products are manufactured abroad, sold for importation into the United States, imported into the United States, and/or sold after importation into the United States by UEI and/or its authorized agents.

125.     For example, Exhibit. 29C at § B contains a receipt from Walmart showing the purchase of a UEI URC 7935 OFA Streamer Remote product for delivery to an address in the United States.  Exs. 28, 29C.  Exhibit 30 contains photographs of the UEI URC 7935 OFA Streamer Remote product, product packaging and user manual that was included with the product. The back of the UEI URC 7935 OFA Streamer Remote product shows that it was "Made in China" and imported into the United States.  Ex. 30 at 23.  The UEI URC 7935 OFA Streamer Remote product package also shows that the product was "Imported into the US by: Universal Electronics Inc." Ex. 30 at 4.  The front page of the user manual for the UEI URC 7935 OFA Streamer Remote

product also shows that the product was made in China and imported into the United States.  Ex. 30 at 17.

126.    As an additional example, on information and belief, Exhibit 31 contains importation records from ImportGenius (https://www.importgenius.com/) showing that on March 18, 2021, UEI imported 4,457 remote controls, including UEI URC 7935 OFA Streamer Remote products.

127.    As an additional example, on information and belief, Exhibit 32 contains importation records from ImportGenius (https://www.importgenius.com/) showing that on February 2, 2021, Crane Worldwide Logistics imported 1,908 remote controls on behalf of UEI, including the UEI URC 7935 OFA Streamer Remote products.

128.    As an additional example, Exhibit 29C at § A contains a receipt from Amazon showing the purchase an SR-002-R (UEI URC 1160 Charter Spectrum) remote control for delivery to an address in the United States.  Exs. 28, 29C.  Exhibit 33 also contains photographs of the SR-002-R (UEI URC 1160 Charter Spectrum) product, product packaging and user manual that was included with the product.  The back of the UEI URC 1160 Charter Spectrum product shows that it was "Made in Philippines" and imported into the United States.  Ex. 33 at 7.

129.    As an additional example, Exhibit 34 contains internal and external pictures of UEI URC 1160 Charter Spectrum remote control.  The back of the UEI URC 1160 Charter Spectrum product shows that it was "Made in China" and imported into the United States.  Ex. 34 at 14.

130.    As an additional example, on information and belief, Exhibit 35 contains importation records from ImportGenius (https://www.importgenius.com/) showing that on July 18, 2020, UEI imported 2,160 cartons of UEI URC 1160 Charter Spectrum products.

131.    As an additional example, Exhibit 29C at § D contains a receipt from eBay showing the purchase of a UEI URC 2464 Optimum remote control for delivery to an address in the United States.  Exs. 28, 29C.  Exhibit 36 also contains photographs of the UEI URC 2464 Optimum product and product packaging.  The back of the UEI URC 2464 Optimum product shows that it was "Made in China" and imported into the United States.  Ex. 36 at 6.

132.    As an additional example, Exhibit 29C at § C contains a receipt from eBay showing the purchase of a UEI URC 2135 WOW! Experience remote control for delivery to an address in the United States.  Exs. 28, 29C.  Exhibit 37 also contains photographs of the UEI URC 2135 WOW! Experience product, product packaging and user manual that was included with the product.  Ex. 37.  The back of the UEI URC 2135 WOW! Experience product shows that it was "Made in China" and imported into the United States.  Ex. 37 at 11.

**B.    LG**

133.    On information and belief, the LG Accused Products are manufactured abroad, sold for importation into the United States, imported into the United States, and/or sold after importation into the United States by LG and/or its authorized agents.

134.    For example, Exhibit 29C at § E is a receipt from a Best Buy store in Frisco, Texas, showing the purchase of an LG ThinQ AI, Model No. 55NANO81ANA television.  Exs. 28, 29C. Exhibit 38 contains photographs of the product and product packaging indicating that the LG ThinQ AI, Model No. 55NANO81ANA television is "Assembled in Mexico" and imported into the United States.  Ex. 38 at 6.

135.    As an additional example, on information and belief, Exhibit 39 contains importation records from ImportGenius (https://www.importgenius.com/) showing that on September 10, 2020, LG Electronics U.S.A. Inc. imported 69 counts of LG products including LG's ZX 8K Smart OLED TVs.

40

### C.      Samsung

136.    On information and belief, the Samsung Accused Products are manufactured abroad, sold for importation into the United States, imported into the United States, and/or sold after importation into the United States by Samsung and/or its authorized agents.

137.    For example, Exhibit 29C at § F is a receipt from a Best Buy store in Frisco, Texas, showing the purchase of a Samsung 55" Q70T 4K Smart QLED TV, Model No. QN55Q70TAF. Exs. 28, 29C.  Exhibit 40 contains photographs of the product and product packaging indicating that the Samsung 55" Q70T 4K Smart QLED TV, Model No. QN55Q70TAF is "Made in Mexico" and imported into the United States.  Ex. 40 at 6.

138.    As an additional example, on information and belief, Exhibit 41 contains importation records from ImportGenius (https://www.importgenius.com/) showing that on May 30, 2020, Samsung Electronics America Inc. imported 2178 counts of Samsung products including Samsung's UN65TU8000FXZA Smart TVs.

### D.      Charter

139.    On information and belief, the Charter Accused Products are manufactured abroad, sold for importation into the United States, imported into the United States, and/or sold after importation into the United States by Charter and/or its authorized agents.

140.    For example, Exhibit 29C at § A contains a receipt from Amazon showing the purchase an SR-002-R (UEI URC 1160 Charter Spectrum) remote control for delivery to an address in the United States.  Exs. 28, 29C.  Exhibit 33 also contains photographs of the SR-002-R (UEI URC 1160 Charter Spectrum) product, product packaging and user manual that was included with the product.  The back of the UEI URC 1160 Charter Spectrum product shows that it was "Made in Philippines" and imported into the United States.  Ex. 33 at 7.

141.    As an additional example, Exhibit 34 contains internal and external pictures of the UEI URC 1160 Charter Spectrum remote control.  The back of the UEI URC 1160 Charter Spectrum product shows that it was "Made in China" and imported into the United States.  Ex. 34 at 14.

142.    As an additional example, on information and belief, Exhibit 35 contains importation records from ImportGenius (https://www.importgenius.com/) showing that on July 18, 2020, UEI imported 2,160 cartons of UEI URC 1160 Charter Spectrum products.

143.    On information and belief, Charter sells or leases the SR-002-R (UEI URC 1160 Charter Spectrum) product to its subscribers. Ex. 14.  On information and belief, Charter also provides replacement remote controls and may charge a fee. Ex. 23.

### E.    Altice

144.    On information and belief, the Altice Accused Products are manufactured abroad, sold for importation into the United States, imported into the United States, and/or sold after importation into the United States by Altice and/or its authorized agents.

145.    For example, Exhibit 29C at § D contains a receipt from eBay showing the purchase of a UEI URC 2464 Optimum remote control for delivery to an address in the United States.  Exs. 28, 29C.  Exhibit 36 also contains photographs of the UEI URC 2464 Optimum product and product packaging.  The back of the UEI URC 2464 Optimum product shows that it was "Made in China" and imported into the United States.  Ex. 36 at 6.

146.    On information and belief, Altice sells or leases the UEI URC 2464 Optimum remote control product to its subscribers. Ex. 15.  On information and belief, Altice also provides replacement remote controls for a fee.  Ex. 24.

F.     **WOW**

147.    On information and belief, the WOW Accused Products are manufactured abroad, sold for importation into the United States, imported into the United States, and/or sold after importation into the United States by WOW and/or its authorized agents.

148.    For example, Exhibit 29C at § C contains a receipt from eBay showing the purchase of a UEI URC 2135 WOW! Experience remote control for delivery to an address in the United States.  Exs. 28, 29C.  Exhibit 37 also contains photographs of the UEI URC 2135 WOW! Experience product, product packaging and user manual that was included with the product.  Ex. 37.  The back of the UEI URC 2135 WOW! Experience product shows that it was "Made in China" and imported into the United States.  Ex. 37 at 11.

149.    On information and belief, WOW sells or leases the UEI URC 2135 WOW! Experience remote control product to its subscribers.  Ex. 16.  WOW also provides replacement remote controls for a fee.  Ex. 25.

**VII.    HARMONIZED TARIFF SCHEDULE INFORMATION**

150.    The Accused Products are believed to fall within at least Heading No. 8526 of the Harmonized Tariff Schedule of the United States ("HTS").  More specifically, these products may be classified under Subheading Nos. 8526.92 and 8526.92.50.  These HTS numbers are intended for illustration only and are not intended to restrict the scope of any exclusion order or other remedy by the Commission.

**VIII.   DOMESTIC INDUSTRY**

151.    A domestic industry as required by Section 337(a)(2) and as defined by Section 337(a)(3) exists in the United States and/or is in the process of being established.  Roku has made significant investment in plant and equipment, employed significant labor and capital, and made substantial investments in engineering, research and development related to products and services

that embody the Asserted Patents.  Roku has either owned or been licensed under the Asserted Patents at the time of the relevant domestic industry activities.  Ex. 42C.

### A.     Technical Prong

152.     The following table provides a summary of the Asserted Patents and the claims being practiced by the respective Domestic Industry Products:

| U.S. Patent No. | Practiced Claims | Domestic Industry Products |
|---|---|---|
| 8,378,875 | 1-4, 8, 10, 14 | Roku's remote controls that incorporate the claimed setup method of the '875 patent, including the new Roku remote control. |
| 7,388,511 | 5 | Roku's streaming players, including, but not limited to the following Roku products and models: Roku Ultra, Roku Ultra LT, Roku Express, Roku Express+, Roku Premiere, Roku Premiere+, Roku Streaming Stick, Roku Streaming Stick+, Roku Streaming Stick+ HE, and Roku remote controls. |

**Table 8**

153.     Collectively, the Domestic Industry Products for the '875 patent, including but not limited to the products listed in the table above for the '875 patent, are referred to herein as "'875 Domestic Industry Products."

154.     Collectively, the Domestic Industry Products for the '511 patent, including but not limited to the products listed in the table above for the '511 patent, are referred to herein as "'511 Domestic Industry Products."

### 1.  U.S. Patent No. 8,378,875

155.     For purposes of this Complaint, Roku submits that the new Roku remote control is representative of the '875 Domestic Industry Products.  Technical information regarding the representative '875 Domestic Industry Product, including a feature guide, is included in Confidential Exhibit 43C.  Roku employees are and have been actively engaged in implementing

features covered by the '875 Patent in the new Roku remote control which is currently under development.  Thus, as discussed in more detail below, a domestic industry related to articles protected by the '875 patent is in the process of being established by Roku.

156.    Roku's own making, using, testing, selling, offering for sale, and importation into the United States of the '875 Domestic Industry Products satisfies the technical prong of domestic industry.

157.     When commercially available, Roku intends to knowingly and intentionally induce customers and end users of the '875 Domestic Industry Products to directly practice claims of the '875 patent charted below, by encouraging, instructing, and aiding one or more persons in the United States to use the '875 Domestic Industry Products in a manner that practices the patent claims.  Further, Roku intends to knowingly and intentionally contribute to customers' and end-users' direct practicing of the claims charted below.  The components of the '875 Domestic Industry Products that will practice the claimed functionalities are not staple articles of commerce, and are not capable of substantial non-infringing use.

158.    For example, a claim chart applying independent claims 1, 10 and 14 of the '875 patent to an exemplary new Roku remote control in development is attached as Confidential Exhibit 44C.

### 2.  U.S. Patent No. 7,388,511

159.    For purposes of this Complaint, Roku submits that the Roku Ultra LT is representative of the '511 Domestic Industry Products.  Information regarding the representative '511 Domestic Industry Product, such as photographs and specifications, is included in Exhibit 45.

160.    Roku directly practices claim 5 of the '511 patent at least when Roku or those acting on Roku's behalf, such as employees, officers, directors, principals, agents, consultants, and/or

representatives, perform the claimed method during product testing of the '511 Domestic Industry Products.

161.    Additionally, Roku knowingly and intentionally induces Roku's customers and end users of the '511 Domestic Industry Products to practice claim 5 of the '511 patent, by encouraging, instructing, and aiding one or more persons in the United States to use the '511 Domestic Industry Products in a manner that practices the claim 5 of the '511 patent.  For example, Roku encourages, instructs and aids Roku's customers and end users to connect Roku players to non-Roku TVs and soundbars via HDMI, and encourages, instructs and aids Roku's customers and end users to use Roku remote controls and Roku players to control volume on such TVs and soundbars via HDMI-CEC.  Ex. 46.

162.    A claim chart applying independent claim 5 of the '511 patent to an exemplary Roku Ultra LT product is attached as Exhibit 47.

### B.    Economic Prong

163.    A domestic industry exists and/or is in the process of being established under 19 U.S.C. §§ 1337(a)(2), 1337(a)(3)(A), (B), and/or (C) by virtue of Roku's significant and substantial investments in facilities, equipment, labor, capital, engineering, and research and development related to its products that practice or embody the Asserted Patents.

164.    Roku conducts a variety of product-related activities directed to the respective Domestic Industry Products in the United States, including research and development, engineering, sales, and marketing.  Roku has incurred and continues to incur significant expenditures related to domestic facilities that enable those activities, including rent, utilities, equipment, and repairs and maintenance.  Further details regarding Roku's investments in facilities related to the respective Domestic Industry Products are provided in the Confidential Declaration of Kevin Bright, attached as Confidential Exhibit 5C.

165. Additionally, many Roku employees perform work related to the Domestic Industry Products. These employees' activities, all of which are important to Roku's business, include ongoing research and development, as well as engineering, sales, and marketing. These employees are located in the United States, either in Roku's facilities or remotely throughout the United States. Roku invests a significant amount of money in salaries, incentives, and other compensation for these individuals. Further details regarding Roku's investment in labor related to the Domestic Industry Products are provided in the Confidential Declaration of Kevin Bright, attached as Confidential Exhibit 5C.

166. Roku's domestic investments include activities relating to new Roku remote control that will practice the '875 patent. Roku has taken significant, tangible steps towards the establishment of this new domestic industry, including investments in: (i) plant and equipment per 19 U.S.C. § 1337(a)(3)(A); (ii) labor and capital per 19 U.S.C. § 1337(a)(3)(B); and/or (iii) engineering and research and development per 19 U.S.C. § 1337(a)(3)(C). As a result of these steps and activities, there is a significant likelihood that this new domestic industry with respect to articles protected by the '875 patent will be established in the future.

## IX. RELATED LITIGATION

167. Pursuant to 19 C.F.R. § 210.12(a)(5), Roku provides the following statement regarding whether the Asserted Patents have been the subject of any court or agency litigation.

168. The Asserted Patents are being asserted against UEI in a companion district court litigation that is being concurrently filed in the Central District of California. There are no current or past litigations and/or investigations involving the Asserted Patents.

169. In addition, Roku and UEI are currently involved in the following district court litigations, ITC investigations and *inter partes* review proceedings that do not involve the Asserted Patents:

a) ITC Investigation

    1. *Certain Electronic Devices, Including Streaming Players, Televisions, Set Top Boxes, Remote Controllers, and Components Thereof*, Inv. No. 337-TA-1200. This ITC investigation is ongoing and the hearing is scheduled for April 19, 2021.

b) District Court Litigation

    1. *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:18-cv-01580 (C.D. Cal.).  This litigation is currently stayed pending the outcome of the related *Inter Partes* Reviews and pending the outcome of the related ITC investigation.

    2. *Universal Electronics Inc. v. Roku, Inc.*, Case No. 8:20-cv-00701 (C.D. Cal).  This litigation is currently stayed pending the outcome of the related ITC investigation.

c) *Inter Partes* Review Proceedings

    1. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2019-01612 (PTAB)
    2. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2019-01613 (PTAB)
    3. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2019-01614 (PTAB)
    4. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2019-01615 (PTAB)
    5. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2019-01619 (PTAB)
    6. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2019-01620 (PTAB)
    7. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2019-01621 (PTAB)
    8. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2021-00261 (PTAB)
    9. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2021-00262 (PTAB)
    10. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2021-00263 (PTAB)
    11. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2021-00264 (PTAB)
    12. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2021-00299 (PTAB)
    13. *Roku, Inc. v. Universal Electronics Inc.*, IPR No. 2021-00455 (PTAB)

## X.    REQUESTED REMEDIAL ORDERS

### A.    Limited Exclusion Order

170.    Pursuant to Section 337(d), Roku respectfully requests that a Limited Exclusion Order (LEO) be entered against the Proposed Respondents and their subsidiaries and affiliates in order to remedy the Proposed Respondents' violation of Section 337 and to prevent such future violations by Proposed Respondents.

B.      **Cease and Desist Order**

171.    Cease and desist orders against all Proposed Respondents are appropriate under Section 337(f), which provides that the Commission may issue such an order against any person violating Section 337, in addition to exclusion orders issued under Section 337(d).  On information and belief, the Proposed Respondents maintain a commercially significant domestic inventory of the Accused Products in amounts sufficient to undercut an exclusion order.  At least for the foregoing reasons, cease and desist orders are appropriate to remedy, and prevent, the widespread violation of Section 337 by the Proposed Respondents.

## XI.    RELIEF

WHEREFORE, by reason of the foregoing, Roku respectfully requests that the United States International Trade Commission:

1.      Institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, to determine that Proposed Respondents have violated Section 337 based on the sale for importation into the United States, importation, and/or sale or offer for sale within the United States after importation of the Accused Products;

2.      Schedule and conduct a hearing on permanent relief pursuant to 19 U.S.C. §§ 1337(d) and (f);

3.      Issue a permanent limited exclusion order specifically directed to the Proposed Respondents and their subsidiaries and affiliates, excluding from entry into the United States the Accused Products;

4.      Issue a permanent cease and desist order prohibiting the Proposed Respondents, their subsidiaries, related companies, and agents from, among other things, engaging in the importation, sale for importation, marketing, advertising, providing of services, offering for sale,

sale after importation, distribution, use after importation, licensing, and/or other transfers within the United States after importation of the Accused Products;

5.      Impose a bond upon the Proposed Respondents' importation of the Accused Products during the 60-day presidential review period pursuant to 19 U.S.C. § 1337(j) to prevent further injury to the domestic industry; and

6.      Issue such other and further relief as the Commission deems just and proper under the law, based upon the facts determined by the investigation and the authority of the Commission.


Respectfully submitted,


Date:  April 27, 2021                    */s/ Jonathan D. Baker*
                                         Jonathan D. Baker
                                         Craig Y. Allison
                                         Dino Hadzibegovic
                                         Mark Rogge
                                         DICKINSON WRIGHT RLLP
                                         800 W. California Avenue, Suite 110
                                         Sunnyvale, CA 94086
                                         Tel:  (408) 701-6200

                                         Steven R. Daniels
                                         Michael D. Saunders
                                         DICKINSON WRIGHT PLLC
                                         607 W. 3rd Street, Suite 2500
                                         Austin, Texas 78701
                                         Tel:  (512) 770-4200

                                         Evi S. Li
                                         DICKINSON WRIGHT PLLC
                                         1825 Eye St. NW, Suite 900
                                         Washington, DC 20006
                                         Tel: (202) 659-6965

                                         *Counsel for Complainant*
                                         *Roku, Inc.*

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

**In the Matter of**

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND COMPONENTS THEREOF**

Investigation No. 337-TA-_____

## <u>VERIFICATION OF AMENDED COMPLAINT</u>

I, Kevin Bright, do hereby declare and state:

1.      I am Senior Director of Financial Planning and Analysis at Roku, Inc., and I am duly authorized to verify this amended complaint;

2.      I submit this verification in accordance with 19 C.F.R. §§ 210.4 and 210.12(a);

3.      I have read the amended complaint and am aware of its contents;

4.      The amended complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the investigation or related proceeding;

5.      To the best of my knowledge, information and belief founded upon reasonable inquiry, the claims and legal contentions of this amended complaint are warranted by existing law or a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and

6.      To the best of my knowledge, information and belief founded upon reasonable inquiry, the allegations and other factual contentions in the amended complaint have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

1

Executed on April 26, 2021.

Kevin Bright
Senior Director, FP&A
Roku, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2021, a copy of the foregoing was served upon the

following parties as indicated below:

| U.S. INTERNATIONAL TRADE COMMISSION | |
|---|---|
| The Honorable Lisa Barton, Secretary<br>U.S. International Trade Commission<br>500 E Street, SW, Room 112<br>Washington, D.C. 20436 | Via EDIS |
| COUNSEL FOR PROPOSED RESPONDENTS UNIVERSAL ELECTRONICS, INC., GEMSTAR TECHNOLOGY (QINZHOU) CO. LTD., GEMSTAR TECHNOLOGY (YANGZHOU) CO. LTD., C.G. DEVELOPMENT LTD., UNIVERSAL ELECTRONICS BV, UEI BRASIL CONTROLES REMOTOS LTDA., AND CG MÉXICO REMOTE CONTROLS, S. DE R.L.DE C.V. | |
| Adam D. Swain<br>ALSTON & BIRD LLP<br>950 F Street NW<br>Washington, DC 20004 | Via U.S. Mail and Electronic Mail at<br>adam.swain @alston.com |

*/s/ Linda L. Emerson*
Linda L. Emerson

# ATTACHMENT F

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable MaryJoan McNamara**
**Administrative Law Judge**

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN TELEVISIONS, REMOTE CONTROLS, AND COMPONENTS THEREOF** | **Investigation No. 337-TA-1263** |

**APPLICATION FOR ISSUANCE OF SUBPOENA AD TESTIFICANDUM**

Respondent Universal Electronics Inc. ("UEI" or "Respondent"), pursuant to 19 C.F.R. § 210.32(a), hereby applies to the Administrative Law Judge for the issuance of the attached subpoena *ad testificandum* to:

Premium Home Control Solutions, LLC (D/B/A Omni Remotes)
7362 Remcon Circle
El Paso, TX 79912 USA

C/O Registered Agent: Corporation Service Company
211 E. 7th Street,
Suite 620
Austin, TX 78701

The subpoena *ad testificandum* requires PREMIUM HOME CONTROL SOLUTIONS LLC (D/B/A Omni Remotes) (hereinafter "Omni") to appear and testify at the taking of a deposition on June 17, 2021, at ALSTON & BIRD LLP, 950 F Street, NW, Washington, DC 20004, or at such other date and location as is mutually agreed upon.

UEI believes that Omni may be in possession of substantial information relevant to this Investigation. Specifically, Complainant Roku, Inc. ("Roku") alleges in its Complaint (and Amended Complaint) that it purchased the asserted patents, U.S. Patent Nos. 8,378,875 and 7,388,511, from Home Control Singapore Pte. Ltd. D/B/A Omni Remotes. The information UEI

seeks from Omni relates to inventorship, prosecution of the applications that led to the asserted patents, analysis of the asserted patents, and the transfer of ownership and assignment of the asserted patents.   Additionally, UEI believes that Omni may be in possession of substantial information related to the remote control products which Roku alleges satisfy the domestic industry requirement.   Furthermore, the topics identified in Attachment B of the subpoena are narrowly tailored to address only the aforementioned subjects.   The scope of inquiry is reasonable because the requested materials are important to the Investigation, directed to specific elements of the Investigation, and unlikely to be in the possession, custody, or control of other persons or entities.

Omni will receive the application and subpoena by overnight delivery, if not sooner, and all other parties to this Investigation will receive them on the next business day, at the latest, after the subpoena has issued.   For the reasons set forth above, UEI respectfully requests that its application for issuance of a subpoena *ad testificandum* be granted and the attached subpoena be issued.

Dated:  May 24, 2021                     Respectfully submitted,

*/s/ Adam D. Swain*
Thomas W. Davison
Adam D. Swain
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC  20004
Telephone:  (202) 239-3622
Facsimile:  (202) 654-4842

Ryan W. Koppelman
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA  90071
Telephone:  (213) 576-1000

Facsimile:  (213) 576-1100

Katherine G. Rubschlager
**ALSTON & BIRD LLP**
1950 University Ave., Suite 430
East Palo Alto, CA  94303
Telephone:  (650) 838-2000
Facsimile:  (650) 838-2001

Holly Hawkins Saporito
Michael C. Deane
Katie Donald
Nicholas T. Tsui
Monica L. Ruiz
**ALSTON & BIRD LLP**
1201 W. Peachtree St., Suite 4900
Atlanta, GA  30309-3424
Telephone:  (404) 881-7000
Facsimile:  (404) 881-7777

M. Scott Stevens
Stephen R. Lareau
**ALSTON & BIRD LLP**
101 South Tryon Street, Suite 4000
Charlotte, NC  28280-4000
Telephone:  (704) 444-1000
Facsimile:  (704) 444-1111

*Counsel for Respondent Universal Electronics Inc.*

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

**Before The Honorable MaryJoan McNamara**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of<br><br>**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND COMPONENTS THEREOF** | **Investigation No. 337-TA-1263** |

**SUBPOENA DUCES TECUM**

TO:

      Premium Home Control Solutions, LLC (D/B/A Omni Remotes)
      7362 Remcon Circle
      El Paso, TX 79912 USA

CARE OF REGISTERED AGENT:

      Corporation Service Company
      211 E. 7th Street,
      Suite 620
      Austin, TX 78701

TAKE NOTICE: By authority of Section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by Respondent Universal Electronics Inc.,

YOU ARE HEREBY ORDERED to produce at ALSTON & BIRD LLP, 950 F Street, NW, Washington, DC 20004, on June 10, 2021, or at such other time and place agreed upon, all of the documents and things in your possession, custody or control which are listed and described in Attachment A hereto.  Such production will be for the purpose of inspection and copying, as desired.

If production of any document listed and described in Attachment A hereto is withheld on the basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list.  The privileged document list must identify each document separately, specifying for each document at least: (i) the date the information was created or communicated; (ii) author(s)/sender(s); (iii) all recipient(s); and (iv) the general subject matter contained in the

1

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

document.  The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated.  If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified.  The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

Any motion to limit or quash this subpoena shall be filed within ten (10) days after the receipt hereof.  At the time of filing of any motion concerning this subpoena, two (2) double-sided courtesy copies shall be served concurrently on the Administrative Law Judge at her office.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set her hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this 24th day of May, 2021.

MaryJoan McNamara
Administrative Law Judge

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena** *Duces Tecum* **and Subpoena** *Ad Testificandum* **to Premium Home Control Solutions, LLC.**

## ATTACHMENT A

### DEFINITIONS

1.      "Omni," "You" or "Yours" means any company name under which Premium Home Control Solutions, LLC (d/b/a Omni Remotes) is doing business, including its predecessors, parents (such as Home Control Singapore Pte. Ltd.), subsidiaries, sister, affiliates, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, employees, and any other persons acting or purporting to act on behalf of any of the foregoing.

2.      "Roku" means Complainant Roku, Inc., any company name under which Roku, Inc. is doing business, and its predecessors, parents, subsidiaries, sister companies, affiliates, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, employees, and any other persons acting or purporting to act on behalf of any of the foregoing.

3.      "UEI" means Respondent Universal Electronics Inc., including its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), affiliates, divisions and operating units thereof, agents and entities under common control with them.

4.      "LG" means Respondents LG Electronics, Inc. and LG Electronics USA, Inc., as well as any company name under which these entities are doing business, and their predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors,

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

5.      "Samsung" means Respondents Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., as well as any company name under which these entities are doing business, and their predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

6.      "Charter" means Respondents Charter Communications, Inc., Charter Communications Operating, LLC, and Spectrum Management Holding Company, LLC, as well as any company name under which these entities are doing business, and their predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

7.      "Altice" means Respondents Altice USA, Inc., Cablevision Systems Corp., and Cequel Communications, LLC d/b/a Suddenlink Communications, as well as any company name under which these entities are doing business, and their predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as

*Certain Televisions, Remote Controls, And Components Thereof*, **Inv. No. 337-TA-1263**

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

8.    "WOW" means Respondent Wideopenwest, Inc., as well as any company under which WOW is doing business, and its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), sister companies, affiliates, divisions and operating units thereof, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, and any other persons acting or purporting to act on behalf of any of the foregoing.

9.    "Respondents" means UEI, LG, Samsung, Charter, Altice, and Wow, collectively.

10.    "Philips" means any company name under which Koninklijke Philips Electronics N.V. is doing business, including its predecessors, parents (such as Koninklijke Philips NV), subsidiaries (such as Philips North America, LLC or Philips Electronics North America), sister, affiliates, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, attorneys, distributors, contractors, representatives, employees, and any other persons acting or purporting to act on behalf of any of the foregoing.

11.    "Asserted Patents" and/or "Patents-in-Suit" means U.S. Patent Nos. 8,378,875 (the "'875 Patent") and 7,388,511 (the "'511 Patent").  The term "Asserted Patents" or "Patents-in-Suit" also includes each patent individually and all combinations and sub-combinations of the patents.

12.    "Application" means any patent application or similar document anywhere in the world, including but not limited to any provisional application, continuing application,

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

continuation-in-part application, divisional application, file-wrapper continuation, reexamination proceeding, reissue application, and abandoned application.

13.    "Related Patents" and/or "Related Applications" means any patent or Application filed anywhere in the world that is related to any Asserted Patent, including but not limited to any patent or Application that (i) claims priority in whole or in part to or from any Asserted Patent, (ii) is the basis for a claim of priority in whole or in part for any Asserted Patent, or (iii) discloses the same subject matter as any Asserted Patent or shares any part of its written description with the written description of any Asserted Patent.

14.    "Prior Art" means the same as it is used in "pre-AIA" 35 U.S.C. § 102 (as of December 31, 2012) and includes any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or other act or event defined in "pre-AIA" 35 U.S.C. § 102 (as of December 31, 2012), taken alone or in combination.

15.    "Including" or any variant thereof means "including without limitation."

16.    "And" and "or" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

17.    "Any" and "all" mean "any and all."

18.    "Each" and "every" mean "each and every."

19.     "You," "your," or "yours" mean Omni, as defined herein.

20.    "Thing(s)" has the broadest meaning allowable under Federal Rule of Civil Procedure 34 and Commission Rule 210.30 and includes any tangible object other than a document and, without limitation, objects of every kind and nature, as well as prototypes, models, or physical specimens thereof.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

21.     "Document" has the same broad meaning as used in Rule 210.30(a)(1), and includes, without limitation, any thing or any written or graphic matter or any medium of any type or description upon which intelligence or information is recorded, or from which intelligence or information can be perceived, including computer, electronic, magnetic and optical media of all kinds, which is or has been in the possession, custody or control of Omni, or of which Omni has knowledge, including the original and any non-identical copy (whether different from the original because of notes made on said copy or otherwise) of any advertising literature; agreement; bank record or statement; blueprint; book; book of account; booklet; brochure; calendar; chart; circuit diagram; circular; coding form; communication (intra- or inter-company); components listing; computer data; computer printout; computer software and supporting indices; data; documentation; flow charts; comments; object code; firmware; source code and computer programs; contract; copy; correspondence; data base; design document; diary; die; display; draft of any document; drawing; electronic mail (e-mail); engineering change order; engineering specification; film, film transparency; flyer; forecast; graph; index; instruction; instruction manual or sheet; internet pages; invoice; job requisition; letter; license; log; machine readable form; manual; manufacturing data; manufacturing drawing; map; marketing plan; mask; memoranda; minutes; model; newspaper or other clippings; notes; notebook; opinion; packing checklist; packing list; pamphlet; paper; periodical or other publications; photograph; physical object; press release; price list; print; printed circuit board; product brochure; product specification; promotional literature; prototype; receipt; record; recorded read-only memory (ROM); recording; report; sales data; schematic; sketch; solicitation; statement; statistical compilation; stenographic note; study; summary (including any memoranda, minutes, notes, records or summary of any (a) telephone or

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

intercom conversation or message, (b) conversation or interview, or (c) meeting or conference); technical, service or operational manual; technical specification; telegram; telephone log; timing diagram; travel or expense records; video recording; videotape; voice recording; voucher; worksheet or work paper; and any other documentary material of any nature.

22.     "Technical Documents" means schematics, flow charts, engineering drawings, logic diagrams, circuit diagrams, block diagrams, design specifications, high-level, mid-level, or low-level design review documents, top level or low level module documents, training documentation, data sheets, integration information and guidelines, Computer Aided Design ("CAD") files, including GDS files, process flow diagrams and/or state machine diagrams, test procedures, compliance test results, and any other piece or part drawings (*e.g.*, picture, electronic representation, or any depiction of any circuitry or structure).

23.     "Source Code" means any source code for software or firmware, hardware code, assembly code, or other computer code, including but not limited to any code written in an assembly language, C, C++, VHDL, Verilog, or other programming or hardware description language.

24.     "Person" or "persons" means an individual, corporation, proprietorship, partnership, association, or any other entity.

25.     "Regarding" means concerning, regarding, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

26.     "Entity" means any natural person, corporation, partnership, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic person.

27.     "Communication" or "communicated" means any contact between two or more entities by which any information or knowledge is transmitted or conveyed or attempted to be transmitted or conveyed, including written contact including letters, memoranda, telegrams, telefaxes, telecopies, telexes or e-mails, text messages and oral contact including face-to-face meetings, telephone conversations, voicemails, answering machine messages and telephonic notes.

28.     "Relating to" or "related to" when referring to any given subject matter means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

29.     The term "identify" when used in conjunction with a person means to provide, to the extent known, the person's full name, present or last known address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment and, when referring to a current or former director, officer, manager or other employee of Omni, additionally the title(s) or position(s) held by such person, the time periods during which such person held such position(s), and a description of the responsibilities of such person to those position(s).

30.     The term "identify" when used in conjunction with a document or other thing means to specify the document or thing in sufficient detail to permit UEI to locate the document or thing.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

31.     The term "Roku Remote Products" means any remote control device that Omni designs, manufactures, produces, tests, supplies, or delivers to Roku.

## INSTRUCTIONS

1.     You are to search all documents within your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities or in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on your behalf (whether located at his/her residence or place of business), in order to fully respond to the requests herein.

2.     You are to produce documents from any single file in the same order as they were found in such file, including any labels, files, folders, and containers which such documents are located in or associated with.  If copies of documents are produced in lieu of the originals, such copies should be legible and bound or stapled in the same manner as the original.

3.     If you do not produce each document or thing requested herein as they are kept in the usual course of business, you must organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

4.     You are to produce all documents which are responsive in whole or in part to any of the requests herein in full, without abridgement, abbreviation, or expurgation of any sort, and regardless of whether you deem such documents to be irrelevant to the issues in the investigation for which such documents are being sought  If any such documents cannot be produced in full, produce the document to the extent possible and indicate in your written response what portion of the document is not produced and why it could not be produced.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

5.      You are required to produce not only the original or an exact copy of the original of all documents or things responsive to any of the requests herein, but also all copies of such documents or things which bear any notes or markings not found on the originals and all preliminary, intermediate, final, and revised drafts or embodiments of such documents or things. You are also required to produce all versions of the foregoing documents stored by a computer internally, on disk, on CD-ROM, or on tape.

6.      You are to produce any purportedly privileged document containing non-privileged matter, with the purportedly privileged portion excised or redacted.

7.      If any of the documents requested herein are no longer in your possession, custody, or control, you are requested to identify each such requested document by date, type of document, person(s) from whom sent, person(s) to whom sent, and person(s) receiving copies, and to provide a summary of its pertinent contents.

8.      If any document responsive to these requests has been destroyed, describe the content of such document, the location of any copies of such document, the date of such destruction, and the name of the person who ordered or authorized such destruction.

9.      Electronic and computerized materials must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit tendering of the material intelligible.

10.     If any of the documents or things are considered "confidential business information," as that term is defined in the attached protective order ("Protective Order"), such documents or things should be produced subject to the terms and provisions of the Protective Order.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

11.     If production of any document listed and described in Attachment A hereto is withheld on the basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list.   The privileged document list must identify each document separately, specifying for each document at least: (1) the date; (2) author(s)/sender(s); (3) recipient(s), including copy recipients; and (4) general subject matter of the document.   The sender(s) and recipient (s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated.   If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified.   The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

**REQUESTS FOR PRODUCTION**

## REQUEST FOR PRODUCTION NO. 1:

All agreements with Roku regarding the Asserted Patents, Related Patents, and/or Related Applications.

## REQUEST FOR PRODUCTION NO. 2:

All agreements with Philips regarding the Asserted Patents, Related Patents, and/or Related Applications.

## REQUEST FOR PRODUCTION NO. 3:

All documents and things sufficient to identify all persons and/or entities that currently hold, or have previously held, an interest, including but not limited to a financial interest, any ownership interest, beneficial ownership interest, or any license or other power to enforce any interest, in the Asserted Patents or Related Patents, and any foreign counterparts to the Asserted Patents or Related Patents, including for each person or entity the nature of such interest and the date that any such interest was acquired.

## REQUEST FOR PRODUCTION NO. 4:

All agreements with Roku regarding the Roku Remote Products.

## REQUEST FOR PRODUCTION NO. 5:

Documents or things sufficient to identify which version(s) of software or firmware are used by each model of the Roku Remote Products, including but not limited to any build id or any other unique identifier for the software and firmware and any version number or identifier for the software or firmware, for each and every release or variant of each of the Roku Remote Products.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control
Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 6:

A copy of the source code corresponding to each version(s) of software or firmware are
used by each model of the Roku Remote Products, as well as any technical documentation
describing or related to said source code.

## REQUEST FOR PRODUCTION NO. 7:

Documents or things sufficient to show the design, development, configuration, structure,
specifications, use, operation, protocol, evaluation, testing, diagnosis, and troubleshooting of the
Roku Remote Products.

## REQUEST FOR PRODUCTION NO. 8:

All Technical Documents and Source Code that describe or relate to the operation, use,
functionality, programming, structure, and configuration of the following functionality in the Roku
Remote Products, including: configuration mode(s); brand identifier(s); codeset identifier(s); the
implementation of infrared ("IR") communication; HDMI or CEC control of devices; radio
frequency ("RF") communication; the programing of the Roku Remote Products to control a TV;
storage, reception, and transmission of key codes; storage, reception, and transmission of codesets;
storage, reception, and transmission of timing information or any data used in the transmission of
key codes (including but not limited to on/off times, duty cycle, carrier frequency, and mark/space
pairs or patterns); programming any Roku Remote Products with key codes; software or firmware
updates (manual and automatic); the initial setup process of the Roku Remote Products; and the
"Control your TV", "Set up Remote for TV control," "Set up a new Device," "1-touch play," and
"control other devices (CEC)"   Roku features and related functionalities.

14

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 9:

All Technical Documents and Source Code related to Omni's remote IR database, RF database, and HDMI or CEC database.

## REQUEST FOR PRODUCTION NO. 10:

Documents sufficient to show all components of, as well as their configurations and connections within, the Roku Remote Products, including, but not limited to bill of materials ("BOM"), identity of the manufacturers, any model numbers, schematics, diagrams, illustrations, and/or circuit diagrams.

## REQUEST FOR PRODUCTION NO. 11:

All Technical Documents and Source Code related to each component of the Roku Remote Products.

## REQUEST FOR PRODUCTION NO. 12:

All (i) documents or (ii) communications with Respondents that demonstrate that Omni has provided Roku with copies or access to any firmware or source code for Roku Remote Products or agreed to do so.

## REQUEST FOR PRODUCTION NO. 13:

All documents and things relating to the ownership, title, transfer, acquisition, or assignment of the Asserted Patents, Related Patents, and/or Related Applications.

## REQUEST FOR PRODUCTION NO. 14:

All documents and things relating to any security interest in or lien against the Asserted Patents, Related Patents, and/or Related Applications.

*Certain Televisions, Remote Controls, And Components Thereof,* Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 15:

All documents and things describing or relating to the actual or potential assignment, sale, transfer, or offer to assign, sell, or transfer to any person any interest in one or more of the Asserted Patents, Related Patents, and/or Related Applications, whether individually or as part of a group of patents.

## REQUEST FOR PRODUCTION NO. 16:

All documents and things relating to any financial or other interest in the Asserted Patents, Related Patents, and/or Related Applications.

## REQUEST FOR PRODUCTION NO. 17:

All documents and things relating to any investigation, opinion, report, or observation as to the patentability, validity, enforceability, inventorship, scope, inequitable conduct, infringement, strength, or weakness of any claim of the Asserted Patents, Related Patents, and/or Related Applications, or any U.S. or foreign patent or pending or abandoned patent application that claims priority from the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 18:

All documents and things, including but not limited to assessments, evaluations, reports, valuations, models, presentations, or opinions, relating to the value of one or more of the Asserted Patents, Related Patents, and/or Related Applications, whether individually or as part of a group of patents.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

**REQUEST FOR PRODUCTION NO. 19:**

All documents and things relating to any analysis of the relevance, including the relative importance or significance, of any of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and things relating to payments of royalties or any audits of royalty payments with regard to any license or agreement that includes one or more of the Asserted Patents, Related Patents, and/or Related Applications, whether individually or as part of a group of patents.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and things relating to any actual or proposed royalty rate for any of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and things relating to the identification, selection, or determination of the proper inventors for the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and things sufficient to identify any individual involved in any proposals, discussions, presentations, drafts, revisions, or communications relating to the subject matter of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and things showing the individual contribution of each person named as an Inventor on each application, including provisional applications, to which any of the Asserted

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

Patents claim priority to the conception, design, development, diligence, or reduction to practice of the subject matter of the claims of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and things relating to the conception of the subject matter of the Asserted Patents, including, without limitation, any engineering notebooks, laboratory notebooks, log books, records books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which corroborate the conception.

**REQUEST FOR PRODUCTION NO. 26:**

All documents and things relating to any actual reduction to practice of the subject matter of the Asserted Patents, including, without limitation, any engineering notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records, or any other documents or things which corroborate the reduction to practice.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and things relating to any act of diligence leading to the reduction to practice of the subject matter of each claim of the Asserted Patents, including, without limitation, any engineering, notebooks, laboratory notebooks, log books, record books, memoranda, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, invention disclosures, patent prosecution records,

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

or any other documents or things which corroborate any act of diligence leading to the reduction to practice.

**REQUEST FOR PRODUCTION NO. 28:**

All engineering notebooks, laboratory notebooks, records, logs, and files generated at or by the direction of the named inventors of the Asserted Patents, and all engineering notebooks, laboratory notebooks, records, logs, and files in which the named inventor(s) of each of the Asserted Patents made any entries.

**REQUEST FOR PRODUCTION NO. 29:**

All engineering notebooks, laboratory notebooks, records, logs, and files relating to the subject matter of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 30:**

All documents and things relating to publications, abstracts, papers, presentations, or speeches authored or given, in whole or in part, by any of the named inventors of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 31:**

All documents and things relating to publications, abstracts, papers, presentations or speeches authored or given, in whole or in part, by Omni or Philips or any named inventors of the Asserted Patents relating to, in whole or in part, the subject matter of the Asserted Patents, Related Patents, and/or Related Applications.

**REQUEST FOR PRODUCTION NO. 32:**

The personnel and employment history files for each of the named inventors of the Asserted Patents, including resumes, curricula vitae, and any descriptions of their responsibility

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

for or duties relating to the use, research, design, development, testing, manufacture, operation, distribution, importation, sale, licensing and marketing of any products or methods that embody, any products or methods that embody, fall within the scope of, or are practiced in accordance with any subject matter disclosed or claimed in the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 33:

All personnel and employment history files for each person named as an inventor on each application, including provisional applications, to which any of the Asserted Patents claim priority, including resumes, curricula vitae, and any descriptions of their responsibility for or duties relating to the use, research, design, development, testing, manufacture, operation, distribution, importation, sale, licensing and marketing of any products or methods that embody, any products or methods that embody, fall within the scope of, or are practiced in accordance with any subject matter disclosed or claimed in the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 34:

All contracts or agreements between Omni, any other current or former owner of the Asserted Patents, and any Inventor named in the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 35:

All documents and things from or to Omni or from or to any of the named inventors of the Asserted Patents regarding the subject matter of any claim of any of the Asserted Patents, Related Patents, and/or Related Applications.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 36:

All documents and things relating to any communication between You and any other entity regarding the Asserted Patents, Related Patents, and/or Related Applications, including, without limitation, documents related to Your purchase, ownership, and sale of the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 37:

All documents and things relating to communications between You and any current or former owner of any of the Asserted Patents or any Inventor named in the Asserted Patents relating to one or more of the Asserted Patents, Related Patents, and/or Related Applications, whether individually or as part of a group of patents

## REQUEST FOR PRODUCTION NO. 38:

All transcripts (including printed transcripts, audiotapes, and videotapes) of any sworn testimony ever given by any named inventor(s) of the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 39:

All documents relating to any affidavit or declaration ever signed, served, or filed in any proceeding by any named inventor(s) of the Asserted Patents at any time, where any part of the affidavit or declaration relates to the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 40:

All documents and things related to any written description of any claim of the Asserted Patents, including, without limitation, all "invention disclosures" and other written descriptions authored by any named inventor(s) of the Asserted Patents.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 41:

All documents and things related to Omni's decision to seek patent protection, including the acquisition of intellectual property, for the subject matter of any claim of any of the Asserted Patents, Related Patents, and/or Related Applications.

## REQUEST FOR PRODUCTION NO. 42:

All documents and things reflecting amounts offered or bid for a purchase or sale by You of the Asserted Patents, Related Patents, and/or Related Applications.

## REQUEST FOR PRODUCTION NO. 43:

All documents and things relating to the preparation, filing and/or prosecution of:

(a)     the Asserted Patents;

(b)     any Related Patent or Related Application;

(c)     any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

(d)     any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

(e)     any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

## REQUEST FOR PRODUCTION NO. 44:

All documents and things relating to any decision as to what prior art references to cite, or to not cite, including all prior art search results, during the prosecution of:

(a)     the Asserted Patents;

(b)     any Related Patent or Related Application;

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

(c)     any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

(d)     any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

(e)     any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

## REQUEST FOR PRODUCTION NO. 45:

All documents and things relating to any communication, meeting, or contact with the U.S. Patent and Trademark Office or any foreign patent office concerning any U.S. or foreign patents or patent applications, including, without limitation, any internal filing/no-filing review, relating to:

(a)     the Asserted Patents;

(b)     any Related Patent or Related Application;

(c)     any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

(d)     any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

(e)     any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 46:

All documents and things relating to any lawsuit, judicial proceeding, arbitration, patent interference proceeding, appeal proceeding, reissue or reexamination proceeding, or patent opposition or cancellation proceeding relating to:

      (a)      the Asserted Patents;

      (b)      any Related Patent or Related Application;

      (c)      any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

      (d)      any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

      (e)      any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

## REQUEST FOR PRODUCTION NO. 47:

All documents and things relating to any search for or investigation of any prior art or other information, regarding the patentability, validity, or scope of the subject matter of any claim of:

      (a)      the Asserted Patents;

      (b)      any Related Patent or Related Application;

      (c)      any patent or patent application (including any pending or abandoned applications) from or through which the Asserted Patents claims priority;

      (d)      any patent or patent application (including any pending or abandoned applications) that claim priority from or through the Asserted Patents; and

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

(e)      any foreign counterpart patents or patent applications (including any unpublished applications) to any of (a), (b), (c), or (d).

## REQUEST FOR PRODUCTION NO. 48:

All documents and things relating to the payment of maintenance fees to the PTO with regard to the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 49:

All documents and things relating to any information, including patents, publications, prior knowledge, public uses, sales, or offers for sale, that may constitute, contain, disclose, refer to, relate to, or embody any prior art to the subject matter of any claim of the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 50:

All documents and things relating to any evaluation, analysis, or review of any prior art relating to the Asserted Patents, Related Patents, and/or Related Applications or of any documents and things that refer to any prior art relating to the Asserted Patents, Related Patents, and/or Related Applications.

## REQUEST FOR PRODUCTION NO. 51:

All documents and things relating to the first disclosure to a person (whether employed by You or not), other than a named inventor of the Asserted Patents, of the subject matter of any claim of the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 52:

All documents and things relating to any disclosure or publication of the subject matter of any claim of the Asserted Patents to any person or entity, including, without limitation, any pre-

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

filing date sales, offers for sale, public uses, demonstrations, announcements, advertisements, correspondence with potential customers, or publications.

**REQUEST FOR PRODUCTION NO. 53:**

All documents and things relating to any conference, seminar, exhibition, convention, or trade show at which any product, device, apparatus, method, process, or system that allegedly embodies, falls within the scope of, or is practiced in accordance with the subject matter of any claim of the Asserted Patents, is or was discussed, referred to, advertised, displayed, demonstrated, or shown, including, without limitation, advertisements, brochures, articles, pamphlets, price lists, product specifications, or other promotional, marketing, or presentation materials.

**REQUEST FOR PRODUCTION NO. 54:**

All documents and things that You and/or any named inventor of the Asserted Patents prepared for or distributed at any conference, exhibition, seminar, convention, or trade show relating to any product, device, apparatus, method, process, or system that allegedly embodies, falls within the scope of, or is practiced in accordance with the subject matter of any claim of the Asserted Patents, including, without limitation, advertisements, brochures, articles, pamphlets, price lists, product specifications, or other promotional, marketing, or presentation materials.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and things relating to any sale, offer for sale, or public use or demonstration of any product, device, apparatus, method, process, or system that allegedly embodies, falls within the scope of, or is made in accordance with the subject matter of any claim of the Asserted Patents, including, without limitation, purchase orders, sales orders, quotes, requests for quotes, invoices, or shipping documents.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 56:

All documents and things relating to communications about patent enforcement, Respondents' alleged infringement, or Roku's intention to file an infringement action involving the Asserted Patents, including communications with third parties, such as contacts with any third parties, any Respondent's customers or suppliers, investors, analysts, financial institutions, news organizations, or other media.

## REQUEST FOR PRODUCTION NO. 57:

All documents and things relating to any affidavit or declaration that mentioned the Asserted Patents or any patents related to the Asserted Patents and was ever signed, served, or filed in any other lawsuit, judicial proceeding, administrative proceeding, or arbitration where You have accused a party of infringing the Asserted Patents, or any patents related to the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 58:

All documents and things relating to Your analysis, consideration, testing, or evaluation of whether any Respondent product, device, apparatus, method, process, or system infringes any claim of the Asserted Patents, including, without limitation, all documents and things concerning any test, evaluation, or reverse engineering of any Respondent product, device, apparatus, method, process, or system conducted by or on behalf of Omni.

## REQUEST FOR PRODUCTION NO. 59:

All documents and things relating to any meeting, discussion, or communication with Roku, Philips, any Respondent, or any other entity concerning the Asserted Patents, Related Patents, Related Applications, or the subject matter of any of the claims of the Asserted Patents.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 60:

All documents and things relating to Your analysis, consideration, testing, or evaluation of whether any of Your products, devices, apparatuses, methods, processes, or systems practices any claim of the Asserted Patents, including, without limitation, all documents and things concerning any test, evaluation, or analysis conducted by, for, or on behalf of Omni or Roku.

## REQUEST FOR PRODUCTION NO. 61:

All documents and things in the possession of any of the named Inventors of the Asserted Patents, regarding the present Investigation or the subject matter of any claim of the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 62:

All documents and things relating to any payment or compensation paid by Omni or any current or former owner of the Asserted Patents to any Inventor named in the Asserted Patents.

## REQUEST FOR PRODUCTION NO. 63:

All documents and things, including without limitation any communications between You and any other entity, regarding the licensing of the Asserted Patents, Related Patents, or Related Applications including, without limitation, license agreements, settlement agreements, covenants not to sue, indemnity agreements, grants of a right to practice, agreements not to assert a patent, or documents and things relating to negotiations, discussions, or other communications concerning licensing of the Asserted Patents, Related Patents, or Related Applications, regardless of whether a license or any agreement was actually executed.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena** *Duces Tecum* **and Subpoena** *Ad Testificandum* **to Premium Home Control Solutions, LLC.**

## REQUEST FOR PRODUCTION NO. 64:

All communications, documents, and things relating to any excuse for delay, or lack thereof, in prosecution of the Asserted Patents, Related Patents, or Related Applications.

## REQUEST FOR PRODUCTION NO. 65:

All documents and things not covered by the prior requests relating in any way to:

(a)     the conception and development of the invention(s) claimed in the Asserted Patents;

(b)     the inventorship of the invention(s) claimed in the Asserted Patents

(c)     the claim that any Respondent has infringed or is infringing the Asserted Patents;

(d)     the validity of the Asserted Patents;

(e)     the enforceability of the Asserted Patents; or

(f)     the state of the art relating to the invention(s) claimed in the Asserted Patents at the time the alleged invention was conceived and/or reduced to practice.

## REQUEST FOR PRODUCTION NO. 66:

All information sufficient to identify all people involved in any communication, negotiation, licensing, purchase, or sale of the Asserted Patents.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

## ATTACHMENT B

### DEFINITIONS

The definitions set forth in Attachment A are incorporated by reference.

### TOPICS

You are required to provide one or more individuals who are knowledgeable and competent to provide testimony about the following topics:

A.   Omni's policies and practices involving the documents produced in response to Attachment A, including, but not limited to:

      i.    The authenticity of the documents produced in response to Attachment A.

      ii.   Whether the documents produced in response to Attachment A are true and correct copies of the originals maintained by Omni.

      iii.  Whether the documents produced in response to Attachment A are what they purport to be.

      iv.   Whether the documents produced in response to Attachment A were created by the people listed as the author, and, if no author is listed, who the author is.

      v.    Whether the people listed as recipients of the documents produced in response to Attachment A received a copy of the produced document(s), and if no recipients are listed, who received a copy of the produced document(s).

      vi.   Whether the documents produced in response to Attachment A were created in the normal course of business and/or a regularly conducted business activity.

      vii.  Whether the creation of the documents produced in response to Attachment A was a regular part of the business activity.

      viii. The dates on or about which the documents produced in response to Attachment A were created.

      ix.   The reasons for creating the documents produced in response to Attachment A.

*Certain Televisions, Remote Controls, And Components Thereof*, Inv. No. 337-TA-1263

**Subpoena *Duces Tecum* and Subpoena *Ad Testificandum* to Premium Home Control Solutions, LLC.**

       x.     Whether the documents produced in response to Attachment A were created by or based on information from people with knowledge of the activity recorded.

       xi.    Whether the documents produced in response to Attachment A are the types of documents that are normally relied upon as a record of the activity recorded.

       xii.   The subject matter of any of the documents produced in response to Attachment A.

B.     The substance of the documents produced in response to Attachment A.

C.     The Source Code or firmware for the Roku Remote Products.

D.     The layout, operation, function, control, configuration, structure, and design of the following functionality in Roku Remote Products: configuration mode(s); brand identifier(s); codeset identifier(s); implementation of infrared ("IR") communication; HDMI or CEC control of devices; radio frequency ("RF") communication; the programing of the Roku Remote Products to control a TV; storage, reception, and transmission of key codes; storage, reception, and transmission of codesets; storage, reception, and transmission of timing information or any data used in the transmission of key codes (including but not limited to on/off times, duty cycle, carrier frequency, and mark/space pairs or patterns); programming any Roku Remote Products with key codes; software or firmware updates (manual and automatic); the initial setup process of the Roku Remote Products; and the "Control your TV", "Set up Remote for TV control," "Set up a new Device," "1-touch play," and "control other devices (CEC)"   Roku features and related functionalities.

E.     Omni's remote IR database, RF database, and HDMI or CEC database.

F.     The components of the Roku Remote Products, as well as their configurations and connections within the Roku Remote Products, and the identity of the manufacturers and any model numbers.

G.     Communications with Roku that demonstrate that Omni has provided Roku with copies or access to any firmware or source code for Roku Remote Products the or agreed to do so.

# ATTACHMENT C

## UNITED STATES INTERNATIONAL TRADE COMMISSION

### Washington, D.C.

**In the Matter of**

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND COMPONENTS THEREOF**

**Inv. No. 337-TA-1263**

**ORDER NO. 1:**                    **PROTECTIVE ORDER**

(May 12, 2021)

**Part of this Protective Order** is Administrative Order: 16-01, attached.  All parties should read it carefully. The language of Paragraph 3(vi) augments and clarifies the purposes for which confidential information may be used. All Parties must now include the acknowledgement language in Paragraph 4(i) and 4(ii) in any letter submitted to the Commission that constitutes the agreement to be bound by a Protective Order.

**WHEREAS**, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

**IT IS HEREBY ORDERED THAT**:

1.        Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary

to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information.  The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).   Any information submitted, in pre hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.  Documents shall be clearly and prominently marked on their face with the legend:  "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice.  Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

2(b).   The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.   In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than: (i) outside counsel for parties to this investigation, including

necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; (v) the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this investigation or related proceedings, or (b) in internal investigations, audits, reviews, evaluations relating to the programs, personnel, and operations of the Commission including under to 5 U.S.C. Appendix 3; and (vi) U.S. government employees and contract personnel, solely for cybersecurity purposes.[1]

4.     Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission: (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation. The letter shall also include the following acknowledgement:

---

[1] *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

[2] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

I, the undersigned, on behalf of _____, acknowledge that information submitted for purposes of this Investigation may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or

(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

5.     If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order and such persons shall be considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 thereof.

6(a).    Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above. Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal. When any confidential business information submitted in accordance with paragraph 2 above is included

in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof.  Alternatively, he or she shall sign the agreement included as Attachment A hereto.  Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

6(b).    Submitters[3] are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure.  The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission.  If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

7.    The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the

---

[3] "Submitters" of confidential business information are the same as "suppliers" of confidential business information as that term is used in the context of this order.  *See* Commission Administrative Order 16-01 (Nov. 7, 2015).

time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8.      The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge.   When such information is made part of a pleading or is offered into the evidentiary record, the data set forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge.   During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.      Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the Administrative

Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.     If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation; such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.     No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefore prior

to the initial disclosure.  If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling.  If the investigation is before the Commission the matter shall be submitted to the Commission for resolution.  The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge.  The terms of this paragraph shall be inapplicable to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.     If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.     Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.     Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made.  Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business

information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy those additional copies in its possession which it regards as surplusage.

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.    If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.    Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.    The Secretary shall serve a copy of this order upon all parties.

**SO ORDERED**.

MaryJoan McNamara
Administrative Law Judge

## Attachment A

### NONDISCLOSURE AGREEMENT FOR
### REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in the matter of *Certain_____,* Investigation No. 337-TA-___, except as permitted in the protective order issued in this case.  I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed_____

Dated_____

Firm or affiliation _____



## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

**ADMINISTRATIVE ORDER:** 16-01

**DATE:** November 7, 2015

**SUBJECT:** Acknowledgement and Disclaimer Provisions Regarding Disclosure of Confidential Business Information or Business Proprietary Information

1. **PURPOSE:** This order establishes procedures for Commission personnel to follow in using acknowledgement and disclaimer provisions regarding the cybersecurity-related disclosure of confidential business information (CBI) or business proprietary information (BPI). The statutes governing CBI and BPI generally prohibit the Commission from disclosing CBI and BPI to persons outside certain classes of individuals for certain purposes without the consent of the information's submitter. The acknowledgement provision is designed to seek consent to permit disclosure to certain other classes of persons for other specified purposes, including cybersecurity purposes, while complying with statutory requirements. The disclaimer provision is also designed to urge the submission of nonpublic documents using encrypted methods and notify the submitter that it assumes the risk of unauthorized disclosure if a non-encrypted method is used.

2. **REFERENCES**

   a. Statutes imposing restrictions on the disclosure of CBI and BPI, including 18 U.S.C. § 1905; 19 U.S.C. §§ 1332(g), 1337(n), 1677f(b)(1)(A).

   b. Section 201.6 of the Commission's Rules of Practice and Procedures (19 C.F.R. § 201.6).

3. **ACKNOWLEDGEMENT AND DISCLAIMER PROVISIONS**

   a. The acknowledgement provision reads as follows:

   I, the undersigned, acknowledge that information submitted in response to this request for information and throughout this investigation or other proceeding may be disclosed to and used:

(i) by the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or
(ii) by U.S. government employees and contract personnel, solely for cybersecurity purposes. I understand that all contract personnel will sign appropriate nondisclosure agreements.

b.   The disclaimer provision reads as follows:

Submitters are strongly encouraged to encrypt nonpublic documents that are electronically transmitted to the Commission to protect your sensitive information from unauthorized disclosure. The USITC secure drop-box system and the Electronic Document Information System (EDIS) use Federal Information Processing Standards (FIPS) 140-2 cryptographic algorithms to encrypt data in transit. Submitting your nonpublic documents by a means that does not use these encryption algorithms (such as by email) may subject your firm's nonpublic information to unauthorized disclosure during transmission. If you choose a non-encrypted method of electronic transmission, the Commission warns you that the risk of such possible unauthorized disclosure is assumed by you and not by the Commission.

c.   The acknowledgement and disclaimer provisions must be included in all protective orders issued in section 337 proceedings and in all Commission requests for CBI or BPI, including:

i.      in questionnaires and instruction booklets, as appropriate, in import injury investigations and reviews and in industry and economic analysis proceedings; and
ii.     in protective orders issued in section 337 proceedings, and in any other appropriate mechanisms for submission of CBI to be determined by the Commission's Administrative Law Judges.

d.   In the acknowledgement provision, the phrase "internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission" does not include statutory Commission proceedings (*viz.*, proceedings under our statutory authorities, such as 19 U.S.C. §§ 1332, 1337, 2252, and Title VII of the Tariff Act of 1930 (19 U.S.C. §§ 1303, 1516A, 1671-1677n)).

The acknowledgement provision does not permit CBI or BPI submitted in a statutory Commission proceeding to be disclosed or used in any other proceeding, with two exceptions. In the case of proceedings under Title VII of the Tariff Act of 1930, the Commission and its investigative staff may use BPI in other proceedings involving the same or similar merchandise pursuant to the authorization in the questionnaire form. In the case of proceedings under section 337 of the Tariff Act of 1930, use of CBI or BPI is permitted in related proceedings as defined in Commission Rule 210.3.

e.  In the acknowledgement provision, the phrase "cybersecurity purposes" means "detecting, preventing, analyzing, investigating, responding to, and reporting on cyber vulnerabilities, misconfigurations or inappropriate permissions on networks, or known or suspected malicious cyber activity."

f.  Protective orders in section 337 proceedings also must include a statement that third party suppliers of CBI should be given a copy of the protective order.

This order supersedes Administrative Order 97-06 and remains in effect until superseded or rescinded.

By order of the Chairman:


Meredith M. Broadbent

_____

Meredith M. Broadbent

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND**      **Inv. No. 337-TA-1263**
**COMPONENTS THEREOF**

Certificate of Service – Page 1

<u>**PUBLIC CERTIFICATE OF SERVICE**</u>

I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served upon the following parties as indicated, on **May 12, 2021**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

<u>**On Behalf of Complainant Roku, Inc.:**</u>

| | |
|---|---|
| Jonathan D. Baker, Esq.<br>**DICKINSON WRIGHT PLLC**<br>800 W. California Avenue, Suite 110<br>Sunnyvale, CA 94086<br>Email: JDBaker@dickinsonwright.com | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail<br>☒ Other: Email Notification<br>of Availability for Download |

<u>**On Behalf of Respondents Altice USA, Inc., Cablevision Systems Corp., Cequel Communications, LLC d/b/a Suddenlink Communications, Charter Communications, Inc., Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, Universal Electronics Inc., Universal Electronics BV, UEI Brasil Controles Remotos Ltda., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., and CG México Remote Controls, S. de R.L. de C.V.:**</u>

| | |
|---|---|
| Adam D. Swain, Esq.<br>**ALSTON & BIRD LLP**<br>950 F Street, NW<br>Washington, DC 20004<br>Email: adam.swain@alston.com | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail<br>☒ Other: Email Notification<br>of Availability for Download |

<u>**Respondents:**</u>

| | |
|---|---|
| LG Electronics Inc.<br>LG Twin Tower<br>128, Yeoui-daero<br>Yeongdeungpo-gu, Seoul, 07336 | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail |

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND**                    Inv. No. 337-TA-1263
**COMPONENTS THEREOF**

Certificate of Service – Page 2

| | |
|---|---|
| Republic of Korea | ☒ Other: Service to Be Completed by Complainant |
| LG Electronics USA, Inc.<br>1000 Sylvan Avenue<br>Englewood Cliffs, NJ 07632 | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail<br>☒ Other: Service to Be Completed by Complainant |
| Samsung Electronics Co., Ltd.<br>129, Samsung-Ro, Maetan-3dong<br>Yeongtong-Gu<br>Suwon-si, Gyeonggi-do, 16677<br>Republic of Korea | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail<br>☒ Other: Service to Be Completed by Complainant |
| Samsung Electronics America, Inc.<br>85 Challenger Road<br>Ridgefield Park, NJ 07660 | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail<br>☒ Other: Service to Be Completed by Complainant |
| Wideopenwest, Inc.<br>7887 E Belleview Avenue<br>Suite 1000<br>Englewood, CO 80111 | ☐ Via Hand Delivery<br>☐ Via Express Delivery<br>☐ Via First Class Mail<br>☒ Other: Service to Be Completed by Complainant |

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that a copy of the foregoing was served upon the following parties as indicated:

| COUNSEL FOR COMPLAINANT ROKU, INC. | |
|---|---|
| Jonathan D. Baker<br>**DICKINSON WRIGHT PLLC**<br>800 West California Ave, Suite 110<br>Sunnyvale, CA 95086<br>Telephone: (408) 701-6200<br>Facsimile: (844) 670-6009 | **Via Email to:**  Roku-ITC-1263@dickinson-wright.com |
| COUNSEL FOR RESPONDENTS LG ELECTRONICS, INC., AND LG ELECTRONICS U.S.A., INC. | |
| James J. Lukas, Jr.<br>GREENBERG TRAURIG LLP 77 WEST WACKER DRIVE<br>SUITE 3100<br>Chicago, IL 60601 | **Via Email to: GT-LG1263@gtlaw.com** |
| COUNSEL FOR RESPONDENTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC. | |
| Richard A. Edlin<br>GREENBERG TRAURIG LLP MetLife Building<br>200 Park Avenue<br>New York, NY 10166 | **Via Email to: GT-Samsung1263@gtlaw.com** |
| COUNSEL FOR RESPONDENT WIDEOPENWEST, INC. | |
| Richard L. Brophy<br>Zachary C. Howenstine<br>Wenkai Tzeng<br>ARMSTRONG TEASDALE LLP<br>7700 Forsyth Blvd., Suite 1800<br>St. Louis, MO 6310 | **Via Email to: rbrophy@atllp.com; zhowenstine@atllp.com; wtzeng@atllp.com** |

Dated:  May 24, 2021                    */s/ Emily S. Healy*

                                        Emily S. Healy

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND COMPONENTS THEREOF**                    **Inv. No. 337-TA-1263**

Certificate of Service – Page 1

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served upon the following parties as indicated, on **July 2, 2021**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

**On Behalf of Complainant Roku, Inc.:**

| | |
|---|---|
| Jonathan D. Baker, Esq. | ☐ Via Hand Delivery |
| **DICKINSON WRIGHT PLLC** | ☐ Via Express Delivery |
| 800 W. California Avenue, Suite 110 | ☐ Via First Class Mail |
| Sunnyvale, CA 94086 | ☒ Other: Email Notification |
| Email: JDBaker@dickinsonwright.com | of Availability for Download |

**On Behalf of Respondents Altice USA, Inc., Cablevision Systems Corp., Cequel Communications, LLC d/b/a Suddenlink Communications, Charter Communications, Inc., Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, Universal Electronics Inc., Universal Electronics BV, UEI Brasil Controles Remotos Ltda., Gemstar Technology (Qinzhou) Co. Ltd., Gemstar Technology (Yangzhou) Co. Ltd., C.G. Development Ltd., and CG México Remote Controls, S. de R.L. de C.V.:**

| | |
|---|---|
| Adam D. Swain, Esq. | ☐ Via Hand Delivery |
| **ALSTON & BIRD LLP** | ☐ Via Express Delivery |
| 950 F Street, NW | ☐ Via First Class Mail |
| Washington, DC 20004 | ☒ Other: Email Notification |
| Email: adam.swain@alston.com | of Availability for Download |

**On Behalf of Respondents LG Electronics Inc. and LG Electronics USA, Inc.:**

| | |
|---|---|
| James J. Lukas, Jr., Esq. | ☐ Via Hand Delivery |
| **GREENBERG TRAURIG LLP** | ☐ Via Express Delivery |
| 77 WEST WACKER DRIVE | |

**CERTAIN TELEVISIONS, REMOTE CONTROLS, AND**     **Inv. No. 337-TA-1263**
**COMPONENTS THEREOF**

Certificate of Service – Page 2

SUITE 3100                           ☐ Via First Class Mail
Chicago, IL 60601                    ☒ Other: Email Notification
E-mail: lukasj@gtlaw.com           of Availability for Download

**On Behalf of Respondents Samsung Electronics Co., Ltd.**
**and Samsung Electronics America, Inc.:**

Richard A. Edlin, Esq.               ☐ Via Hand Delivery
**GREENBERG TRAURIG LLP**       ☐ Via Express Delivery
MetLife Building                     ☐ Via First Class Mail
200 Park Avenue                    ☒ Other: Email Notification
New York, NY 10166             of Availability for Download
Email: edlinr@gtlaw.com

**On Behalf of Respondent Wideopenwest, Inc.:**

Richard L. Brophy, Esq.              ☐ Via Hand Delivery
**ARMSTRONG TEASDALE LLP**     ☐ Via Express Delivery
7700 Forsyth Blvd., Suite 1800     ☐ Via First Class Mail
St. Louis, MO 63105             ☒ Other: Service to Be
Email: rbrophy@atllp.com        Completed by Complainant